**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION**

HADASSAH FEINBERG, et al.          :
                                   :
          Plaintiff,               :
                                   :   CIVIL CASE NO: 1:23-cv-2165
                                   :
     v.                            :
                                   :
MARCIE SMITH                       :
MARISA MCCLELLAN,                  :        FILED
CURRIN HAINES-YODER,               :   HARRISBURG, PA
KIM DEIBLER                        :
LISA WHEELER                       :      DEC 2 9 2023
NOELLE BARRETT                     :
SCOTT SMITH,                       :   PER_____
KATHRYN CROWELL, et al             :        DEPUTY CLERK
                                   :
          Defendants,              :   DEMAND FOR JURY TRIAL

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, INJUNCTION, COMPENSATORY, AND NOMINAL RELIEF

AND NOW comes Plaintiff, aka "Hadassah Feinberg", aka "Biological

Mother of E.L.F. (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. DOB

(10/19/2016)", aka "Adoptive mother of B.N.F. (DOB 10/22/2020)", aka "*in*

*loco parentis*" for E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020), E.R.S.

(DOB 6/18/2020), and E.N.S. (DOB 6/18/2021)", *pro se*, and states the

following claims for relief against Defendants Marcie Smith, aka "Marcie

Wittlin", aka "Biological Mother of Smith children; E.J.S (DOB 12/17/2017),

E.S. (DOB 6/18/2020), E.R.S. (DOB 6/18/2020), E.N.S (DOB 6/18/2021),"

Marisa McClellan, in her official capacity as Director of Dauphin County Children and Youth Services, Currin Haines-Yoder, in her official capacity as Supervisor of Dauphin County Children and Youth Services, Kim Deibler in her official capacity as Employee of Dauphin County Children and Youth Services, Lisa Wheeler in her official capacity as Manager of Dauphin County Children and Youth Services, Noelle Barrett, in her official capacity as Supervisor of Dauphin County Children and Youth Services,  Scott Smith, in his official capacity as Supervisor of Dauphin County Children and Youth Services, and Kathryn Crowell, in her official capacity as Physician at Penn State Hershey Medical Center (collectively, "Defendants"), and avers as follows:

## SUMMARY OF THE CASE

1.     This is a civil rights action pursuant to 42 U.S.C. § 1983, U.S. Const. Amend I., U.S. Const. Amend. IV., U.S. Const. Amend. VI, U.S. Const. Amend. XIV., 18 U.S.C. § 1001, 42 U.S.C. § 672, 42 U.S. Code § 1985, Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"), 42 U.S.C. § 12101 (1990), and criminal violations including, but not limited to, Title 18, U.S.C., § 241, Title 18, U.S.C., § 242, Title 18, U.S.C., § 245, Title 18, U.S.C., § 246, Title 18, U.S.C., § 373, Title 18, U.S.C., § 1201, Title 18, U.S.C., § 1204, Title 18,

U.S.C., § 1503, Title 18, U.S.C., § 1505, Title 18, U.S.C., § 1506, Title 18,

U.S.C., § 1510, Title 18, U.S.C., § 1511, Title 18, U.S.C., § 1512, Title 18,

U.S.C., § 1513, Title 18, U.S.C., § 1514, Title 18, U.S.C., § 1518, Title 18,

U.S.C., § 1592, Title 18, U.S.C., § 1623, Title 18, U.S.C., § 1621, Title 18,

U.S.C., § 1622, Title 18, U.S.C., § 1623, Title 18, U.S.C., § 1957, Title 18,

U.S.C., § 2236, Title 18, U.S.C., § 2237, Title 18, U.S.C., § 2340, Title 18,

U.S.C., § 4304,  and Title 18, U.S.C., § 6301, for declaratory and injunctive

relief, as well as nominal, punitive, and compensatory relief, to redress and

to prevent the deprivation of rights, privileges, and immunities under the

First, Fourth, Sixth, and Fourteenth Amendments, to the United States

Constitution, caused by the Defendants through retaliation against freedom

of speech, warrantless search and seizure, admission of false hearsay

evidence, interference of parental rights, abuse of power, discrimination

against a disability, fraud, misrepresentation, child endangerment,

concealment, corruption, obstruction, retaliation, intimidation, and

harassment.

2.     In Pennsylvania, Defendant, Marcie Smith, residing in

Pennsylvania, is bound to the laws and regulations under the Pennsylvania

Rules of Civil and Criminal Procedure along with the Federal Rules of Civil

and Criminal Procedure. The Defendant violated Plaintiffs First, Fourth,

Sixth, and Fourteenth Constitutional rights, and endangered her own children, by taking actions and failing to take actions regarding the welfare of her children, aka the "Smith" children, after abandoning them for an extended period of time." The Defendant committed fraud, falsified statements to public officials, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation. In Pennsylvania, Defendants, employees for Dauphin County Children and Youth Services, operate under the Pennsylvania Department of Human Services pursuant to § 6301. The Defendants, in their professional capacity, committed fraud, falsified statements to public officials, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation. In Pennsylvania, Defendant, a physician working for Penn State Hershey Medical Center, operates under the Pennsylvania Department of Health pursuant to 28 Pa. Code § 711.2 (relating to policy); and 55 Pa. Code § 5320.54 and the provisions of this Part IV issued under sections 2101—3002 of The Administrative Code of 1929 (71 P. S. §§ 531—732); Articles IX and X of the Public Welfare Code (62 P. S. §§ 901— 922 and 1001—1080). The Defendant committed fraud, tampered with medical evidence, falsified statements to public officials, and concealed

4

pertinent information to obstruct justice in an incriminating child abuse investigation.

3.   Plaintiff in this matter, who is a Pennsylvania resident, was emotionally, and financially harmed and defamed by Defendant, Marcie Smith, aka Marcie Wittlin, along with her minor children E.L.F (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. (DOB 10/19/2016), and B.N.F (DOB 10/22/2020), after advocating and acting *in loco parentis* for the Defendant's abandoned and abused biological children. The Defendant's fraudulent reports to law enforcement, and other public officials, led to an obstruction of justice in a child abuse matter, interfered with child custody, and led to violations of the First, Fourth, Sixth, and Fourteenth Amendments, causing harm to the Plaintiff and her children.

4.   Plaintiff in this matter, who is a Pennsylvania resident, along with her four minor children, Plaintiff, E.L.F (DOB 12/11/2013), Plaintiff, A.N.F. (DOB 10/06/2015), Plaintiff, E.A.F. (DOB 10/19/2016), and Plaintiff, B.N.F (DOB 10/22/2020),  were stripped of their Constitutional rights and significantly harmed, both financially and emotionally, as a result of retaliation by the County Employees after the Plaintiff filed a complaint of liability against them on October 17, 2023. The Plaintiff's complaint was regarding their failure to assist the abandoned Smith children she had

5

cared for, for five days. The Defendants, DCCYS employees, violated all
five Plaintiffs First, Fourth, Sixth, and Fourteenth Amendment rights, by
filing false CPS reports to the state on October 18, 2023, after Plaintiff
complained about their conduct, by conducting warrantless interviews for
approximately a week and a half in their schools, harassing the Plaintiff and
her children, denying access to witnesses and denying the children's
freedom to leave the secluded rooms before the interview was finished,
and by interfering with the Due Process Clause, by immediately removing
custody of the children from Plaintiff when there were no substantiated
grounds of abuse, and where there was evidence through their actions that
retaliation was the only motive to punish the Plaintiff by taking her children.
The Due Process Clause protects the fundamental rights of parents to
direct the care, upbringing, and education of their children (Glucksberg, 521
U.S. 702 (1997.) The Defendants interfered with the Plaintiffs rights as a
parent by falsifying statements and perjuring themselves before two trial
courts alleging "imminent risk" when the children were at no risk, and where
there is substantive physical evidence to support the contrary. They also
endangered the Smith children by placing them back with the mother who
abandoned her children and left them soiled in feces. They placed the
Smith children back with the mother who was previously charged with

domestic violence for serious bodily injury. The Plaintiffs children who were not at risk for abuse, were properly dressed, fed, in regular attendance at school, doctors, and enrolled in numerous extracurricular activities, and were the ones harmed through retaliation and corruption. DCCYS forced separation between Plaintiff and her children with no contact to punish the Plaintiff. Plaintiff and her children's constitutional rights, were violated under the First, Fourth, Sixth, and Fourteenth Amendment, resulting in significant physical, mental, emotional, and financial harm to the Plaintiff and her children.

5.      Plaintiff in this matter, who is a Pennsylvania resident, along with her four minor children, E.L.F (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. (DOB 10/19/2016), and B.N.F (DOB 10/22/2020), were stripped of their Constitutional rights and significantly harmed, both financially and emotionally, by the Defendant, Doctor Kathryn Crowell, a Penn State Hersey medical doctor, as a result of fraud, medical malpractice, concealment, tampering with medical evidence from another hospital, and bad faith communications, aiding and abetting DCCYS. This came as a response to Plaintiff seeking medical help for the Smith children, who were abused and abandoned by their biological mother, Marcie Smith. The Defendant confiscated medical evidence from UPMC dated October

7

13, 2023 which diagnosed the Smith children with "suspected child abuse". Dr. Crowell knowingly, disregarded welfare reports of the Smith children documented by Harrisburg Police Officer Ribec, Dr. Alyssa Schatz, Dr. Bryan Reid, and reports from the Plaintiff, who at the time was acting, *in loco parentis*, was a mandated reporter for ten years, and was a certified mental health behavioral worker. Dr. Crowell's willful misconduct led to child endangerment of the Smith children who were placed back in the care of Defendant, Marcie Smith, who had abandoned and abused them. Marcie Smith has numerous criminal convictions, including a charge for domestic violence and serious bodily injury from 2018. Dr. Crowell aided and abetted DCCYS Defendants in an obstruction of justice in an active child abuse case which resulted in significant physical, emotional, and financial harm to the Plaintiff, her biological children, adopted child, and the Smith children.

6.    The Defendants' actions were taken in bad faith and for the purpose of punishing the Plaintiff, and for the purpose of obtaining federal reimbursement funds pursuant to Title IV-E, 42 U.S.C. § 672 *et seq*. Title IV-E allows states to receive reimbursement for costs related to a child abuse investigation on behalf of a child who is receiving services within their home so long as there is a defined "prevention plan" in place under which foster care is the planned arrangement for the child. Retaliation,

harassment, obstruction, corruption, fraud, and Title IV-E funds, motivated the initiation, and ongoing involvement with CYS.

7.     The Feinberg children had a clearly established Fourth Amendment right to be free from unreasonable search and seizures, which was violated when Defendants conducted the warrantless, in-school interviews on retaliatory grounds, when reasonable suspicion of child abuse was not obtained.

8.     Furthermore, Plaintiff has a clearly established substantive due process right to family integrity. Plaintiff has substantive evidence supporting the Defendants violation of that right.  Plaintiff had a clearly established right to procedural due process before Defendants could constrain Hadassah Feinberg's contact with her children without a finding that she was unfit as a parent, which was violated in this case. For almost two weeks, Plaintiff was not permitted to physically meet with her children or call her children, causing extreme emotional distress to herself and to her minor children.

## I. Plaintiffs' First Amendment Claims

9.     At the heart of the First Amendment is the notion that an individual should be free to believe as he or she will, and that in a free society one's beliefs should be shaped by his or her mind and his or her

9

conscience rather than coerced by a state actor. Subsumed within that constitutional freedom to believe as one will, is the right to make one's own choice, free of government compulsion. The Plaintiff had the right under the first amendment to file a complaint against the Defendants on October 17, 2023 to Office of Children and Youth Families, regarding DCCYS staff failure to aid the Smith children between 10/12/2023-10/17/2023, without fear of retaliation from DCCYS. The Plaintiff's rights were violated through retaliation, harassment, and intimidation because of the complaints she made against the Defendants.

## II. Plaintiffs' Fourth Amendment Claims

10.    The Fourth Amendment protects against unreasonable searches and seizures, see *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). Courts have held that the Fourth Amendment governs social workers just like any other government official. *See, e.g., id.* at 859 ("[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement."); *accord Kovacic*, 724 F.3d at 695. Children are entitled to the Fourth Amendment's protections even when they are away from home and attending public school and private school. *See, e.g., Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370–71 (2009); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). Pursuant to

these principles, Plaintiff acting on behalf of her minor children E.L.F.,
A.N.F., E. A.F., and B.N.F. argues that Scott Smith, Marisa McClellan,
Currin Haines-Yoder, Kim Deibler, and Lisa Wheeler, employees of
Dauphin County Children and Youth Services, violated the Feinberg
children's Fourth Amendment rights, by seizing them from their school
classrooms, and interviewing them against their will, without reasonable
suspicion, a warrant, or consent. Defendants are not entitled to qualified
immunity because it is established that social workers are bound by the
Fourth Amendment when conducting in-school interviews..

11.    In *Jones v. Hunt*, the Tenth Circuit considered which standard
might govern a social worker's interview of a child at a school pursuant to
an abuse investigation, but the court found that it was ultimately
unnecessary to determine whether a special needs exception applied
because the social worker's conduct in that case failed even under *T.L.O.*'s
modified reasonableness standard. *See Jones*, 410 F.3d at 1228. This
case would violate the most minimal standard of which we can conceive.'"
(quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.1990))).

12.    In the present case, Defendant's, Scott Smith's, alleged
conduct fails even the modified reasonableness standard of *New Jersey v.
T.L.O.* The Defendants' conduct violated Plaintiffs' and her children's

Fourth Amendment rights. Plaintiff alleges that before the DCCYS Defendants conducted the interviews, Defendants knew (1) that Plaintiff was a qualified foster and adoptive, abiding by all state and federal regulations, (2) that two days prior to the interviews, Defendants agreed for the Plaintiff to Kinship the Smith children with her own children which would put them over ratio for county regulation (eight children in total), further supporting Plaintiffs ability to parent multiple children, (3) that prior to the interviews DCCYS knew that the safety bed was prescribed by a pediatrician and paid for by medical assistance for a special needs child, after seeing the special needs bed in the home on 10/13/2023, (4) Plaintiffs children were thriving under proper medical care and education; see Feinberg Family Profile for Foster care and Adoption through Common Sense Foster Care Agency, (5)  that Plaintiff had her children enrolled voluntarily in numerous county services for Speech and Disability related services which the Defendants had knowledge of, i.e. Case Management Unit, Early Intervention, Therapeutic Services.

13.    Therefore, Plaintiff alleges that Defendants did not have *any* plausible suspicion that the Feinberg children were subjected to abuse or neglect at the time they conducted the interviews, and that claims were

initiated as pure retaliation against Plaintiffs complaints to the state regarding DCCYS employees child endangerment of the Smith children.

14. A reasonable jury could find that Defendants' seizure of Plaintiffs children was not "justified at its inception." T.L.O., 469 U.S. at 341 (quoting Terry, 392 U.S. at 20). Plaintiff demonstrated that the county did not have any significant interest in interviewing the children that "was reasonably related in scope" to the seizures at issue. In fact, Plaintiff has alleged that prior to the interviews, Defendants did not have any legitimate reason to suspect Hadassah Feinberg of child abuse or neglect. They recommended Plaintiff's adoption through Dauphin County in 2022. They authorized the Plaintiff to kinship the Smith children, a total of eight children, over regulation, because they had no concern to question the Plaintiff's parental ability. Plaintiff voluntarily initiated the DCCYS employees visit her home on 10/13/2023, to assist the Smith children, because of the significant physical bruising on the children and poor condition they were found in. Thus, based on these undisputed facts, Defendants violated Plaintiffs' Fourth Amendment rights by seizing the Feinberg children from their classrooms and subjecting them to interrogation without any suspicion of child abuse, and without obtaining a warrant or consent. There was no suspicion of abuse on October 19th when

they forced warrantless interviews, because a complaint was not filed on October 13, 2023 when Defendants saw the A.N.F.'s safety bed. There was no concern for abuse until DCCYS Defendants had a vindicative reason to pin the Plaintiff with a criminal offense due to retaliation. When Defendant, Scott Smith, interviewed the Feinberg children at their schools on October 19, 2023, the law required a warrant and/or reasonable suspicion of child abuse to conduct the interview without a warrant. In order for the Defendant to obtain opportunity to fabricate a complaint, he had to first file a fabricated allegation on the 18th of October, 2023, for suspected child abuse, and then conduct warrantless interviews on October 19, 2023, to commence false reports. The School's felt obligated to authorize warrantless interviews of the children, because of Scott Smith's compelling directive. Defendant, Scott Smith, as Perpetrator, used an abuse of power, through mask of a county agency created to "protect children", to carry out his motive and goal. Silver Academy staff attempted to protect the Feinberg children's civil rights, but were denied by DCCYS. The Plaintiff and her children were victimized by an abuse of county power. DCCYS was not concerned for abuse on 10/19/2023, because they agreed to intiate the kinship on 10/16/2023. A.N.F.'s bed had been prescribed by Dr. Ryan Spotts, the pediatrician, for safety at night, and it was being used as

14

prescribed and directed. DCCYS's illegal interviews were conducted solely to fabricate false evidence for suspected child abuse, when there was no suspicion prior to the Plaintiff filing a complaint against them. DCCYS caused significant trauma to all the Feinberg children resulting in extensive hospital visits and unnecessary need for increased medications because of the trauma. The Fourth Amendment governs a social worker's in-school interview of a child pursuant to a child abuse investigation, see *Barber v. Miller*, 809 F.3d at 847. At a minimum, a social worker must have reasonable suspicion of child abuse before conducting an in-school interview without a warrant or consent. Therefore, Defendants' conduct in this case, was unconstitutional because it failed to satisfy even the lesser modified reasonableness standard of *New Jersey v. T.L.O.* The seizures were not "justified at [their] inception" and they were not "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 569 U.S. at 341 (quoting *Terry*, 392 U.S. at 20).

15.    The threshold to determine if Plaintiffs' Fourth Amendment rights were violated is whether Plaintiffs were "seized" within the meaning of the Fourth Amendment. "A seizure occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *O'Malley v. City of Flint*, 652 F.3d 662,

668 (6th Cir. 2011) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). Courts generally should take into account the plaintiff's age when determining if a reasonable person would have felt free to leave. *E.g.*, *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005); *Heck*, 327 F.3d at 510. There is sufficient physical evidence supporting the belief that the children's rights were violated because they were not free to leave the interview at school, when they asked to leave the interview. In addition, Minor child, A.N.F., a special needs child aged eight, was locked in an office at the Dauphin County Children and Youth Services building without supervision. This was reported to ChildLine, and DCCYS was not investigated for their abuse. As a response A.N.F. punched Defendant, Scott Smith, on 11/3/2023, and was transported to UPMC emergency room to be seen for crisis. None of this information was reported to the Plaintiff by DCCYS. Plaintiff accessed A.N.F.'s medical portal, and told his mother what happened on 11/3/2023.

16.    The Feinberg children were also denied a neutral party when Defendant, Scott Smith interviewed them in isolation 10/19/2023 and 11/2/2023. The Defendant coerced and intimidated the Feinberg children. The children attempted to leave the interview and were forced to remain.

Principal, Samara Sofian, and Police Officer, Tony Frei, of the Silver

Academy witnessed the crimes committed.

### III. Plaintiff's Sixth Amendment Claims

17. Under the Sixth Constitutional Amendment, Americans have

the right to not be subjected to hearsay evidence against them in all

criminal prosecutions:

> "the accused shall enjoy the right to be confronted with the
> witnesses against him; accordingly, no testimonial hearsay may be
> admitted against a criminal defendant unless (1) the witness is
> unavailable, and (2) the witness was subject to prior cross..." United
> States v. Becker, 81 M.J. 483.

18. Although the matter of Dependency is civil, the false

allegations, were criminal by nature with intent to charge and convict the

Plaintiff under Rules of Criminal Procedure. On November 8, 2023,

Defendant, Lisa Wheeler, testified in the Cumberland Court of Common

Pleas that they were seeking "Criminal Charges." Therefore criminal intent

was not disputed. On October 13th, 2023, Defendant Scott Smith, came out

to Plaintiff's home located at 3807 Bonnyview Road, Harrisburg, Pa 17109.

Scott Smith saw the safety bed Plaintiff had for her special needs son,

A.N.F., and was not concerned about the bed. Plaintiff provided Scott

Smith documentation from the pediatrician and her rejected it. On October

16, 2023, Defendants from Dauphin County CYS recommended Plaintiff

Kinship the four Smith children because they had no concern regarding the Plaintiffs parental capacity. On October 18th, 2023, Defendant filed a retaliatory complaint against Plaintiff's safety bed because Plaintiff had filed a complaint against CYS the day prior. When Defendant came out to interview the children at their schools, Scott Smith did not have a warrant and coerced the Plaintiffs children to remain in the isolated room with him while he fabricated statements against the child's safety bed. On the Defendant Court document that notate hearsay that the child A.N.F allegedly reported being locked in the bed when he is bad. Not only was this false hearsay and retaliatory by nature, but there is clear and convincing evidence that Scott Smith told A.N.F. that "he was bad and that he was going to take his mother away." He in fact did execute the plan he reported to the child a week later. A.N.F. was seen by crisis on 10/19/2023 because of panic attacks he was undergoing for the threats made by Scott Smith. The fact that hearsay was used when there is no evidence to support such, and where the complaint by this Defendant was concluded as unfounded by the state is a clear violation of the Plaintiff's and her children's Sixth Amendment Right. Plaintiff's children were removed from her care under false statement's where the Plaintiff had no opportunity to

respond because the children were removed based on hearsay that was false.

## IV. Plaintiffs' Fourteenth Amendment Claims

19.    Nearly one hundred years ago, the Court acknowledged that "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Pierce v. Society of Sisters, 268 U.S. 510 (1925). Thereafter, in Stanley v. Illinois, 405 U.S. 645 (1972), Court's affirmed the fundamental rights of parents "in the companionship, care, custody, and management" of their children. Id. at 651. That same year, in Wisconsin v. Yoder, 406 U.S. 205 (1972), the Court declared that "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Id. at 232. More recently, the Court declared in Washington v. Glucksberg, 521 U.S. 702 (1997), that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, protects the fundamental right of parents to direct the care, upbringing, and education of their children. Id. at 720. And in Troxel v. Granville, 530 U.S. 57 (2000), the Court again unequivocally affirmed the fundamental right of parents to direct the care, custody, and control of their children.

20.    Under recent Supreme Court decisions, there is no compelling governmental interest that justifies these severe infringements to Plaintiffs' and her children's First and Fourteenth Amendment rights and that can withstand exacting First Amendment scrutiny.

21.    Defendants violated the Plaintiffs rights to both procedural and substantive due process under the Fourteenth Amendment by constraining her ability to be alone with her children for thirteen days and then to continue with oversight from Cumberland County CYS for five months without any valid governmental interest and without affording the Plaintiff any procedural protections, such as notice or a hearing after the children were not adjudicated. DCCYS petition was withdrawn from the Cumberland County Court of Common Pleas by CCCYS for lack of grounds on November 16, 2023. The Due Process Clause of the Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. This clause ensures fair process and safeguards "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "[t]he touchstone of due process is the protection against arbitrary

governmental action, including 'the exercise of power without any
reasonable justification in the service of a legitimate governmental
objective.'" *Schulkers v. Kammer*, 367 F. Supp. 3d 626, 637 (E.D. Ky.
2019) (quoting *Lewis*, 523 U.S. at 845–46).

22.    The Courts have held that "[i]t is clearly established that the
Constitution recognizes both a protectible procedural due process interest
in parenting a child and a substantive fundamental right to raise one's
child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (collecting
cases); *accord Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008)
("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise
to a liberty interest that a parent may not be deprived of absent due
process of law." (alterations in original) (quoting *Kottmyer v. Maas*, 436
F.3d 684, 689 (6th Cir. 2006))). In *Bartell*, its explained that "the differences
between the procedural interest in raising one's child and the substantive
right, and the corresponding scope of the duties imposed on government,
are significant. While procedural due process principles protect persons
from deficient procedures that lead to the deprivation of cognizable liberty
interests . . . substantive due process provides that, irrespective of the
constitutional sufficiency of the processes afforded, government may not
deprive individuals of fundamental rights unless the action is necessary and

animated by a compelling purpose." 215 F.3d at 557–58 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

23.     Defendants unconstitutionally exceeded their powers in both ways in the present case. Defendants violated their substantive right to family integrity because the removal was unwarranted and initiated as a result of an obstruction of justice in an unrelated child abuse investigation and was not supported by any compelling governmental interest, given that Defendants had no reason to suspect the Plaintiff of child abuse. Plaintiff was also not afforded any process for liberty deprivation once the case was withdrawn, and thus Defendants violated Plaintiffs right to procedural due process.

## i. Substantive Due Process

24.     The Supreme Court has repeatedly held that "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Thus, in *Lassiter v. Department of Social Services*, the Supreme Court declared that it is "plain beyond the need for multiple citation" that a parent's "desire

for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). And, in *Cleveland Board of Education v. LaFleur*, the Court stated that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." 414 U.S. 632, 639 (1974); *see also Quilloin*, 434 U.S. at 255 (stating that *LaFleur* "firmly established" the right to personal choice in matters of family life); *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (recognizing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children").

25.    The right to family integrity and association without interference from the state—is the paradigmatic example of a substantive due process guarantee. *See, e.g.*, *Moore v. City of E. Cleveland*, 431 U.S. 494, 498–99 (1977) ("A host of cases . . . have consistently acknowledged a 'private realm of family life which the state cannot enter.'" (quoting *Prince*, 321 U.S. at 166)); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This

primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."). The right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference was clearly established at the time of Defendants' conduct. *Troxel*, 530 U.S. at 66.

26.    The state did not have any interest in preventing child abuse in the present case because they had no reason to suspect Plaintiff of child abuse, until Plaintiff complained of Defendants neglect of care with the Smith children. The removal and supervision after the petition was withdrawn contravened "the traditional presumption" articulated by the Supreme Court in *Troxel* "that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69; *see also id.* at 68–69 ("[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."). When, the government prevents a fit mother from being unsupervised with her children "at all times (24/7)" without any compelling government interest, it clearly contravenes this presumption. R. 67-9, Prevention Plan, Pg. ID 1659. The Defendants had fair notice that the Plaintiff had a protected

24

liberty interest in "the companionship, care, custody and management of [their] children," *Lassiter*, 452 U.S. at 27, and in the right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference, *Troxel*, 530 U.S. at 66.

27.    Plaintiff has a well-established right "to the companionship, care, custody and management of [their] children," *Lassiter*, 452 U.S. at 27. "The Constitution recognizes . . . a substantive fundamental right to raise one's child," *Bartell*, 215 F.3d at 557. *See also Kottmyer*, 436 F.3d at 689 ("There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law.").

28.    In this case the removal and pending Family Service Plan constitutes an interference with the natural "parent-child relation." *Kottmyer*, 436 F.3d at 689. By arbitrarily mandating the Plaintiff to cooperate with CYS and sign a Family Service Plan when there has been no abuse founded, and is a violation of Plaintiff's due process right to family integrity under *Troxel*. Numerous Supreme Court cases have found that a parent has a fundamental right to "the companionship, care, custody and management of his or her children," *Lassiter*, 452 U.S. at 27, and that "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there

will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children," *Troxel*, 530 U.S. at 68–69. The Supreme Court stated in *Moore*, "unless we close our eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth Amendment's Due Process Clause, we cannot avoid applying the force and rationale of these precedents to the family choice involved in this case." 431 U.S. at 501.

## ii. Procedural Due Process

29.    "It is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child."); *Smith*, 520 F.3d at 599 ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." (quoting *Kottmyer*, 436 F.3d at 689)); *accord Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125–26 (3d Cir. 1997).

30.    The decision to cooperate with a Family Service Plan was not voluntarily agreed upon. Any of Plaintiff's "consents" have been premised on the misrepresentation that if she does not agree to the Plan, Defendants

will remove her children for a second time from her care without grounds, a form of duress.

## B. Constitutional Violation

31.    The county injected itself into the private realm of family life without any process or any doubt as to Plaintiff fitness as a parent, in violation of *Troxel*, 530 U.S. at 66. Following the fabricated referral for service, the Defendants are responsible for the Cumberland County CYS staff's failure to lift the interference with Plaintiff's right to be free from government interference, even after there is no longer any question as to Plaintiffs parental fitness.

32.    Plaintiff made repeated requests for the harassment from the Defendants to cease, both before and after the children were removed without grounds. Plaintiff was compelled to leave the home she owns, and the county she resided in for 25 years, as a last resort, after none of her attempts to cease the harassment and intimidation succeeded. Furthermore, on 12/24/2023, Plaintiff requested from Cumberland County that a Family Service Plan not be prepared because there are no grounds for state involvement. Plaintiff has provided all documentation requested by CCCYS, has cooperated with Cumberland County, and has independently obtained every service she and her children need without CYS intervention.

27

On 12/28/2023, CCCYS emailed the Plaintiff requesting to do home visits and Plaintiff reiterated through email that she is exercising her Constitutional Rights to be free from government control and that she is protecting her children from continued trauma with CYS harassment. Plaintiff informed CCCYS through email that her children attend programs and see doctors who are mandated reporters and that no one else has concerns and therefore, there is not substantiated need for CYS intervention. Plaintiff requested two times to speak with the legal team at CYS but to date has not received a response for coordination of a meeting.

33.     Regardless of Plaintiffs attempts to cooperate with CCCYS and initiate a thorough investigation in Dauphin County, Defendants continue to impose restrictions and interfere with her relationship with her children for more than two months after the initial false referral was placed and unfounded. They are continuing to conceal, and turn a blind eye to the violations and crimes committed by the Defendants. Defendants ongoing interference with the Plaintiffs parent-child relationship, when there no question as to Feinberg's parental fitness, is a continued violation of her Amendment rights. In so doing, they are abridging Feinberg's clearly established right to the companionship and care of her children without

arbitrary government interference in violation of the Due Process Clause of the Fourteenth Amendment.

34.    Ultimately, Plaintiff seeks the Court's review of the violations alleged.

## JURISDICTION AND VENUE

35.    This is an action that arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, of rights, privileges, and immunities secured to Plaintiff and her children, by the Constitution of the United States, particularly the First, Fourth, Sixth, and Fourteenth Amendments thereto.

36.    The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331—because the claims arise under the United States Constitution—and 28 U.S.C. § 1343—because Plaintiffs seek relief under 42 U.S.C. § 1983.

37.    This action is an actual controversy in which Plaintiff seeks a declaration of hers and her minor children's rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff and her minor children and grant further necessary and proper compensatory and nominal relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

38.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)

because a Defendant, is domiciled in and operates or does significant

business in this judicial district. Additionally, majority of the events giving

rise to this action occurred in this judicial district.

## PARTIES

39.    Plaintiff, Hadassah Feinberg, resides in Cumberland County,

Pennsylvania. She is employed as an Independent Advocate at H.L.

Feinberg Independent Advocacy LLC.

40.    Plaintiff, Minor child E.L.F., resides in Cumberland County with

her mother, aka "Plaintiff".

41.    Plaintiff, Minor child A.N.F., resides in Cumberland County with

his mother, aka "Plaintiff".

42.    Plaintiff, Minor child E.A.F., resides in Cumberland County with

her mother, aka "Plaintiff".

43.    Plaintiff, Minor child B.N.F., resides in Cumberland County with

his adoptive mother, aka "Plaintiff".

44.    Defendant Marcie Smith, aka "Marcie Wittlin" is under the

supervision and program of Dauphin County Children Youth Services

located at 1001 North 6th Street, Harrisburg, Pa. 17102.

45. Defendant, Marisa McClellan, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

46. Defendant, Currin Haines-Yoder, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

47. Defendant, Noelle Barrett, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

48. Defendant Lisa Wheeler, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

49. Defendant, Kim Deibler, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

50. Defendant Scott Smith, in his official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

51.    Defendant Kathryn Crowell, in her official capacity is employed at Penn State Hershey Medical Center, located at 500 University Drive, Hershey, Pa. 17033.

## FACTUAL ALLEGATIONS

52.    On October 12, 2023, at 12:40 p.m., the Plaintiff was notified by a credible member of the Jewish Community, that four Smith children had been missing for 6 days. The Plaintiff reported the missing children to local law enforcement.

53.    On October 12, 2023, at 6:00 p.m., the Smith children were located by Officer Ribec of the Harrisburg Police Department at 63 North 18th Street, Harrisburg Pa. 17103. The children were found soiled in feces, with adults who were not legal guardian. They had been reportedly abandoned by Marcie Smith, their biological mother.

54.    On October 12, 2023 at 7:00 p.m. the Plaintiff voluntarily assisted the Smith children, provided them clothing from her trunk in presence of multiple witnesses.

55.    On October 12, 2023, Dauphin County CYS Supervisor, Noelle Barrett, refused to arrive to the scene to aid the Smith children. The Plaintiff transported the four Smith children to her home, released to her care by Officer Ribec, of Harrisburg Police Department. Plaintiff was assisted by a

social worker, and another friend, in transporting the four Smith children to her home located at 3807 Bonnyview Road, Harrisburg, PA 17109.

56.    Upon arrival, Plaintiff noticed the Smith children neglected in filth, urine, and feces. Plaintiff bathed the Smith children where she noted numerous bruises on the Smith children. She made a report to Childline and two police departments, and tried to contact DCCYS again, but to no avail.

57.    On October 13, 2023, at 11:00 a.m. Plaintiff sent Smith child, E.J.S. to school, and took the younger three Smith children to UPMC emergency room located at 111 S. Front St, Harrisburg, PA 17101 where they were diagnosed with suspected child abuse by Dr. Alyssa Schatz. Alyssa Schatz made a police report and called ChildLine.

58.    On October 13, 2023, at 3:30 p.m. Plaintiff contacted Commissioner Hartwick III because Dauphin County CYS staff were not coming to aid the Smith children.

59.    On October 13, 2023, at 6:30 p.m. Defendant, Dauphin County Supervisor Scott Smith, came out to the Plaintiff's home to visit the Smith children. Scott Smith photographed the Smith's injuries. During the house tour Scott Smith asked about A.N.F.'s safety bed. Plaintiff provided him with medical documentation prescribed by a pediatrician and explained that

33

the bed was for A.N.F. safety at night. He had no questions or concern, and refused to take documentation offered by the Plaintiff.

60.     On October 15, 2023, Dauphin CYS consented to arrange transportation for the Smith Children from the Plaintiffs home to respective schools for kinship purposes. There were no concerns mentioned by DCCYS regarding Plaintiff's ability to care for her own four children, and four more young children, totaling 8 children, by herself as a single mother.

61.     On October 16, 2023, at 9:30 a.m. DCCYS facilitated a meeting with Defendant, Marcie Smith, and Plaintiff, regarding kinship. Defendant, Marcie Smith, agreed for her children to remain with the Plaintiff and voluntarily signed legal custody to DCCYS for E.J.S. DOB 12/17/2017, E.S. DOB 6/18/2020, E.R.S. 6/18/2020, and E.N.S. 6/18/2021. At the meeting, Marcie Smith lied about why she was unable to obtain housing for her family. Unbeknownst to the plaintiff at the time, the Defendant was charged crimes and substance abuse, including but not limited to; a domestic violence charge for serious bodily injury against their biological father. She falsely informed DCCYS that Eric Smith, the father of the children is the violent one.

62.     On October 16, 2023, at 3:30 p.m. DCCYS case worker "Allyson V." arrived at Plaintiffs home located at 3807 Bonnyview Road,

34

Harrisburg, Pa 17109 to initiate intake for kinship. She did a tour of the Plaintiff's home. No concerns were noted. During the visit, Plaintiff disputed the agency with which they wanted her to kinship with. She requested Pa. Mentor instead of Families United, as she was already in communication with that agency. DCCYS verbally threatened the Plaintiff that Title IV-E funds would be withheld for the Smith children's kinship if she did not agree to work with Families United. The Plaintiff stood her ground and told them she didn't need the money.

63. On October 17, 2023, Plaintiff filed a complaint against DCCYS for withholding funds for the Smith children's basic needs under Title IV-E and for failure to investigate the Smith children's abandonment and physical abuse. At 11:00 a.m. Plaintiff took the Smith children into Penn State Hershey Medical Center for follow up with their special child abuse unit. Plaintiff informed Dr. Crowell of DCCYS's failure to assist the children. During the visit, E.S. DOB 6/18/2020, was banging his head on the hard tiled floor. Dr. Crowell and her team failed to provide adequate medical care for his needs, which was documented by Plaintiff to DCCYS through email and telephone calls. Plaintiff informed DCCYS she could not take E.S. home without an implemented safety plan in place due to head-banging self-injurious behavior. Plaintiff has vast experience with

behavioral therapy from professional experience. Dr. Crowell and DCCYS staff ignored Plaintiff's reports. At 3:00 p.m., Plaintiff was advised by a Licensed Clinical Social Worker, Director of an Adoption and Foster care Agency that she should inform medical staff of her timely obligation to leave to get her own children off the bus. Since E.S. was a danger to himself, by head-banging, he needed to remain under medical observation.

64.     The child abuse team threatened the Plaintiff stating, "If she refused to take E.S. home, they would remove all Smith children from her care." Plaintiff had no choice but to get her own children and left the children with medical staff since they would not allow her to take the children with her. The Licensed Clinical Social Worker, a Director of an approved Adoption and Foster Care agency, remained on the phone with Plaintiff until she left the Penn State hospital, because Plaintiff was in fear.

65.     On October 18, 2023 Plaintiff went to Harrisburg Police Department and Victim Witness to inquire about the investigation regarding the Smiths abandonment and DCCYS's Obstruction of Justice. On the same day, DCCYS filed their own fabricated complaint against Plaintiff regarding the safety bed. DCCYS falsified statements against the Plaintiff as retaliation for her complaint against them the day before.

66.     On October 19, 2023, Defendant, Scott Smith showed up to the

schools where the Plaintiff's children were enrolled. He took A.N.F., E.L.F.,

and E.A.F. against their will, into a secluded room and shut the door. He

told the children to tell him about "dark secrets" and coerced them to make

false statements about A.N.F.'s safety bed in the Plaintiff's home, but they

refused to comply with him. School staff who are mandated reporters,

informed Scott Smith that they had zero concern for suspected child abuse.

Scott Smith talked to the Feinberg children for an unreasonably extended

period of time. E.L.F. informed the Defendant that the bed was to provide

A.N.F. safety at night because he was a danger to himself and his family

without supervision. She informed the Defendant that A.N.F had a history

of safety concerns.

67.     Defendants interview caused excessive fear and panic in

A.N.F., who is an eight year old verbal autistic child, by stating, "he is bad

and that he's going to take his mother away". Upon return from school,

A.N.F. exhibited severe panic attacks, and trouble breathing. The Plaintiff

called 911 two times and A.N.F. was transported to the Emergency Room

for panic attacks and increased anxiety caused by the Defendants verbal

threats. The treating physician increased medication for A.N.F. and he was

discharged home from crisis. Plaintiff begged law enforcement to protect

her family against DCCYS corruption, but they refused, stating that "Municipal could not intervene in county matters".

68. On October 20, 2023, Defendant Scott Smith showed up to B.N.F. daycare and allegedly told daycare staff that he wasn't waiting for police to be witnesses, regardless of their request. The daycare staff were aware of the retaliation. The Defendant proceeded with the interview against the child's will, against Plaintiff's permission, and without reasonable suspicion of suspected child abuse.

69. On October 20, 2023, Plaintiff traveled with her four children to friends in Maryland to seek legal advice. She contacted law enforcement in Maryland and explained that her family was facing abuse of power in Dauphin County, but they could not assist. Plaintiff went up the chain of command, but was unsuccessful in obtaining legal advice or assistance.

70. On October 23, 2023, Plaintiff researched agencies that assist in public corruption. She contacted the FBI field office to see if they could assist with an abuse of power and they assured her they could, but that the matter would most likely be transferred to the Philadelphia Filed Office due to jurisdiction.

71. On October 24, 2023, Plaintiff returned to Dauphin County with her four children and took them to school. Shortly after, Plaintiff was

apprehended by police without cause. The apprehension and citation issued by the Police Department was later dismissed on 12/18/2023 without grounds. In response to the apprehension and retaliation from DCCYS Plaintiff went to the Philadelphia FBI Office the same seeking protection for her family. They refused to assist Plaintiff and she returned home without any safeguard against the harassment.

72.    Without assistance from any agency, Plaintiff was compelled to leave the home and County she lived in for 25 years, to prevent and protect her children from further falsified allegations and crimes. She was forced out of her $300,000 home, through an abuse of government power, retaliation, intimidation, and harassment, in violation of her and her children's constitutional rights.

73.    Plaintiff fled with her four children to the closest county, Cumberland county. Plaintiff continued to take the children to their schools in Dauphin County and appropriate medical visits. No concerns were reported for child abuse by any mandated reporter in the schools or doctors' offices.

74.    On November 1, 2023, Plaintiff filed an official change of address to Cumberland County.

75. On November 2, 2023, Plaintiff took her children to schools in Dauphin County, and doctors' appointments at Penn State and no concern was made for suspected child abuse.

76. On November 3, 2023, DCCYS lured Plaintiff back to her previous address in Dauphin County at 3807 Bonnyview Road, Harrisburg, Pa. 17109 where they served her with papers to remove the care and custody of her children under falsified grounds for "imminent risk".

77. On November 6, 2023, Plaintiff informed Hon. John J. McNally, Judge, of the corruption and jurisdictional dispute, and he ordered the transfer of the case to Cumberland County Court and Cumberland County Children and Youth Services (CCCYS).

78. On November 8, 2023, Hon. Edward E. Guido, Judge, accepted the Plaintiff's case in Cumberland County.

79. Between November 8, 2023 through November 15, 2023, CCCYS investigated the referral and found that there were no grounds for removal of the Plaintiff's children.

80. On November 16, 2023, CCCYS withdrew DCCYS's petition for Dependency, and the Plaintiff's children were not adjudicated. The Plaintiff's children were returned to her custody and care.

81.    Since November 16, 2023, Plaintiff has voluntarily cooperated with CCCYS by signing releases of her private information regarding medical and mental health records under a form of duress so that her children are not removed again from her care. She is being compelled through intimidation that if she does not cooperate with the county agency they will again seek removal, even though Plaintiff is a fit parent and provides all her children's needs on a daily basis including shelter, food, medical care, and education, without any assistance from CYS.

82.    Since the harassment and retaliation began, the Plaintiff has incurred excessive debts as a result of DCCYS crimes, which have harmed her and her children's ability to thrive. She has listed her Dauphin County home for sale located at 3807 Bonnyview Road, Harrisburg, PA 17109. Plaintiff has been compelled to apply for a mortgage forbearance since she cannot sustain the cost of her current rental in Carlisle, Pa, along with an expensive mortgage for a vacant home she was forced out of. She has also incurred excessive transportation costs due to the distance between her current residence and the children's school in Dauphin County. She continues to transport them, but has accrued over $15,000 in debt from the displacement, and the debts are increasing.

83. Plaintiff has enrolled her children and placed them on waitlists for trauma therapy as a result of the unlawful separation of her children and herself, and emotional distress caused by it.

84. Plaintiff has suffered significant emotional distress and harm to her professional and personal reputation and capacity, since her network of friends and employment are engaged in the field of mandated reporting; teaching, counseling, etc.

85. The Plaintiff and her children have been displaced and distanced from their family and friends residing in Dauphin County, and from long term programs Plaintiff had her children enrolled in because of the violations and crimes committed by the Defendant's.

86. The Plaintiff's children have lost relationships with friends since their parents fear the county agency's retaliation.

87. Under color of state law, each named Defendant has violated the constitutional rights of the Plaintiff included in this Complaint and has committed the crimes included in this Complaint in an effort to obstruct justice in a significant child abuse investigation, see "Exhibit 1," "Exhibit 2," "Exhibit 3," "Exhibit 4," "Exhibit 5," "Exhibit 6," "Exhibit 7," "Exhibit 8," "Exhibit 9," "Exhibit 10," "Exhibit 11,"   "Exhibit 12," "Exhibit 13," "Exhibit

14," "Exhibit 15," "Exhibit 16," "Exhibit 17," "Exhibit 18," "Exhibit 19,"

"Exhibit 21," and "Exhibit 22," and incorporated herein.

88.    Pursuant to 42 U.S.C. § 1983, U.S. Const. Amend I., U.S.

Const. Amend. IV., U.S. Const. Amend. VI, U.S. Const. Amend. XIV., 18

U.S.C. § 1001, 42 U.S.C. § 672, 42 U.S. Code § 1985, Federal Racketeer

Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal

RICO"), 42 U.S.C. § 12101 (1990), and criminal violations including, but

not limited to, Title 18, U.S.C., § 241, Title 18, U.S.C., § 242, Title 18,

U.S.C., § 245, Title 18, U.S.C., § 246, Title 18, U.S.C., § 373, Title 18,

U.S.C., § 1201, Title 18, U.S.C., § 1204, Title 18, U.S.C., § 1503, Title 18,

U.S.C., § 1505, Title 18, U.S.C., § 1506, Title 18, U.S.C., § 1510, Title 18,

U.S.C., § 1511, Title 18, U.S.C., § 1512, Title 18, U.S.C., § 1513, Title 18,

U.S.C., § 1514, Title 18, U.S.C., § 1518, Title 18, U.S.C., § 1592, Title 18,

U.S.C., § 1623, Title 18, U.S.C., § 1621, Title 18, U.S.C., § 1622, Title 18,

U.S.C., § 1623, Title 18, U.S.C., § 1957, Title 18, U.S.C., § 2236, Title 18,

U.S.C., § 2237, Title 18, U.S.C., § 2340, Title 18, U.S.C., § 4304, and Title

18, U.S.C., § 6301 for declaratory and injunctive relief, as well as nominal,

punitive, and compensatory relief, to redress and to prevent the deprivation

of rights, privileges, and immunities under the First, Fourth, Sixth, and

Fourteenth Amendments, to the United States Constitution, caused by the

Defendants through retaliation against freedom of speech, warrantless search and seizure, false hearsay evidence, interference of parental rights, abuse of power, discrimination against a disability, fraud, misrepresentation, child endangerment, concealment, corruption, obstruction, retaliation, intimidation, and harassment, the Defendants, having not acted lawfully in their professional or personal capacity, and having committed State and Federal violations both civil and criminal; are allegedly guilty of the following crimes.

89.    On information and belief, when the county, particularly DCCYS, and CCCYS expend federal dollars under Title IV-E for family's at risk, they must use it for families in need of services, and not to protect their own favored programs and services, when services are already being implemented voluntarily by the Plaintiff outside the County Agency.

90.    Title IV-E while permitted by the aforementioned Pennsylvania laws pursuant to The Family First Prevention Services Act (FFPSA), enacted as part of Public Law (P.L.) 115—123, authorized new optional title IV-E funding for time-limited prevention services for mental health, substance abuse, and in-home parent skill-based programs for children or youth who are candidates for foster care, pregnant or parenting youth in foster care, and the parents or kin caregivers of those children and youth,

44

the Plaintiff's family was never a candidate for foster care, because there

were no grounds for suspected child abuse. All the services the Plaintiff

had for her children, were already assumed under a voluntary means prior

to and outside of County involvement.

## COUNT I

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States; U.S. Const. amend. 1).

## COUNT II

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. IV).

## COUNT III

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. VI).

## COUNT IV

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrete, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. XIV).

## COUNT V

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa

Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 18 U.S.C. §
1001).

## COUNT VI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith,
Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa
Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.
Code § 1985).

## COUNT VII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith,
Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa
Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 18 U.S.C. §
1964(c)) ("Federal RICO"),).

## COUNT VIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith,
Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa
Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18,
U.S.C., §  241).

## COUNT IX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith,
Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa
Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18,
U.S.C. § 242).

## COUNT X

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith,
Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa
Wheeler, Scott Smith, and Kathryn Crowell, for their violation of 42 U.S.C. §
12101 (1990)).

## COUNT XI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 6301)).

## COUNT XII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 245  ).

## COUNT XIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §  373).

## COUNT XIV

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1201).

## COUNT XV

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 246).

## COUNT XVI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1204).

## COUNT XVII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1503).

## COUNT XVIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1505).

## COUNT XIX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1506).

## COUNT XX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1510).

## COUNT XXI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1511).

## COUNT XXII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa

Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1512).

## COUNT XXIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1513).

## COUNT XXIV

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1514).

## COUNT XXV

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1518).

## COUNT XXVI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1592).

## COUNT XXVII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1621).

## COUNT XXVIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §1622).

## COUNT XXIX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1623).

## COUNT XXIX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 1957).

## COUNT XXX

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation Title 18, U.S.C. § 2340).

## COUNT XXXI

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. §4304).

## COUNT XXXII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 2236).

## COUNT XXXIII

(Plaintiff Hadassah Feinberg claim against Defendants, Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, Scott Smith, and Kathryn Crowell, for their violation of Title 18, U.S.C. § 2237).

91.   Plaintiff, Hadassah Feinberg, re-alleges and incorporates by reference all allegations contained in the forgoing paragraphs of this Complaint as if fully set forth herein.

92.   The First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution ("Constitution") protect the associational, free speech, and free choice rights of United States citizens.

93.   Under color of state law, defendants Marcie Smith, Marisa McClellan, Currin Haines-Yoder, Kim Deibler, Noelle Barrett, Lisa Wheeler, Scott Smith, and Kathryn Crowell, have violated and continue to violate Plaintiff Feinberg's, free speech, and free choice rights under the Constitution.

94.   As a direct result of said Defendants' actions taken Plaintiff Feinberg and her minor children:

a. have been prevented from exercising their rights and privileges as citizens of the United States which they have not voluntarily chosen to support and with which they object to support or associate;

51

b. have been deprived of their civil rights guaranteed to them under the statutes of the United States;

c. are in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States and are in imminent danger of suffering additional physical, emotional, monetary, equitable, and other damages; and

d. are in imminent danger of suffering additional irreparable harm, damage, and injury that is inherent in the violation of First, Fourth, and Fourteenth Amendment rights, for which there is no adequate remedy at law.

95.    If not enjoined by this Court, said defendants and/or their agency employees will continue to effect the aforementioned deprivations and abridgments of Plaintiff Feinberg's Constitutional rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

96.    WHEREFORE, Plaintiff prays that this Court:

a.    enter a judgment based upon past, current, and future monetary and emotional damages and losses to personal and property:

52

     i.     that to the extent their actions are unconstitutional on their face and as applied in that they impermissibly abridge Plaintiffs' First, Fourth, Sixth, and Fourteenth Amendment rights of free speech, free choice, freedom from unlawful search and seizure, Due Process against hearsay, and freedom to care, raise, and educate one's own children, uninterrupted by government intervention and control.

b. enter a permanent injunction:

    i. barring Defendants from seeking or requiring Plaintiffs to, continue unnecessary services and plans from the local CCCYS, as a condition for Plaintiff to retain custody of her children.

c.    award Plaintiffs nominal damages; in the amount of $200,000,000.

d.    award Plaintiffs such additional relief the Court deems just and proper; and

e.    enter a judgment awarding Plaintiffs their costs and reasonable court' and legal-related fees that have been incurred as a *pro se* litigant pursuant to 42 U.S.C. § 1988.

Dated: December 29, 2023

Respectfully submitted,

Hadassah Feinberg – *Pro Se*
P.O. Box 1098
Carlisle, Pa 17013
(717) 571-7021
H_feinberg@yahoo.com

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on December 29, 2023, I filed the

foregoing *Complaint* by USPS Certified Mail upon the following individuals:

Sylvia H. Rambo
United States Courthouse
Attention: Clerks Office
1501 North 6th Street
Harrisburg, PA 17102

Marcie Smith
1001 North 6th Street
Harrisburg, Pa. 17102

Marisa McClellan
1001 North 6th Street
Harrisburg, Pa. 17102

Currin Haines-Yoder
1001 North 6th Street
Harrisburg, Pa. 17102

Noelle Barrett
1001 North 6th Street
Harrisburg, Pa. 17102

Kim Deibler
1001 North 6th Street
Harrisburg, Pa. 17102

Lisa Wheeler
1001 North 6th Street
Harrisburg, Pa. 17102

Scott Smith
1001 North 6th Street
Harrisburg, Pa. 17102

Kathryn Crowell
500 University Drive
Hershey, Pa 17033

Date: December 29, 2023          Respectfully submitted,

Hadassah Feinberg – *Pro Se*
P.O. Box 1098
Carlisle, Pa 17013
(717) 571-7021
H_feinberg@yahoo.com