HADASSAH FEINBERG,      :
                       :
      Plaintiff,     :
                       : CIVIL CASE NO: 1:23 cv 02165
      v.            :
                       :
MARCIE SMITH,      :
MARISA MCCLELLAN,  :
CURRIN HAINES-YODER, :
KIM DEIBLER,       :
LISA WHEELER,     :
NOELLE BARRETT,   : ELECTRONICALLY FILED
SCOTT SMITH,       :
KATHRYN CROWELL, et al. :
                       :
      Defendants,  : DEMAND FOR JURY TRIAL

## AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, INJUNCTION, COMPENSATORY, AND NOMINAL RELIEF

AND NOW comes Plaintiff, aka "Hadassah Feinberg", aka "Biological

Mother of E.L.F. (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F.

(DOB 10/19/2016)", aka "Adoptive mother of B.N.F. (DOB 10/22/2020)",

aka "*in loco parentis*" for E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020),

E.R.S. (DOB 6/18/2020), and E.N.S. (DOB 6/18/2021)", *pro se*, and states

the following claims for relief against Defendants Marisa McClellan, in her

official capacity as Director of Dauphin County Children and Youth

Services, Currin Haines-Yoder, in her official capacity as Supervisor of

Dauphin County Children and Youth Services, Kim Deibler, in her official capacity as employee of Dauphin County Children and Youth Services, Lisa Wheeler, in her official capacity as Manager of Dauphin County Children and Youth Services, Noelle Barrett, in her official capacity as Supervisor of Dauphin County Children and Youth Services, and Scott Smith, in his official capacity as Supervisor of Dauphin County Children and Youth Services (collectively, "Defendants"), and avers as follows:

## SUMMARY OF THE CASE

1. This is primarily a civil rights action pursuant to 42 U.S.C. § 1983 U.S. Const. Amend I., U.S. Const. Amend. IV., U.S. Const. Amend. VI, U.S. Const. Amend. XIV., but also includes, and shall not exclude, actions pursuant to the following civil and criminal rules and violations listed herein; 18 U.S.C. § 1001, 42 U.S.C. § 672, 42 U.S. Code § 1985, Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"), 42 U.S.C. § 12101 (1990), 18, U.S.C., § 241, 18, U.S.C., § 242, 18, U.S.C., § 245, 18, U.S.C., § 246, 18, U.S.C., § 373, 18, U.S.C., § 1201, 18, U.S.C., § 1204, 18, U.S.C., § 1503, 18, U.S.C., § 1505, 18, U.S.C., § 1506, 18, U.S.C., § 1510, 18, U.S.C., § 1511, 18, U.S.C., § 1512, 18, U.S.C., § 1513, 18, U.S.C., § 1514, 18, U.S.C., § 1518, 18, U.S.C., § 1592, 18, U.S.C., § 1623, 18, U.S.C., § 1621, 18, U.S.C., § 1622, 18,

U.S.C., § 1623, 18, U.S.C., § 1957, 18, U.S.C., § 2236, 18, U.S.C., § 2237,

18, U.S.C., § 2340, 18, U.S.C., § 4304,  and 18, U.S.C., § 6301, for

declaratory and injunctive relief, as well as nominal, punitive, and

compensatory relief, to redress and to prevent the deprivation of rights,

privileges, and immunities under the First, Fourth, Sixth, and Fourteenth

Amendments, to the United States Constitution, caused by the Defendants

through retaliation against freedom of speech, warrantless search and

seizure, admission of false hearsay evidence, interference of parental

rights, abuse of power, discrimination against a disability, fraud,

misrepresentation, child endangerment, concealment, corruption,

obstruction, retaliation, intimidation, and harassment. A related civil suit for

RICO crimes, will be lodged in this Court on or before September 1, 2024,

and shall include the named Defendants and additional Defendants, that

conspired, aided, and abetted, these Defendants in carrying out crimes

listed in this Amended Complaint. It should be noted, that individuals,

including but not limited to, the Defendants, and others, including Donald L.

Carmelite, Esq., and Jonathan B. Stepanian Esq., who have entered their

appearance on this docket, have been referred to the respective

Pennsylvania Supreme Court Disciplinary Boards; Office of Disciplinary

Counsel, Pennsylvania Department of State Professional Licensing Bureau

of Enforcement and Investigation, and Pennsylvania State Board of Social Workers. for investigation of misconduct before and during their entry of appearance on this docket. The misconduct includes intimidation of witnesses, and ethical misconduct prescribed by the code of ethics as a licensed professional in the State of Pennsylvania. Physical evidence shall be forthcoming.

2.     In Pennsylvania, Defendants, employees for Dauphin County Children and Youth Services, operate under the Pennsylvania Department of Human Services rules and regulations pursuant to § 6301. The Defendants, in their professional capacity, violated constitutional rights, and committed child endangerment, and fraud. They manipulated and falsified statements to public officials, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation involving a neglectful Mother (and father), aka "Marcie Gail Smith" (DOB 7/28/1983) and "Eric Smith" (DOB unknown), where mother is the primary caregiver. Marcie Smith neglected and abandoned her four children on October 12, 2023, at a residence located at 63 North 18th Street, Harrisburg, Pennsylvania, 17103.

3.     In Pennsylvania, the Defendants, collaboratively operate alongside the Pennsylvania Department of Health when providing

emergency medical care to children at risk of child abuse and physical injury pursuant to 28 Pa. Code § 711.2 (relating to policy); and 55 Pa. Code § 5320.54 and the provisions of this Part IV issued under sections 2101—3002 of The Administrative Code of 1929 (71 P. S. §§ 531—732); Articles IX and X of the Public Welfare Code (62 P. S. §§ 901—922 and 1001—1080). The Defendants committed fraud, tampered with medical evidence, manipulated medical personnel, intimidated witnesses, legally trafficked four minor children without proper grounds, withheld lifesaving medication from the Plaintiff's minor children, committed child endangerment with more than fourteen children since 2015, retaliated against the Plaintiff for exposing their crimes, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation for which they committed fraud.

4.      Plaintiff in this matter, was physically, emotionally, and financially harmed and defamed by Defendants, along with her minor children E.L.F (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. (DOB 10/19/2016), and B.N.F (DOB 10/22/2020), after advocating and acting *in loco parentis* for the children of Marcie Smith; E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020), E.R.S. (DOB 6/18/2020), and E.N.S. (DOB 6/18/2021). The Defendants fraudulent reports to local, state, and federal

law enforcement and other government officials, were motivated by an objective to obstruct justice in a child abuse case in which they had made preventable errors. They interfered with child custody to conceal their actions which led to violations of the First, Fourth, Sixth, and Fourteenth Amendments, causing harm to this Plaintiff and her children.

5.     Plaintiff in this matter, along with her four minor children, Plaintiff, E.L.F (DOB 12/11/2013), Plaintiff, A.N.F. (DOB 10/06/2015), Plaintiff, E.A.F. (DOB 10/19/2016), and Plaintiff, B.N.F (DOB 10/22/2020), were stripped of their constitutional rights and significantly harmed, physically, emotionally, and financially, due to the county's retaliation after the Plaintiff filed a complaint to the Department of Human Services on October 17, 2023. The Plaintiff exposed the Defendant's failure to assist the neglected Smith children, whom the Plaintiff voluntarily sheltered in her home, located at 3807 Bonnyview Road, Harrisburg, Pa 17109, for a total of five days. The Defendants, all Dauphin County, "DCCYS employees", and state actors, willfully and knowingly violated Plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights, by filing false Child Protective Service reports to the state on October 18, 2023, to conceal their misconduct with the Smith children. The Defendants conducted warrantless interviews, harassing the Plaintiff and her minor children. They denied the

Feinberg children's request for access to witnesses and denied the children's freedom to leave the secluded rooms when they requested. The Defendants interfered with the Due Process Clause, by removing custody of the children from the Plaintiff, when there was no evidence of abuse, and where the sole objective of the dependency claim, was to punish the Plaintiff by trafficking her children. It is important to note that the Defendants were well informed of the Plaintiffs family setting, as she had recently fostered and adopted by their recommendation for three years.

6.      The Due Process Clause protects the fundamental rights of parents to direct the care, upbringing, and education of their children (Glucksberg, 521 U.S. 702 (1997.) The Defendants interfered with the Plaintiffs rights as a parent by falsifying statements and perjuring themselves before two trial courts alleging "imminent risk" when the children were thriving physically, emotionally, and academically. There was no physical evidence to support their false claims. The Defendants endangered the Smith children, by placing them back with their biological mother who was engaging on record in illicit drug use, within a short period of time, who knowingly and intentionally abandoned her children for more than twelve hours without proper supervision, access to food, toileting, and clothing. This mother was also known to have a history of domestic

violence for causing an immediate family member serious bodily injury. The Defendants concealed medical documents from physicians, incident reports from law enforcement, call logs from Dauphin County Dispatch Communication, ChildLine recordings and reports from Dauphin County Crisis, and complaints from a foster/adoptive mother regarding the endangered welfare of the Smith children. The Plaintiffs children who were <u>not</u> at risk for abuse, were targeted and trafficked to punish the Plaintiff, in a twisted and distorted sequence of events. The Smith children who were at imminent risk, were returned without hesitance to a dangerous and manipulative mother. The Defendants forced separation between the Plaintiff and her children and enforced an unjustified "no contact" directive for more than seven days. The Defendants directed the guardians caring for the Feinberg children to "contact the police" if the Plaintiff attempted to communicate with her children (Feinberg, S. November 4, 2023). Plaintiff and her children's constitutional rights were intently violated under the First, Fourth, Sixth, and Fourteenth Amendment, resulting in temporary and permanent physical, emotional, and financial damage.

7.     The Defendants made multiple attempts to confiscate, seal, withhold, and destroy, vital medical documentation from UPMC dated October 13, 2023, serving as physical evidence of their lies and crimes

which suggested the Smith children were abused and a police report and ChildLine report was made. The Defendants engaged in criminal and unethical behavior by preventing medical personnel from satisfying their mandated reporter duties. They manipulated first responders to neglect the crimes committed on October 12, 2023, which they themselves were not witnesses of. They perjured themselves on both the written petition and during the Plaintiff's shelter hearing, suggesting that such medical records "did not exist". The Defendants disregarded reports of neglect with the Smith children documented by Alyssa Schatz, PA-C, written communications from Bryan Reid, PhD, incident reports from Harrisburg Police Officer Christian Ribec, and the Plaintiff, who at the time was acting, *in loco parentis* for the Smith children. Plaintiff is an experienced mandated reporter, foster care, and adoptive parent, educator, and behavioral therapist.

8. The Defendants' actions were taken in bad faith and for the sole purpose of harming the Plaintiff, and obtaining federal funds pursuant to Title IV-E, 42 U.S.C. § 672 *et seq*. Title IV-E allows states to receive reimbursement for costs related to a child abuse investigation on behalf of a child who is receiving services within their home so long as there is a defined "prevention plan" in place under which foster care is the planned

arrangement for the child. Misappropriation of the funds is considered fraud and punishable by law. Retaliation, harassment, obstruction of justice, corruption, and fraud, are not qualifying criteria for reimbursement of federal funds and abhorrent involvement with CYS.

9.      The Feinberg children had a clearly established Fourth Amendment right to be free from unreasonable search and seizures, which was violated when Defendants conducted the warrantless, in-school interviews on retaliatory grounds, and when reasonable suspicion of child abuse was non-existent.

10.     Plaintiff has a clearly established substantive due process right to family integrity. Plaintiff has physical evidence supporting the Defendants violation of that right. Plaintiff had a clearly established right to procedural due process before Defendants could constrain contact between her and her children, without a finding of compelling imminent risk for physical bodily injury which they never alleged. For nearly two weeks, Plaintiff was prevented from physically meeting or communicating with her children, resulting in permanent emotional distress to the children and herself.

## I. Plaintiffs' First Amendment Claims

11.     At the heart of the First Amendment is the notion that an individual should be free to believe as he or she will, and that in a free

society one's beliefs should be shaped by his or her mind and his or her conscience rather than coerced by a state actor. Subsumed within that constitutional freedom to believe as one will, is the right to make one's own choice, free of government compulsion. The Plaintiff had the right under the First Amendment to file a complaint against the Defendants on October 17, 2023, to the Department of Human Services, when the Defendants endangered the Smith children and engaged in unethical behavior and verbal threats between 10/12/2023-10/17/2023. As a whistleblower, the Defendants retaliated. The Plaintiff's rights were violated through harassment, and intimidation in efforts to silence her. The timeline and sequence of events supports a finding of willful criminal motive.

## II. Plaintiffs' Fourth Amendment Claims

12. The Fourth Amendment protects against unreasonable searches and seizures, see *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). Courts have held that the Fourth Amendment governs social workers just like any other government official. *See, e.g.*, *id.* at 859 ("[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement."); *accord Kovacic*, 724 F.3d at 695. Children are entitled to the Fourth Amendment's protections even when they are away from home and attending public and private school. *See,*

*e.g.*, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370–71 (2009); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). In accordance with these principles, Plaintiff acting on behalf of her minor children E.L.F., A.N.F., E. A.F., and B.N.F., argues that the Defendants, violated the Feinberg children's Fourth Amendment rights, by seizing them from their school classrooms, and interviewing them against their will, without justified suspicion of abuse, a warrant, or consent. Defendants are not entitled to qualified immunity because it is established that social workers are bound by the Fourth Amendment when conducting in-school interviews.

13.     In *Jones v. Hunt*, the Tenth Circuit considered which standard might govern a social worker's interview of a child at a school pursuant to an abuse investigation, but the court found that it was ultimately unnecessary to determine whether a special needs exception applied because the social worker's conduct in that case failed even under *T.L.O.*'s modified reasonableness standard. *See Jones*, 410 F.3d at 1228. This case would violate the most minimal standard of which we can conceive.'" (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.1990)).

14.     In the present case, Defendant Smith's conduct fails even the modified reasonableness standard of *New Jersey v. T.L.O.* The Defendants' conduct violated Plaintiffs' and her children's Fourth

Amendment rights. Plaintiff alleges that Defendants knew (1) that Plaintiff was a qualified and experienced foster and adoptive parent, abiding by all state and federal regulations, (2) that two days prior to the interviews, Defendants agreed for the Plaintiff to Kinship the Smith children with her own children (eight children in total), further supporting Plaintiffs parental fitness, (3) that Defendants perjured themselves before the Court regarding the safety bed prescribed by a qualified pediatrician, by alleging the bed was some "unauthorized tent", inferring a "criminal accessory", (4) that Plaintiffs children were thriving under proper medical care and education; see medical note dated November 2, 2023, and Feinberg Family Profile for Foster care and Adoption through Common Sense Foster Care Agency, (5) and that Plaintiff enrolled her children in multiple Dauphin County services i.e. Case Management Unit, Early Intervention, and therapeutic Services, etc., and that program employees were mandated reporters who were not concerned for the Feinberg children.

15.     Therefore, Plaintiff alleges that the Defendants had no plausible suspicion that the Feinberg children were subjected to abuse or neglect at the time they conducted the interviews, and that false reports were commenced as pure retaliation against the Plaintiff.

16.     A reasonable jury could find that Defendants' seizure of Plaintiffs children was not "justified at its inception." *T.L.O.*, 469 U.S. at 341 (quoting *Terry*, 392 U.S. at 20). Plaintiff demonstrated that the county did not have any significant interest in interviewing the children that "was reasonably related in scope" to the seizures at issue. In fact, Plaintiff has alleged that prior to the interviews, Defendants did not take actions consistent with concern until after a complaint was filed against them. They unquestionably recommended Plaintiff's adoption through Dauphin County in 2022, which they fail to mention in their Dependency petition. They also took steps in favor of granting a waiver for Plaintiff to kinship above county ratio. Their original actions align with Plaintiff's communicated cognitive and mental stability. It is only after multiple failed attempts of Plaintiff pleading for help from outside agencies, that Plaintiff is forced out of her home with her children.

17.     The Defendants actions were precipitated by an authoritative necessity to control, spite, and punish the Plaintiff for exposing them. Plaintiff had initiated the request for Defendants to visit her home on October 13, 2023, to assist the neglected Smith children. She was consistent in her actions to help and there is supporting evidence that she was thanked by the state in a letter for her actions. Out of enmity,

Defendants violated Plaintiffs' Fourth Amendment rights by seizing the Feinberg children from their classrooms and subjecting them to interrogation without any suspicion of abuse, and without obtaining a warrant or consent. No complaint was submitted on October 13, 2023, for A.N.F.'s bed, because there were no grounds for concern. There was no concern, until Defendants needed an outlet to establish grounds to retaliate with a vindicative objective; to "charge the Plaintiff with a felony", and label her as "mentally unstable", both which they suggest in their fabricated petition. This is an underlying matter of cause and effect for 1) refusal to work with their agency of choice "Families United" versus "PA Mentor", (Plaintiff's agency of choice on October 16, 2023), 2) exposing Defendants crimes to Commissioner George Hartwick's office on October 13, 2023, and 3) exposing Defendant's crimes to the Regional Director of Department of Human Services on October 17, 2023. This is not mere coincidence or unrelated incidents. Their failure to act and protect the Smith children is directly related to the cause of fabricated allegations filed against this Plaintiff. The timeline of complaints supports the truth. Truth never fails. Every lie they have told is unsupported hearsay, which they are relying on by withholding the Plaintiffs CPS record, the reports from Dauphin County Crisis, and the 9-1-1 calls from Dauphin County Communications. They are

abusing their authority to manipulate the facts of what transpired with no regard to the Smith children's safety and the Plaintiffs family that has suffered irreparable damage.

18.     When Defendant Smith interviewed the Feinberg children at their schools on October 19, 2023, the law required a warrant or reasonable suspicion of child abuse without a warrant. For the Defendant to establish "opportunity" to fabricate a complaint, he first submitted a false report, dated October 18, 2023, and then consecutively proceeded with a warrantless interview in the children's schools the following day, October 19, 2023, to "fabricate false statements". The false report was not filed coincidentally by an outside party. The CPS report was filed by the motivated perpetrator that had a preemptive plan to disable and discredit the Plaintiffs complaint to the state against the Defendants which preceded their retaliatory actions.

19.     The schools were compelled to authorize warrantless interviews of the children, because of Defendant Smith's directive and the agency's overwhelming authority in the community. Defendant Smith, as Perpetrator, abused his power, through mask of a county agency created to "protect children", to carry out his motive and goal. Children and Youth is designed to protect children at risk, for neglect and abuse, but with that

there is no "certainty" that the employees hired by the agency will be truthful, honest, and unbiased. This is recipe for disaster when it involves the future of children and vulnerable families who are low income, and under educated. The county employees are acting selfishly by disregard the consequences of their actions affecting Commonwealth families.

20.    The Silver Academy staff attempted to defend the Feinberg children's civil rights but were denied by Defendant Smith. Officer Tony Frei and Principal Samara Sofian reported his refusal to the Plaintiff. The Plaintiff and her children were abused with no source of protection by county authority contrary to constitutional rights upon which this amazing country has been founded. Defendants unwarranted interviews were conducted solely to establish grounds for false claims, when there was no suspicion prior to the Plaintiff filing a complaint against them. Defendants caused significant injury to all four Feinberg children resulting in extensive hospital visits, and inpatient admissions in psychiatric hospitals, permanent trauma, displacement from their family home, and over six months of minimal food, access to programs, complete and total social isolation, and funds to meet basic financial obligations. The Fourth Amendment governs a social worker's in-school interview of a child pursuant to a child abuse investigation, see *Barber v. Miller*, 809 F.3d at 847. At a minimum, a social

worker must have reasonable suspicion of child abuse before conducting an in-school interview without a warrant or consent. Therefore, Defendants' conduct in this case, was unconstitutional because it failed to satisfy even the lesser modified reasonableness standard of *New Jersey v. T.L.O.* The seizures were not "justified at [their] inception" and they were not "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 569 U.S. at 341 (quoting *Terry*, 392 U.S. at 20). The Defendants actions were described by licensed professionals in the pediatric medical and behavioral field as: "Preposterous" (Dr. Charles F. Lorbeer, PHD, LICSW (MA), LCSW (FL), Mar. 2024), and "over the top and not justified. DCCY did not act competently or ethically." (Dr. Richard Blutstein, Pediatrician, Jan. 12, 2024).

21.     The threshold to determine if Plaintiffs' Fourth Amendment rights were violated is whether Plaintiffs were "seized" within the meaning of the Fourth Amendment. "A seizure occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). Courts generally <u>should</u> consider the plaintiff's age when

determining if a reasonable person would have felt free to leave. *E.g.*, *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005); *Heck*, 327 F.3d at 510. There is sufficient physical evidence supporting the belief that the children's rights were violated because they were not free to leave the interview at school when they asked to leave the interview, and that they were fearful of the Defendant. On November 2, 2023, E.L.F. and E.A.F. reported not being permitted to leave the interview room by Defendant Smith, consistent with the statements from Officer Frei and Principal Sofian.

22.     In addition, minor child, A.N.F., a high functioning, verbal, and autistic, eight-year-old child, reported being "locked in Lisa Wheeler's office" unsupervised", and "unable to open the door". This occured at the Dauphin County Children and Youth Services building on November 3, 2023. Plaintiff filed a report to ChildLine staff regarding the incident, but a thorough investigation was not completed. "Sally Lupini", who claimed to "investigate" the matter, did not conduct an interview with A.N.F. about the incident. Contrary to the methods she conducted to investigate the reports filed by the county employees, the state actors were not confronted regarding the complaints of child abuse they committed. There is no accountability when it comes to liability regarding employees in high-tiered

positions at their agency. Sally Lupini, employed by the Department of Human Services is appointed to provide oversight for provisional and permanent licensing of this agency and it's employees. She oversees approximately thirty-five counties, and rarely cites them despite the ongoing complaints filed by thousands of families statewide. She has not taken any corrective or punitive action for their senseless criminal and unethical actions, nor does she intend to. In a recent conversation, she stated, "but you got your kids back." Her statement is disturbing in that it suggests that one she bow down to DHS and CYS when they return parents children. In fact, this is a clear violation of the constitution. Being a parent is a right, and only in significant cases shall that right be disturbed by a government agency. Parenting is <u>not</u> a government benefit created like foodstamps. The county agency should be afforded the power to abuse and interfere with a parent child relationship absent overwhelming evidence of physical abuse or significant neglect. Sally Lupini was provided over 500 pages of physical evidence to support the employees immediate termination, but within less than a week she had dismissed the report with no actions taken. Sally Lupini is named a "Defendant", in the pending federal RICO case.

23.     In 2015, a grand jury investigated Jarrod Tutko's death, a nine-year-old-boy, after his parents went to jail, and it came down hard on the

Dauphin County child welfare agency. The jury recommended changes, and six years later, Chief Deputy District Attorney Sean M. McCormack, the lead investigator, still refers to the 122-page grand jury document because, "while there has been some reform, concerns remain for the state's child welfare system. Ultimately, the social workers are inexperienced, untrained, and have inconsistent discretion to work as they please." They overlook cases where risk of physical abuse is imminent, such as with the Smith children on October 12, 2023, and they manipulate, and retaliate against innocent families that should have no county involvement. There are no checks and balances when it comes to their authority and discretion for abuse of power. They are not mandated to sport body cameras, and their statements filed with the family Courts are rarely dismissed regardless of failure to procure physical evidence. They seal permanent fates of numerous families, including those that are fit parents.

24.    To this date, the Defendants, and other state actors who aided and abetted them, have not been held liable for their neglect and child endangerment. After A.N.F. was triggered by the forced seclusion, it is medically documented that A.N.F. "punched" Defendant Smith, and was transported to UPMC emergency room to be evaluated on November 3, 2023. The Defendant's willfully failed to report the incident to Plaintiff

regarding her special needs son, and with obvious reason. Plaintiff accessed this report accidentally, upon review of his medical chart. A.N.F. reported the forced seclusion to this Plaintiff after his return to her custody.

25.     The Feinberg children were denied a neutral party when Defendant Smith interviewed them in isolation on October 19, 2023, and November 3, 2023. The Defendant coerced and intimidated the Feinberg children, like the crimes committed by the county social workers in Bakersfield, California (1982), involving the McCuan and Kniffen families; convicted on false allegations, and later exonerated. There the prosecution representatives resorted to coercive and suggestive interrogation procedures. Drs. Stephen Ceci, Richard Ofshe, and other psychiatric research experts demonstrated, "Children can by suggestive questioning be induced to make false statements". Similarly, on October 19, 2023, E.L.F. reported to the Plaintiff that Defendant Smith asked questions like, "What dark secrets are in your family", and "Did mommy tell you what to say". She responded to the effect of, "I have my own mind and can think for myself". E.A.F. reported to the Plaintiff that Defendant Smith stated, "I can protect you, not mommy." She responded, "No, my mommy protects me." The Feinberg children attempted leaving the interview room and were prevented. E.L.F., teary-eyed, on video, made statements to the effect of,

"Scott Smith wasted my study time during math practice when I have a test", and that "I will not get a good grade because he wasted my whole study period." Principal Sofian and Officer Frei witnessed the crimes committed and must be subpoenaed to testify. The number of credible witnesses who observed this travesty is overwhelming. The Harrisburg Jewish Community, fearfully watched from the sidelines, as this agency tore apart and destroyed a thriving family to conceal their failures with the Smith children. Sanford Krevsky, a hearing master for Dauphin County Children and Youth, witnessed this Plaintiff shocked, tearful, and traumatized at synagogue the day after the Defendants removed her children. He has known the Plaintiff and her family for over twenty years. As a hearing master for children at risk, he has NEVER filed a ChildLine call for the Feinberg children. He would see them weekly on the Sabbath and at community events. It is no secret that Marcie Smith's father assaulted minor children in the Jewish Community. The deceased Philip Wittlin's crimes, are well documented by Dauphin County reporters. Marcie Smith is a mentally disturbed mother who has been abused by her father in the Harrisburg Jewish community. She has a very long history of illicit drug use, yet the county pays no regard to that and focuses on the mother who did everything to save someone else's children, while caring for her own.

### III. Plaintiff's Sixth Amendment Claims

26.     Under the Sixth Constitutional Amendment, Americans have the right to not be subjected to hearsay evidence against them in all criminal prosecutions:

> "The accused shall enjoy the right to be confronted with the witnesses against him; accordingly, no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross..." United States v. Becker, 81 M.J. 483.

27.     Although the matter of Dependency is civil by nature, false allegations filed with intent to charge the Plaintiff criminally with Per Se Acts should be afforded the same protections listed under the Rules of Criminal Procedure. Sadly, individuals charged with attempted homicide and murder, are provided greater protection under the constitution, where they are considered "Innocent until proven guilty". Caring mothers who have selflessly saved neglected children in the community, are most vulnerable under the subjective and ill-willed actions of an agency that has little oversight, poor training, and minimal education.  On November 8, 2023, Defendant Wheeler, testified under oath before Honorable Edward Guido, Judge, in the Cumberland Court of Common Pleas that she was seeking "Criminal Charges." An Intent to pursue criminal charges is undisputed. On October 13, 2023, Defendant Smith, arrived at Plaintiffs home located at

3807 Bonnyview Road, Harrisburg, Pa 17109. Defendant Smith observed the prescribed bed for A.N.F. and made no report because it was medically necessary. Plaintiff provided Defendant Smith with documentation from the pediatrician, and he rejected it. Defendants recommended "Kinship" of the Smith children with the prescribed bed present. No concern was raised for the Plaintiffs fitness. Only after Plaintiff filed a complaint against the Defendants, they pretended to be concerned about the bed. When Defendant Smith came out to interview the children at their schools, he did not have a warrant and coerced the Feinberg children to remain in the isolated room with him as he concocted false statements regarding the bed. He utilized his undisputed authority to falsify statements.

28.    On November 2, 2023, Defendant Wheeler petitioned the Dauphin County Court of Common Pleas notating statements such as, "A.N.F reported being locked in the bed when he is bad." Not only was this fabricated and motivated by retaliatory intent, but there is clear and convincing evidence that Defendant Smith told A.N.F. that "he was bad and that he was going to take his mother away." Plaintiff reported this to Dauphin County Dispatch on October 19, 2023, nearly two weeks before the Feinberg children were falsely removed by the county. It is on audio recording with Dauphin County Emergency Communications, which the

Defendants are refusing to release despite being served by Court subpoena issued by the Cumberland County Court of Common Pleas. The Defendant's verbal threats triggered A.N.F. causing him to respond with aggression, resulting in his transfer for evaluation at the UPMC Emergency Room on October 19, 2023. Jeff Enders, the Director of Dauphin County Public Safety is intentionally withholding the record and aiding an obstruction of justice. Mr. Enders previously provided Plaintiff with records unrelated to County involvement in 2018. Mr. Enders is unwilling to provide the records in this matter because he was directed by "Stephen Libhart", aka "Officer of Open Records", aka "Chief Clerk", "not to provide the evidence to the Plaintiff as it is incriminating against the county employees". Jeff Enders, along with Stephen Libhart, are both named "Defendants", in the pending federal RICO case. Plaintiff informed the Cumberland County Court of Common Pleas, see _Feinberg, H. v Dauphin County CYS_, et al., do. 2023-09266 that he was refusing to comply with the subpoena. However, due to the active Commonwealth Appeals filed on the docket "1429" and "1430", no motions can be filed on the case. The fact that hearsay was used when there is no evidence to support such, and where the complaint submitted by Defendant Smith, was groundless, and motivated by personal motive, is a clear violation of the Plaintiff's and her

children's Sixth Amendment Rights to Due Process. Plaintiff's children were removed from her care under baseless claims to harm the Plaintiff, and she could not defend herself on November 3, 2023 because she had no knowledge of the filed allegations before they were heard and signed by the Court.

## IV. Plaintiffs' Fourteenth Amendment Claims

29.    Nearly one hundred years ago, the Court acknowledged that "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Pierce v. Society of Sisters, 268 U.S. 510 (1925). Thereafter, in Stanley v. Illinois, 405 U.S. 645 (1972), Court's affirmed the fundamental rights of parents "in the companionship, care, custody, and management" of their children. Id. at 651. That same year, in Wisconsin v. Yoder, 406 U.S. 205 (1972), the Court declared that "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Id. at 232. More recently, the Court declared in Washington v. Glucksberg, 521 U.S. 702 (1997), that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, which protects the fundamental right of parents to direct the care, upbringing, and education of their children. Id. at

720. And in Troxel v. Granville, 530 U.S. 57 (2000), the Court again unequivocally affirmed the fundamental right of parents to direct the care, custody, and control of their children.

30.   Under recent Supreme Court decisions, there is no compelling governmental interest that justifies these severe infringements to Plaintiffs' and her children's First, Fourth, Sixth, and Fourteenth Amendment rights and that can withstand exacting the Amendments' scrutiny.

31.   Defendants violated the Plaintiffs rights to both procedural and substantive due process under the Fourteenth Amendment by constraining her ability to communicate with her children for thirteen days, and then to continue with unnecessary oversight from Cumberland County Children and Youth Services for months without any valid governmental interest, and without affording the Plaintiff any procedural protections, such as notice or a hearing after the children were not adjudicated. On November 16, 2023, the Defendants groundless petition was thrown out and judicially withdrawn by Cumberland County Children and Youth. The veteran social worker assigned to the case, Sandy Gibson, LCSW, has verbally agreed to testify before this Court on the Plaintiff's behalf, but retaliation by the County's administration and state oversight remains a concern. Any individual who supports the Plaintiff's testimony faces risk of intimidation

and harassment. It is well documented that in March, 2024, Mindy Kell, a licensed state investigator with the Pennsylvania Department of Bureau Enforcement and Investigation, resigned from the case after being intimidated by the Defendants legal counsel, Jonathan Stepanian, Esq., and Dauphin County Administration within her department. In 2011, similar incidents occurred during the Jerry Sandusky investigation. Sara Ganim, an investigative journalist published a viral report which resulted in overwhelming public pressure influencing the Commonwealth's efforts for government secrecy, and criminal charges were successfully brought to the Court's attention.

32.    The Due Process Clause of the Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. This clause ensures fair process and safeguards "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "[t]he touchstone of due process is the protection against arbitrary governmental action, including 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Schulkers v.*

*Kammer*, 367 F. Supp. 3d 626, 637 (E.D. Ky. 2019) (quoting *Lewis*, 523 U.S. at 845–46).

33.     The Courts have held that "[i]t is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (collecting cases); *accord Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008) ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." (alterations in original) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006))). In *Bartell*, its explained that "the differences between the procedural interest in raising one's child and the substantive right, and the corresponding scope of the duties imposed on government, are significant. While procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests . . . substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." 215 F.3d at 557–58 (citing *Mathews v.*

*Eldridge*, 424 U.S. 319, 333–34 (1976); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

34.    Defendants unconstitutionally exceeded their powers in both ways in the present case. Defendants violated Plaintiffs substantive right to family integrity because the removal was unwarranted, and contradictory in nature to the way Marcie Smith, a convicted criminal, who recently left her four children without clothes. It was also a violation because the removal was merely initiated as a result of an effort to obstruct justice in a child abuse investigation involving Marcie Smiths neglect of her children and was not supported by any imminent risk for physical injury or compelling governmental interest. Even if the Defendants resort to allegations surrounding the actions taken by the Plaintiff in response to their harassment, none of the Plaintiffs responsive actions holds a candle to the horrific state in which the Smith children were found on October 12, 2023. Plaintiff's actions are consistent on record with a mother who's fearful of retaliation after filing a complaint against the Defendants and who continued to provide her children's needs despite the horrific scenario they were challenged with. Unlike Marcie Smith, whose children were "missing from school for six days" (Sofian, S. Oct. 12, 2023). Plaintiff's children had excellent attendance despite being forced to travel 100 miles daily. The

children were seeing their doctors, and had access to clothing and food. The Feinberg children were not found soiled and unclothed like Marcie Smith's children were found, after she abandoned them for more than twelve hours without proper supervision on October 12, 2023. There is simply no comparison, and the Defendant's motives are black and white. It is evident by the factual timeline of events that the Defendants had no reason to suspect the Plaintiff of child abuse or mental instability affecting the children. In fact, a diagnosis for mental health alone, does not constitute grounds for removal. There are many fit parents that suffer with anxiety and other illnesses. Plaintiff was not afforded any due process for liberty deprivation once the case was withdrawn, and continued to endure unwarranted intervention from the neighboring county agency which was only caused by the initial fabrication. Defendants also violated Plaintiffs right to procedural due process on October 17, 2023, when they coerced the Plaintiff to engage in unethical decision making at the Penn State hospital where she sought medical treatment for the Smith children. As a guardian to the children, who had been effectively caring for their needs and working with their best interest in mind, they overrode her constitutional rights and the children's constitutional rights by forcefully separating them through coercion and threats. Since the Plaintiff was acting in a capacity of

'in loco parentis', removing the children from her care under verbal force could be categorized as a form of interference between a child and caregiver since she had selflessly taken on that role and duty for them for an extended period of time. Without consideration of what had transpired on October 12, 2023, and who was actually meeting the childrens needs, by manipulation and coercion of Penn State medical personnel they placed the children back with a mother who had for years neglected her children's hygiene and shelter stability, and who's actions on October 12, 2023 included illicit drug use, a history of domestic violence, and abandonment were public record. Audio testimony from witnesses Officer Christian Ribec, and Rosa Cruz, the tenant of the residence where the Smith children were found, has been provided and ignored by those responsible to prosecute crime. Although the Plaintiff has consistently supported efforts for reunification in her professional time as a dedicated licensed foster and adoptive mother, this was handled in a way that increased the risk of child endangerment, not by error, but by willful intent to retaliate against the Plaintiff and discredit her reports of neglect incurred by the Smith children. About a week after this Plaintiff voluntarily responded to the Crisis of the Smith children at 63 N. 18th street, Harrisburg, Pa 17103, in which the Defendants were neglecting their duties, the Plaintiff learned that "Mandjou

Sylla", aka "a twenty-year-old male residing at 63 North 18th Street, Harrisburg Pa 17103", engaged in attempted homicide at the location. Three children were shot. The U.S. Marshalls Fugitive Taskforce and members of the Dauphin County's Crisis Response Team responded to the incident and charged Sylla. Ironically, the arresting officer, Andrew M. Bath, who is the same law enforcement officer that was assigned to the Smith children's investigation, never called the Plaintiff in for questioning, and has failed to respond to this Plaintiff for months. The moment he learned that the county employees were at fault, he stopped communicating. Not only did he aid and abet the county employees involved in the crimes listed herein, but he had complete knowledge of the environment in which Marcie Smith abandoned and neglected her children. It is irrational and absurd that a sworn law enforcement officer with direct knowledge of the attempted homicide, at the shared residence (where the Smith children were found after 9-1-1 was called by the Plaintiff on 10/12/2023), failed to investigate Marcie Smith and the county employees. He was informed that she had left them without proper supervision for an extended period of time, and Chief Corey Dickerson informed this Plaintiff that the police report acknowledged the children being found unclothed and soiled in feces. It begs the question, why wasn't Marcie Smith charged with child abandonment, or at least

neglect of a minor? The only logical answer to this question is that due to the county employee's failure and their close relationship with their law enforcement counterparts, prosecution of Marcie Smith would force them to include prosecution of the Defendants, a clear conflict of interest. Under the very noses of the Commonwealth establishment, and contrary to local, state, and federal laws, crimes were committed and continue to be committed until there is justice. "Justice delayed, is justice Denied."

### i. Substantive Due Process

35.    The Supreme Court has repeatedly held that "[i]t is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Thus, in *Lassiter v. Department of Social Services*, the Supreme Court declared that it is "plain beyond the need for multiple citation" that a parent's "desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). And, in *Cleveland Board of Education v. LaFleur*, the Court stated that "freedom of

personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." 414 U.S. 632, 639 (1974); *see also Quilloin*, 434 U.S. at 255 (stating that *LaFleur* "firmly established" the right to personal choice in matters of family life); *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (recognizing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children").

36.     The right to family integrity and association without interference from the state—is the paradigmatic example of a substantive due process guarantee. *See, e.g.*, *Moore v. City of E. Cleveland*, 431 U.S. 494, 498–99 (1977) ("A host of cases . . . have consistently acknowledged a 'private realm of family life which the state cannot enter.'" (quoting *Prince*, 321 U.S. at 166)); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."). The right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference was clearly established at the time of Defendants' conduct. *Troxel*, 530 U.S. at 66.

37.     The state did not have any interest in preventing child abuse in the present case because they had no reason to suspect Plaintiff of child abuse, until Plaintiff complained of Defendants neglect of care with the Smith children. The removal and supervision after the petition was withdrawn contravened "the traditional presumption" articulated by the Supreme Court in *Troxel* "that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69; *see also id.* at 68–69 ("[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."). When, the government prevents a fit mother from being unsupervised with her children "at all times (24/7)" without any compelling government interest, it clearly contravenes this presumption. R. 67-9, Prevention Plan, Pg. ID 1659. The Defendants had fair notice that the Plaintiff had a protected liberty interest in "the companionship, care, custody, and management of [their] children," *Lassiter*, 452 U.S. at 27, and in the right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference, *Troxel*, 530 U.S. at 66.

38.     Plaintiff has a well-established right "to the companionship, care, custody, and management of [their] children," *Lassiter*, 452 U.S. at 27. "The Constitution recognizes . . . a substantive fundamental right to raise one's child," *Bartell*, 215 F.3d at 557. *See also Kottmyer*, 436 F.3d at 689 ("There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law.").

39.     In this case the removal and implemented Family Service Plan constituted an interference with the natural "parent-child relation." *Kottmyer*, 436 F.3d at 689. By arbitrarily mandating the Plaintiff to cooperate with Children and Youth Services and sign a Family Service Plan or risk losing her children, when there was no abuse founded, is a clear violation of Plaintiff's due process right to family integrity under *Troxel*. Numerous Supreme Court cases have found that a parent has a fundamental right to "the companionship, care, custody, and management of his or her children," *Lassiter*, 452 U.S. at 27, and that "so long as a parent adequately cares for his or her children there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children," *Troxel*, 530 U.S. at 68–69. The Supreme Court stated in

*Moore*, "unless we close our eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth Amendment's Due Process Clause, we cannot avoid applying the force and rationale of these precedents to the family choice involved in this case." 431 U.S. at 501. Adequate by definition means "sufficient". At minimum for a child's removal, their food, shelter, clothes, health, and academics would have needed to be lacking. None of the Feinberg children experienced any of this. The only children that did were the Smith children, who's minimum needs were NOT met which is why the county agreed for the Smith children to be kin shipped in the first place. If the Smith children's needs were met, they would have been cared for by their mother all along. Marcie Smith clearly documented that she wasn't in a position to take care of her children. She also documented that she was in need of mental health intervention and that she "would get better for them". This was not merely an issue of housing instability, but there were multiple red flags. To top it off, E.R.S. has ligature marks on the bottom of her wrist and the children were bruised from top to bottom. It doesn't take a scientist to know when a child is not cared for properly. This Plaintiff had helped Marcie numerous times between 2021-2023. She had donated diapers, clothing, and toys. She even offered to assist when this mother gave birth to her twins and

transported her back from the hospital. The Plaintiff even drove Marcie Smith to her mother's funeral despite never meeting her, when no one else would. It was obvious to the Plaintiff that Marcie Smith needed a lot of assistance, but Plaintiff was unaware that Marcie Smith was leaving her four children unattended and unclothed for days when one should have been at school, and without proper supervision, while she engaged in illicit drug use at a hotel downtown. Her receipt from the hotel was also provided to law enforcement, but they concealed the information for their county colleagues. Instead of asking Faye Doctrow to buy her children clothing and food, she had Faye Doctrow pay for a hotel so she could care for her own needs.

### ii. Procedural Due Process

40.    "It is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child."); *Smith*, 520 F.3d at 599 ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." (quoting *Kottmyer*, 436 F.3d at 689)); *accord Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125–26 (3d Cir. 1997).

41.     The decision to cooperate with a Family Service Plan was not voluntarily agreed upon. Any of Plaintiff's "consents" were premised on the misrepresentation that if she does not agree to the Plan, Defendants will withhold her children or even remove them a second time without grounds, which is a form of duress.

## B. Constitutional Violation

42.     The county injected itself into the private realm of family life without any process or any doubt as to Plaintiff's fitness as a parent, in violation of *Troxel*, 530 U.S. at 66. Following the fabricated referral for service, the Defendants are responsible for the actions of Cumberland County CYS staff's interference with Plaintiff's right to be free from government interference. Due to their retaliation, an unnecessary investigation was conducted by Cumberland County and unnecessary services and federal funds were rendered and allocated to the unsubstantiated case because of false claims. It has also caused negative consequences on Plaintiff's professional capacity as an experienced teacher and behavioral therapist and can cause significant financial harm in future employment positions.

43.     Plaintiff made repeated requests for the harassment from the Defendants to cease, both before and after the children were removed

without grounds. Plaintiff was forced out of her home through lies, defamation, and bullying. She was compelled to leave the home she worked hard to purchase, and the county she resided in for 25 years. The harassment and intimidation did not cease. On December 24, 2023, Plaintiff requested from Cumberland County that a Family Service Plan not be executed because there are no grounds for state involvement. Plaintiff provided all documentation to verify requests by CCCYS. On December 28, 2023, CCCYS emailed the Plaintiff requesting to execute home visits and Plaintiff reiterated that absent a government need for interference, it is her family's Constitutional Right to be free from government control and that she is protecting her children from continued trauma with CYS harassment and involvement. Plaintiff informed CCCYS through email that her children attend programs and see doctors regularly that have no concern. There is no need for services and CYS involvement. Plaintiff requested legal correspondence twice but received no response. On January 9, 2024, the case was officially closed by Cumberland County Children and Youth Services.

44. Through their initial actions, the Defendants continued to impose restrictions and interfere with Plaintiff's relationship with her

children for more than two months after their fabricated referral was placed and unfounded. Defendants' interference with the Plaintiffs parent-child relationship, was a violation of her Amendment rights. In so doing, they abridged Feinberg's clearly established right to the companionship and care of her children without arbitrary government interference in violation of the Due Process Clause of the Fourteenth Amendment.

45.    Ultimately, Plaintiff seeks the Court's review of the violations alleged.

## JURISDICTION AND VENUE

46.    This is an action that arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, of rights, privileges, and immunities secured to Plaintiff and her children, by the Constitution of the United States, particularly the First, Fourth, Sixth, and Fourteenth Amendments thereto.

47.    The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331—because the claims arise under the United States Constitution—and 28 U.S.C. § 1343—because Plaintiff seeks relief under 42 U.S.C. § 1983.

48.     This action is an actual controversy in which Plaintiff seeks a declaration of hers and her minor children's rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff and her minor children and grant further necessary and proper compensatory and nominal relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

49.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a Defendant, is domiciled in and operates or does significant business in this judicial district. Additionally, majority of the events giving rise to this action occurred in this judicial district.

## PARTIES

50.     Plaintiff, Hadassah Feinberg, resided in Cumberland County, Pennsylvania. She was employed as an Independent Advocate at H.L. Feinberg Independent Advocacy LLC.

51.     Plaintiff, Minor child E.L.F., resided in Cumberland County with her mother, aka "Plaintiff".

52.     Plaintiff, Minor child A.N.F., resided in Cumberland County with his mother, aka "Plaintiff".

53.     Plaintiff, Minor child E.A.F., resided in Cumberland County with her mother, aka "Plaintiff".

54.     Plaintiff, Minor child B.N.F., resided in Cumberland County with his adoptive mother, aka "Plaintiff".

55.     Defendant, Marisa McClellan, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

56.     Defendant, Currin Haines-Yoder, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

57.     Defendant, Noelle Barrett, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

58.     Defendant Lisa Wheeler, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

59.     Defendant, Kim Deibler, in her official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

60.     Defendant Scott Smith, in his official capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

## FACTUAL ALLEGATIONS

61.     On October 12, 2023, at 12:40 p.m., the Plaintiff was notified by two credible members of the Jewish Community, Faye Doctrow, and Samara Sofian, that the four Smith children had been missing for six days. The Plaintiff reported the missing children Dauphin County Dispatch 9-1-1.

62.     On October 12, 2023, at 6:00 p.m., the Smith children were located by Officer Ribec of the Harrisburg Police Department at 63 North 18th Street, Harrisburg Pa. 17103. The children were found soiled in feces, and unclothed. They had been reportedly abandoned by Marcie Gail Smith, their biological mother, and primary care giver.

63.     On October 12, 2023, at 7:00 p.m. the Plaintiff voluntarily assisted the Smith children, provided them clothing from her trunk in presence of multiple witnesses.

64.     On October 12, 2023, Dauphin County CYS Supervisor, Noelle Barrett, refused to arrive to the scene to aid the Smith children. The Plaintiff transported the four Smith children to her home, released to her care by Officer Ribec, of Harrisburg Police Department. Plaintiff was assisted by a

social worker, and another friend, in transporting the four Smith children to her home located at 3807 Bonnyview Road, Harrisburg, PA 17109.

65.     Upon arrival, Plaintiff bathed the Smith children where she noted numerous bruises on their bodies. She made a report to Childline and two police departments, and tried to contact Dauphin County Children and Youth Services again, but to no avail.

66.      On October 13, 2023, Plaintiff sent Smith child, E.J.S. to school, and took the younger three Smith children to UPMC emergency room located at 111 S. Front St, Harrisburg, PA 17101 where they were diagnosed with suspected child abuse by Alyssa Schatz, PA-C. Alyssa Schatz made a police report and called ChildLine.

67.     On October 13, 2023, at 3:30 p.m., Plaintiff contacted Commissioner George Hartwick III because Dauphin County CYS staff were not coming to aid the Smith children. She talked to his secretary "Julie". Commissioner George P. Hartwick and "Julie" are named Defendants in the pending federal suit for RICO crimes.

68.     On October 13, 2023, at 6:30 p.m. Defendant, Dauphin County Supervisor Scott Smith, came out to the Plaintiff's home to visit the Smith children. Scott Smith photographed the Smith's injuries. During the house tour Scott Smith asked about A.N.F.'s safety bed. Plaintiff provided him

with medical documentation prescribed by a pediatrician and explained that the bed was for A.N.F. safety at night. He had no concern and refused to take documentation offered by the Plaintiff.

69.    On October 15, 2023, Dauphin CYS consented to arrange transportation for the Smith Children from the Plaintiffs home to respective schools for kinship purposes. There were no concerns mentioned by DCCYS regarding Plaintiff's ability to care for her own four children, and four more young children, totaling 8 children, by herself as a single mother.

70.    On October 16, 2023, at 9:30 a.m. DCCYS facilitated a meeting with the Smith children's biological mother, Marcie Smith, and the Plaintiff, regarding kinship. They did not inform the biological father, Eric Smith to attend. At the meeting, Marcie Smith, agreed for her children to remain with the Plaintiff and voluntarily signed legal custody to DCCYS for E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020), E.R.S. (6/18/2020), and (E.N.S. 6/18/2021). At the meeting, Marcie Smith lied about why she was unable to obtain housing for her family. The Defendant had a domestic violence charge for serious bodily injury. She falsely accused Eric Smith, the father, and informed DCCYS that he is the violent one.

71.    On October 16, 2023, at 3:30 p.m. DCCYS case worker "Allison Vajdic" arrived at Plaintiffs home located at 3807 Bonnyview Road,

Harrisburg, Pa 17109 to initiate intake for kinship. She did a tour of the Plaintiff's home. No concerns were noted. During the visit, Plaintiff disputed the agency of choice. She requested to work with Pa. Mentor instead of Families United, as she was already in communication with that agency. DCCYS verbally threatened the Plaintiff that Title IV-E funds would be withheld for the Smith children's kinship if she did not agree to work with Families United. The Plaintiff stood her ground and told them she would not agree.

72.     On October 17, 2023, Plaintiff filed a complaint against DCCYS for withholding funds for the Smith children's basic needs under Title IV-E and for failure to investigate the Smith children's abandonment and physical abuse. At 11:00 a.m. Plaintiff took the Smith children into Penn State Hershey Medical Center to follow up with their special child abuse unit. Plaintiff informed Dr. Kathryn Crowell of DCCYS's failure to assist the children. Plaintiff had also sent a message through the Penn State portal prior to the visit and received no response. During the visit, E.S. DOB 6/18/2020, was banging his head on the hard-surfaced floor in room 54. Dr. Crowell and her team failed to provide adequate medical care for his needs, which was documented by Plaintiff to DCCYS through email and telephone calls. Plaintiff served a subpoena to obtain video footage of the

incident, issued by the Cumberland Court of Common Pleas Prothonotary Office, and filed it under civil case: *Feinberg, H. v. Dauphin County CYS, et al., see* docket number 2023cv02165., However, it was intentionally blocked by Penn State Hershey legal team, and the footage documenting the willful fraud and child endangerment of E.S. by hospital staff was not provided to the Plaintiff.

73.    Plaintiff informed DCCYS she could not take E.S. home without an implemented safety plan in place due to head-banging self-injurious behavior. Plaintiff has vast experience with behavioral therapy from professional experience. Dr. Crowell and DCCYS staff ignored Plaintiff's reports. At 3:00 p.m., Plaintiff was advised by a Licensed Clinical Social Worker and Director of an Adoption and Foster care Agency in Dauphin County, that she should inform medical staff of her timely obligation to leave to get her own children off the bus. Since E.S. was a danger to himself, by head-banging, he needed to remain under medical observation.

74.    Two staff on the child abuse team, one male and one female (personnel names unknown), threatened the Plaintiff stating, "If you don't take all three children home, you are not taking any of them home." They did nothing to prevent E.S. from injuring his head. Plaintiff was forced into a corner, where the safest choice was to leave E.S. in the care of medical

staff, along with his two siblings, and leave to get her own biological children off the bus from school. Per the Plaintiff's request, the LCSW from Jewish Family Services, remained on the phone with Plaintiff until she stepped out of the hospital building. Plaintiff was in absolute fear of the illegal and unethical actions of the Penn State Hershey Staff. Plaintiff filed a police report against Dr. Kathryn Crowell with Officer Libby Strayer from the Derry Township Police Department, see report number DR-24-03954, for tampering with medical documentation, fraud, and failing to provide medical care to E.S.

75.    On October 18, 2023, Plaintiff visited the Harrisburg Police Department located at 123 Walnut Street, #217, Harrisburg, Pa. 17101 and Victim Witness Department located at 25 South Front Street, 7th Floor, Harrisburg, Pa. 17101 to advise and follow up on complaints about the Smith children's endangerment by the biological mother and DCCYS's retaliation, fraud, obstruction of justice, and intimidation for exposing them.

76.    Subsequently, Defendant Smith filed a fabricated CPS report against Plaintiff. Plaintiff was uninformed until Defendant Smith visited the children's schools on October 19, 2023. In his report, Defendant Smith falsified statements against the Plaintiff without grounds. Plaintiff requested the records from the County and their legal counsel, Donald Carmelite,

Esq., but the requests have been ignored. It is important to note, that for due process to be commenced and discovery to be conducted, the records are essential for the judicial process. By intentionally obstructing the release of records from Dauphin County Children and Youth Services, Childline reports, and Department of Human Services records, the Defendants are tactically preventing the Plaintiffs expert witness, Charles F. Lorbeer, PhD, from assessing the concerns and providing this Court with an informed statement on the matter required by a Certificate of Merit.

77.     It is under the discretion of this Court, but respectfully requested by this Plaintiff, that the Defendants be directed by official Court Order to <u>supply and provide a notarized copy of the official Feinberg CPS record, unredacted and in its entirety, within a reasonable time frame</u>, for review, in order to execute and comply with the rules of due process and discovery pursuant to the federal laws of civil procedure.

78.     On October 19, 2023, Defendant Smith went into Sara Lindemuth Anna Carter Primary School located at 1201 North Progress Avenue, Harrisburg, Pa 17109, and in to the Silver Academy private school located at 2986 North Second Street, Harrisburg, Pa. 17110, unannounced, to conduct groundless interviews from the Feinberg children without a warrant. A.N.F., E.L.F., and E.A.F. were forced against their will to

cooperate with the Defendants interrogations, in a secluded room, alone with the Defendant with the door closed. Defendant Smith asked the children to tell him about "dark secrets" and attempted to coerce them to make false statements about A.N.F.'s safety bed in the Plaintiff's home. They were uncooperative. Principal Samara Sofian, the Plaintiff that she relayed to Defendant Smith that she was "Not concerned for abuse or neglect of the Feinberg children", and that she, "Takes her mandated reporting responsibilities seriously." Defendant Smith interrogated the Feinberg children for an unreasonable period. E.L.F. informed Defendant Smith that the bed was to, "Provide A.N.F. safety at night because he was a danger to himself and his family without supervision". E.L.F. informed him that A.N.F had a history of safety concerns.

79.    Defendant Smith's interview triggered excessive fear, panic, and symptoms of anxiety in A.N.F., who is an eight-year-old, verbal-autistic child, and already diagnosed with underlying anxiety. He told A.N.F. that, "He is bad, and that he is going to take his mother away". Upon the children's return from school, A.N.F. immediately exhibited severe panic attacks, causing shallow breathing, confusion, and erratic behavior. The Plaintiff called 9-1-1 twice and A.N.F. was transported to the UPMC Emergency Room located at 111 South Front Street, Harrisburg, Pa.

17101. What should have been a birthday celebration for E.A.F., turned in to a nightmare of permanent trauma.

80.     Upon arrival at the hospital, the treating physician increased A.N.F.'s anxiety medication, and he was discharged home with the Plaintiff. Plaintiff repeatedly implored law enforcement to protect her family against DCCYS employees' actions, but they declined stating, "Municipal can not intervene in County matters" and that Plaintiff should "File a complaint with Attorney General" (Corporal Glenn, Susquehanna Township Police Department).

81.     Plaintiff made multiple attempts to file complaints with Attorney General which are documented, but she was advised by staff to contact the Department of Human Services who oversees Dauphin County Children and Youth Services. For days, Plaintiff was sent in circles between authorities who refused to get involved.

82.     On October 20, 2023, Defendant Smith arrived unannounced at UGRO Childcare Center located at 3880 Tec Port Drive, Harrisburg, Pa. 17111, where B.N.F. was enrolled part-time. Upon his arrival, daycare staff contacted the Plaintiff to inform her that Defendant Smith was proceeding against their request to await law enforcement presence, and/or a third-party, as directed by the Plaintiff. Plaintiff had openly communicated with

UGRO administration about her concerns for county employee retaliation. They were also informed that Plaintiff had been licensed as a foster care parent and adopted through Dauphin County's recommendation in 2022, and that Plaintiff had a verbal contract with the county to satisfy the financial cost of B.N.F.'s attendance at UGRO, in lieu of an increased annual per diem.

83.    Defendant Smith proceeded with the interview for a child that was not at risk, against the directive of his custodial parent, and against the directives of his educational guardians, in the academic setting, without suspicion of abuse.

84.    On October 20, 2023, Plaintiff traveled with her four children to visit family friends in Maryland and seek legal advice. During her travels, she contacted law enforcement in Baltimore, Maryland, seeking advice against Dauphin County employees. The officer did not respond, and it is fair to presume, that he contacted Dauphin County.

85.    Plaintiff proceeded with attempts to contact Maryland State Police, and they directed Plaintiff up the chain of command. Through each step, Plaintiff stayed in close contact and consulted with family members, close friends, and licensed professionals, about the incidents.

86.     Plaintiff contacted multiple licensed attorneys, one of whom is an experienced federal attorney in the Middle District Court. He requested anonymity, but informed the Plaintiff of the statewide corruption, intimidation, and retaliation, historically documented relating to the child protective agency, and that successful litigation against CYS misconduct was an uphill battle. A separate civil rights attorney offered the Plaintiff representation on terms of executing a binding legal contract in the amount of $100,000, but the Plaintiff could not commit for financial reasons.

87.     On October 23, 2023, Plaintiff learned that public corruption is handled and investigated primarily by the Federal Bureau of Investigation. Since she was out-of-state, she requested to visit the nearest FBI field office to report the county employees abuse of power, fraud, and corruption. Plaintiff met with Supervisory Field Agent, Kenneth Keller, based in Manassas, Va., about an hour drive from her stay. Agent Keller informed her that due to jurisdiction, the Philadelphia Field Office, would be her best point of contact, but that per policy he would complete an official report. Agent Keller provided the Plaintiff with his email address and phone number. During the three-hour visit, Agent Keller and his co-agent, "Ben" observed the Plaintiff with her four children in person and made no attempt to file a ChildLine report for concerns of the Plaintiffs interactions with her

children during the visit. The children were clean, fed, and dressed appropriately. Although the children became restless as the visit progressed, the agents did not pass judgement or show reason for concern with the Feinberg children.

88.     On October 24, 2023, Plaintiff returned to Dauphin County with her four children and dropped them off at school. Shortly after, Plaintiff was apprehended by a Susquehanna Township Police Officer "AJ Young", without committing a traffic violation. His partner, Officer Sederic Parchment, arrived on scene, but was dismissed upon arrival when Officer Young realized that the Plaintiff knew Officer Parchment from the community. Plaintiff appealed the citation and served a subpoena on Officer Parchment to testify against Officer Young who made false statements in his citation. However, prior to trial, Corporal Julio Ferrufino, aka "Young's Supervisor", dismissed the citation. He did not inform the Plaintiff of his intent to dismiss the citation prior to trial and waited until the Plaintiff showed up to inform her. On December 18, 2023, the Plaintiff showed up to the magistrate court with two witnesses. AJ Young is named a Defendant in the pending federal suit for RICO crimes.

89.     Triggered by the groundless apprehension, Plaintiff had no doubt her family was being targeted, and followed the suggestion of FBI

Agent Keller to contact the field office who held jurisdiction covering her residence; Philadelphia FBI Office. Upon her arrival, she was turned away without interview. The FBI Agent, who refused to provide his name, did not permit entry to the Plaintiff to file an updated report conflicting with their policy. Plaintiff contacted Agent Keller by phone to prove the validity of her previous communication with a federal agent. Agent Keller informed the Philadelphia Agent that the report was not yet complete in the system, but that it was pending. The Agent disregarded Keller's statements, and Plaintiff reluctantly returned without guidance to Dauphin County. Plaintiff called the Philadelphia Field Office to provide physical and audio evidence but they never returned her call. They have repeatedly relied on the statements from state actors despite their baseless grounds. An agency established to safeguard and protect, once again, failed to protect.

90.     On October 26, 2023, a week prior to the groundless removal of Plaintiffs children, Plaintiff filed a rushed, and incomplete Complaint at the Commonwealth Court in attempts to alert judicial authorities of the crimes being committed at the county, not realizing the web of organized crime spanning across multiple agencies. After communicating with a senior solicitor at the Commonwealth Court, Plaintiff was informed that jurisdiction would begin at the Court of Common Pleas. It is important to note, that

although Plaintiff is educated, she remains a self-represented party, and has no degree in law. Therefore, any legal efforts she has taken to request emergency injunctions from the Courts are merely educated guesses, combined with some research, and communication with attorneys that have been willing to discuss her inquiries. Concurrent with the legal steps she was taking, Plaintiff was actively responding to significant fear from their harassment and retaliation both in their home and schools. This combination is difficult for any human being to maintain for an extended period of time. It takes strength, persistence, dedication, and focus to effectively litigate against an overpowering authority and government actor, while at the same time sanely maintaining the needs of four young children. Plaintiff's instincts as a mother protecting her young, kicked in, as she fought against an organized group of criminals, with the help of adrenaline and supportive friends and family. There was no room for exhaustion or fatigue. The Plaintiff was naturally overcome by the fight instinct, and when that was unsuccessful, she resorted to fleeing to a place that could protect her family outside the Defendant's jurisdiction.

91.    During the unprecedented sequence of events, and without any assistance, Plaintiff was compelled to permanently leave her home with her four children. A mortgage of $2177 per month, would not outweigh the

priceless cost she faced if her children were permanently separated without grounds. She had lived in Dauphin County for 25 years and was established within her community. However, the Plaintiff was obliged to prioritize the immediate risk to her family and protect her children and herself against criminal acts committed by the Defendants. Plaintiff fled Dauphin County preemptively to avoid losing her children permanently through lies, fraud, and malicious corruption. Shortly thereafter, Plaintiffs notions, and gut instinct, were confirmed regarding the Defendants intent and objective.

92.    Plaintiff is certain, and without regret, that the lifesaving decision she made to flee Dauphin County's crimes, is what saved her family. Statistically, Dauphin County families who have been fraudulently harassed and harmed have permanently lost custody of their children. Matthew and Carolyn Peterson, fellow foster, and adoptive parents residing in Susquehanna Township, who positively impacted hundreds of vulnerable children, were harmed permanently without recourse by the same county and state actors. Their six children were trafficked by the same Defendants in 2017 on grounds that went unfounded. They were verbally threatened and intimidated, by Detective Lee Ann Tarasi, and the same Defendants at DCCYS. They were not afforded legitimate due process and were stripped

of their constitutional rights under the same authority. Carolyn Peterson suffered two consecutive heart attacks because of the overwhelming emotional distress.  Reunification did not occur, despite the lack of findings. It is only upon the Plaintiff's publication of the Defendants crimes, that Plaintiff learned there were other victims. It is quite common for criminals to silence their victims through threats and gaslighting. Marcie Smith's father's crimes also took years to be publicly addressed. For years, his young victims were afraid to speak out so they would not face backlash from the Jewish community because Philip Wittlin was considered a prominent Cantor at the Chizuk Emunah Synagogue. When will state actors be held liable for their white-collar crimes? Public interest in this matter is compelling. In Adams County, three state actors were recently charged with child endangerment after Iris Mummert, a fifteen-month-old baby was found deceased after the county overlooked concerns from the public. The Smith children who were abandoned by their mother, left soiled in feces, and unclothed on October 12, 2023 face the same risk. This nails on the head, the underlying failure of the county welfare system that no one seems to be addressing. In Adams County, the employees were charged, but only due to the severity involving a death and pressure from the media. Is that what it takes for a county employee to be held liable? Jarrod Tutko

never had justice even after his corpse was found rotting on the second or third floor of his Green Street home. The Commonwealth must protect its children and hold criminals, regardless of government position, accountable. The four Smith children were neglected, not just one child, but four, who were left to fend for themselves for over twelve hours, each one of them lacking bladder control upon discovery. If Faye Doctrow had not informed the Plaintiff of the missing children, who knows how their story would have ended. To conceal, control, and keep their authoritative positions in check, the Defendants preferred to shift blame for their mistakes and make the Plaintiff "look crazy," then accept accountability. They preferred to endanger a total of eight children, then risk losing their job or being arrested.

93. Cumberland County made the ethical choice not to follow Dauphin County's directive. The Defendants attempted to influence the neighboring county during their meeting, but Cumberland County conducted their own meeting separately after they had met with the Defendants. The Defendants fabricated allegations didn't "sit right" with them, so they made their own plan (Sandy Gibson, LCSW). Perhaps the Defendants believe that every time Plaintiff drives her vehicle across the Susquehanna River bridge which connects the two counties, she

"transforms" from "stable" to "unstable", or perhaps the water in Dauphin County is polluted with "mental instability" and in Cumberland County the water is filtered? Strange and bizarre one might think. Plaintiff cannot be "crazy" in Dauphin County, and "parentally fit" in Cumberland County? Also people don't change overnight. A loving mother who fostered and adopted within the last year, and is trying to aid other children at risk, is clearly not neglecting her own biological children. She is driven by an underlying passion to help and nurture. The sequence of events speaks for itself. The physical timeline tells the story of what transpired, when it transpired, and which party is credible in this lawsuit.

94.     Towards the last week of October 2023, Plaintiff fled with her four children to the neighboring Cumberland County. Plaintiff consistently ensured that her children's daily attendance in their Dauphin County schools would not be affected and continued to take her children to all their scheduled medical visits in Dauphin County. No concerns were reported for neglect, abuse, or mental instability by any mandated reporter in the schools or doctors' offices. The only reports made to date, were made by individuals and state actors, who had a personal and professional interest to harm the Plaintiff. In fact, it is documented and supported that the Feinberg children were thriving on November 1-2, 2023, when B.N.F. and

A.N.F. were present at a Penn State Doctors appointment, the day preceding the false removal of the children which alleged "imminent risk." The <u>actual risk</u> was the county's harassment, fraud, and corruption to cause a permanent separation between a mother and her children as punishment.

95.    In between the dates of October 18, 2023, to November 3, 2023, the Defendants used their authoritative powers to work collaboratively with Detective Lee Ann Tarasi and Officer Young from the Susquehanna Township Police Department, to devise, lure, ambush, falsely remove custody, and threaten the Plaintiff with crimes she did not commit. Detective Tarasi is named a Defendant in the pending federal lawsuit for RICO crimes.

96.    Unbeknownst to the Plaintiff at the time, the Defendants and their colleagues have a vast history of committing such crimes together, against numerous victims, and have never been investigated by any agency. The Defendants in this case, along with the Defendants in the pending federal suit continue to be employed without suspension, corrective action, or criminal charges, despite the heinous crimes they have committed under the mask of the Commonwealth's immune umbrella.

97.     Detective Tarasi contacted the Plaintiffs peer, Amy Otstott, and falsely informed her that she was investigating the crimes of the county and needed the cooperation of the Plaintiff. In response, Amy Otstott convinced the Plaintiff to schedule a meeting with Detective Tarasi on November 3, 2023, at her vacant home in Dauphin County. Under the impression that a law enforcement official was assisting, the Defendants successfully lured the Plaintiff back to her uninhabited Dauphin County home located at 3807 Bonnyview Road, Harrisburg, Pa. 17109, where they served her with papers to remove the care and custody of her children under falsified grounds for "imminent risk". This was commenced despite DHS's investigation conducted by Carrie Self on October 25, 2023, who claimed to "prioritize" and have more concern for the safety allegations regarding the Smith children, and not concerned for the false allegations made against the Plaintiff involving the Feinberg children. She confidentially informed the Plaintiff that Plaintiffs complaint against the Defendants preceded their retaliatory complaint, and they were not aware.

98.     On November 6, 2023, in the chambers of Presiding Honorable John J. McNally, Judge, of Dauphin County Common Pleas, Plaintiff informed him of the corruption, retaliation, and jurisdictional dispute. Honorable McNally subsequently ordered the case transfer to Cumberland

County Court of Common Pleas and Cumberland County Children and Youth Services (CCCYS).

99.    On November 8, 2023, Honorable Edward E. Guido, Judge, reluctantly accepted the transferred case in Cumberland County. During the hearing, the Plaintiff was denied her request to self-represent, and was appointed public counsel on the spot, who was not familiar with the case. She was not provided ample notice to subpoena witnesses, and was alone in the Court. The Plaintiff was denied her constitutional rights to due process and prevented from being able to respectively object to statements made by Defendant Wheeler who perjured herself before the court. During the hearing, Defendant Wheeler requested to withdraw A.N.F.'s enrollment in the Cumberland school and return it to Dauphin County against his mother's calculated decision to avoid the Defendants jurisdictional abuse of power. Defendant Wheeler's request was denied by Honorable Edward E. Guido. Defendant Wheeler was questioned by Honorable Guido as to why she had withheld A.N.F.'s attendance at school. She had no justified response, and he directed her to send A.N.F. to the Carlisle Area school the Plaintiff had him enrolled at.

100.  Between November 8, 2023, through November 15, 2023, CCCYS confirmed that there was no imminent risk to the Feinberg children

despite the exhaustive claims by the Defendants. Sandy Gibson, LCSW, stated that she "found it odd", that the children had been removed without spare clothing and belongings when they were not being harmed and all their needs were being met, unlike the incident of the Smith children who were naked and soiled when they were found by Police officer Christian Ribec.

101. On November 15, 2023, Plaintiff served a subpoena from the Cumberland Court of Common Pleas requesting the records from Jeff Enders, Director of Dauphin County Dispatch. Her subpoena was ignored.

102. On November 16, 2023, CCCYS withdrew DCCYS's petition for Dependency, and the Plaintiff's children were returned without adjudication.

103. Plaintiff cooperated with CCCYS reluctantly by signing releases of her private information regarding medical and mental health records out of fear that her children could be removed again from her care. She felt compelled through because of the Defendants abuse of power, and the actions they had taken to harm her family.

104. Since October 2023, the Plaintiff and her children have continued to experience severe post-traumatic stress symptoms caused by the Defendants crimes. The children are fearful to sleep alone, and the presence of any authorities remind them of the horrors commited by

Dauphin County employees. Statistically, it has been proven that children placed in foster care have an increased risk of suicide. The abuse CPS workers cause to children who do not belong in foster care is rarely accounted for, which unequivocally contradicts the laws imposed against abusive parents. It appears that State Actors have immunity for child abuse crimes.

105.  On January 4, 2024, Plaintiff requested records under the Right to Know Law from the Dauphin County Department of Public Safety and filed a timely appeal, but Joshua Young the Senior Officer of Open Records denied the appeal as "untimely" referencing the subpoena from November 15, 2023, which was completely unrelated. Joshua Young is also named a Defendant in the pending federal suit for RICO crimes.

106.  On March 1, 2024, Plaintiff filed a request under the Right to Know Law for open records with the Pennsylvania State Police inquiring about the complaint she had made in person to State Trooper Paige Kulsa on November 3, 2023, at the Carlisle barracks. Plaintiff had gone to the State Police with her children's medication shortly after they were removed on false grounds. She went there twice and begged them for almost an hour to transfer the lifesaving medication to her children and was forced to leave by their staff. After a significant delay, on April 18, 2024, Plaintiff

received a written response through email stating that no report was ever filed by State Trooper Kulsa in the database.

107. Plaintiff has physical evidence of the timestamped photographs at the state police on November 3, 2023, which exhibit a large blue suitcase filled with clothing, medication, and the children's belongings that were never transferred to them. Plaintiff also has documentation of the emails sent to Trooper Kulsa and Detective Tarasi on November 3, 2023, stating the urgency and imminent risk her children were in without access to the medication, thereby causing child endangerment and resulting in development of a fever which was reported by Jeni Goodyear-Zambon, a fellow foster mother caring for B.N.F. They paid no regard to the children's medical needs, and shifted blame on the Defendant's for their failure to provide the medication in a timely manner to the Feinberg children.

108. Pursuant to Pennsylvania State Police Policy FR 2.14,

> "When the public requests assistance or advice, or makes complaints or reports, either by telephone or in person, all pertinent information shall be obtained in an official and courteous manner and shall be properly and judiciously acted upon consistent with existing rules, regulations, and policies. The requesting person shall not be referred to another agency in matters necessitating police action. Instead, all information shall be made available to the agency or department having jurisdiction in accordance with existing regulations. In cases of emergency, it may be necessary to provide immediate police service and then notify the proper authority."

109. The policy also defines the duties for taking reports pursuant to Pennsylvania State Policy FR 2.18:

> "Members shall submit all necessary reports on time and in accordance with existing regulations. Reports shall be truthful, and no member shall knowingly enter or cause to be entered any inaccurate, false, or improper information or date, or misrepresent the facts in any record or report."

110. Not only did Trooper Kulsa and Detective Tarasi, sworn law enforcement officers in the Commonwealth, fail to assist such basic requests regarding the welfare of the Feinberg children but they violated their constitutional rights and committed child endangerment when they knew the Plaintiff had no access to deliver her children's medication, punishable by state and federal law. They actively engaged in serious crimes listed under the RICO umbrella which is pending in the related federal suit. The Plaintiff submitted a complaint against State Trooper Kulsa on October 18, 2024, as soon as she learned that a report was never filed, it was dismissed within less than 24 hours without investigation. The reference number is 01HVSJQCZJ-WXJTWZ83-TRMH5RYR.

111. On April 3, 2024, Plaintiff contacted Agent Keller, in response to an email she received from him. He informed her that despite his attempts to communicate with the FBI Philadelphia Field Office, he has no jurisdiction in Pennsylvania. He informed the plaintiff of her options to file a

complaint with the Department of Justice for review of the internal handlings conducted by the Philadelphia Field Office.

112.  Plaintiff filed a complaint with the Department of Justice, and on April 16, 2024, she filed a complaint with the Government Accountability Office for fraud, waste, and abuse by the Defendants.

113.  Contemporaneously, on April 5, 2024, Plaintiff filed an appeal with the Dauphin County Clerk of Court in re: "Appeal of District Attorney's Denial" for the Private Criminal Complaint lodged against Marcie Gail Smith and the Defendants on February 1, 2024, at MDJ 12-1-05. Around January, 2024, Assistant District Attorney Colin Zwally stated to the Plaintiff that he has a "job to protect" while in the presence of CID Chief Corey Dickerson. Both state actors are named Defendants in the pending federal suit for RICO crimes. Plaintiff contacted the Philadelphia Field Office to provide physical and audio evidence, but they have not responded. As of this date, the Review for the Private Criminal Complaint has not been docketed by the Dauphin County Court Administrator, Stephen Libhart, because he is a Defendant in the pending Federal case for RICO crimes. There is a challenging conflict of interest to navigate, hence the reason a successful RICO suit is rare, but not impossible.

114.  The scale of organized crime, fraud, kidnapping, and corruption being committed across the Commonwealth by political and state actors is overwhelming, unconstitutional, and needs to be brought to light. The pending federal suit for RICO crimes shall address in detail the web of crimes and individual involvement, injuring numerous innocent victims of the last few years.

115.  Throughout this litigation process, the demand to procure an Amended Complaint has retriggered the suppressed trauma which is innately challenging. All aspects of the Plaintiffs life have been damaged, and affected in a way that will never be repaired. Plaintiff incurred excessive debts because of the Defendants crimes, and lost thousands in equity amidst the swift sale of her home, which she had no plans to sell, prior to the Defendants horrific actions.

116.  The Plaintiffs credit declined due to the mortgage forbearance applied. It was also damaged due to emergency over-utilization necessary for temporary shelter for her children. As the Plaintiff and her children struggled to survive, they could not qualify for food-stamps under the mortgage and additional rental payments accrued because there is no guidelines exist to calculate and consider this form of domestic "refugee crisis" caused by Dauphin County Children and Youth agency. Plaintiff

employed survival hacks, such as watering down whole milk, increasing inexpensive carbs, i.e., rice, pasta, and purchasing unpreferred groceries that were marked down as for soon to expire or next day break at Walmart. While this may be instance that occurs in third world countries, this should not be caused to occur in a progressive democratic country who resources are endless. Most certainly, this should not be caused by the very same agency that was established to protect families and children. Legislature has failed the communities and populations by enabling such authorities to have unlimited excess discretion against innocent victims. Attempts to raise money through crowd funding were futile. The children were disenrolled from long-term community programs they could no longer access. The children were isolated from their community of friends who were afraid of the Defendants authority. She incurred excessive transportation costs due to the distance between the Cumberland County residence and the children's school in Dauphin County.

117.   Plaintiffs professional and personal reputation, as a mandated reporter is permanently destroyed in Dauphin County.

118.   Plaintiff and her children have been displaced from everything they considered routine and were forced to adapt to distant changes they never sought, forced by the Defendants actions.

119.   The Plaintiff's children have lost relationships with friends since their parents fear the county agency's retaliation.

120.   Under color of state law, each named Defendant has violated the clear and undisputed constitutional rights of the Plaintiff and her children included in this Complaint to obstruct justice and conceal the crimes committed involving the Smith children, see Amended Exhibits; "Exhibit 1," "Exhibit 2," "Exhibit 3," "Exhibit 4," "Exhibit 5," "Exhibit 6," "Exhibit 7," "Exhibit 8,"  "Exhibit 9," "Exhibit 10," "Exhibit 11,"   "Exhibit 12," "Exhibit 13,"  "Exhibit 14,"  "Exhibit 15,"  "Exhibit 16,"  "Exhibit 17," "Exhibit 18,"  "Exhibit 19,"   "Exhibit 21,"  and "Exhibit 22,"  and incorporated herein.

121.   The Defendants have taken measures to manipulate medical personnel's assessments of the Smiths injuries. They have also acted criminally by ensuring their colleagues, aka "District Attorney Francis Chardo", "Assistant District Attorney Colin Zwally", and "Chief Detective Corey Dickerson", act in an unethical manner withholding warranted criminal prosecution naming the Defendants, Marcie Smith, and Kathryn Crowell. History in the Commonwealth has proven to protect the Defendants illegal conduct, while harming its civilian population. For this reason, a pending suit for RICO charges is extremely vital in preserving the

constitutional rights of every victim these Defendants have harmed and will harm in the future. There shall be no more silence.

122.   Pursuant to 42 U.S.C. § 1983, U.S. Const. Amend I., U.S. Const. Amend. IV., U.S. Const. Amend. VI, U.S. Const. Amend. XIV., 18 U.S.C. § 1001, 42 U.S.C. § 672, 42 U.S. Code § 1985, Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"), 42 U.S.C. § 12101 (1990), and  criminal violations including, but not limited to, Title 18, U.S.C., § 241, Title 18, U.S.C., § 242, Title 18, U.S.C., § 245, Title 18, U.S.C., § 246, Title 18, U.S.C., § 373, Title 18, U.S.C., § 1201, Title 18, U.S.C., § 1204, Title 18, U.S.C., § 1503, Title 18, U.S.C., § 1505, Title 18, U.S.C., § 1506, Title 18, U.S.C., § 1510, Title 18, U.S.C., § 1511, Title 18, U.S.C., § 1512, Title 18, U.S.C., § 1513, Title 18, U.S.C., § 1514, Title 18, U.S.C., § 1518, Title 18, U.S.C., § 1592,  Title 18, U.S.C., § 1623, Title 18, U.S.C., § 1621, Title 18, U.S.C., § 1622, Title 18, U.S.C., § 1623, Title 18, U.S.C., § 1957, Title 18, U.S.C., § 2236, Title 18, U.S.C., § 2237, Title 18, U.S.C., § 2340, Title 18, U.S.C., § 4304,  and Title 18, U.S.C., § 6301 for declaratory and injunctive relief, as well as nominal, punitive, and compensatory relief, to redress and to prevent the deprivation of rights, privileges, and immunities under the First, Fourth, Sixth, and Fourteenth Amendments, to the United States Constitution, caused by the

Defendants through retaliation against freedom of speech, warrantless

search and seizure, false hearsay evidence, interference of parental rights,

abuse of power, discrimination against a disability, fraud,

misrepresentation, child endangerment, concealment, corruption,

obstruction, retaliation, intimidation, and harassment, the Defendants,

having not acted lawfully in their professional or personal capacity, and

having committed State and Federal violations both civil and criminal; are

allegedly guilty of the following crimes.

123.  On information and belief, when the county, particularly

DCCYS, and CCCYS expend federal dollars obtained through Title IV-E

federal funds allocated for families at risk, it must be spent on families in

need of services, and not as kickbacks, bonuses, or increased payout for

their salaries. Since voluntarily services were already being obtained by the

Plaintiff without DCCYS's involvement, double dipping is considered fraud,

waste, and abuse. The Defendants participation in committing fraud, waste,

and abuse, of the federal funds was referred to the Department of Justice

and the Government Accountability Office (GAO) on April 16, 2024, see

COMP-24-003062.

124.   The Family First Prevention Services Act (FFPSA), enacted as part of Public Law (P.L.) 115—123, authorized new optional title IV-E funding for:

> "Time-limited prevention services for mental health, substance abuse, and in-home parent skill-based programs for children or youth who are candidates for foster care…"

125.   Since the Plaintiff's children did not meet criteria as candidates for foster care, and were referred solely as retaliation, the federal funds obtained by the Defendants were misappropriated. Plaintiff had ongoing services for her children prior to the Defendants involvement.

## COUNT I

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States; U.S. Const. amend. 1).

## COUNT II

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. IV).

## COUNT III

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. VI).

## COUNT IV

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrete, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. XIV).

## COUNT V

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 18 U.S.C. § 1001).

## COUNT VI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S. Code § 1985).

## COUNT VII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO"),).

## COUNT VIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C., §  241).

## COUNT IX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 242).

## COUNT X

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 12101 (1990)).

## COUNT XI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 6301)).

## COUNT XII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 245).

## COUNT XIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 373).

## COUNT XIV

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin-Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1201).

## COUNT XV

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin-Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 246).

## COUNT XVI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin-Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1204).

## COUNT XVII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1503).

## COUNT XVIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1505).

## COUNT XIX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1506).

## COUNT XX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, , for their violation of Title 18, U.S.C. §1510).

## COUNT XXI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1511).

## COUNT XXII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1512).

## COUNT XXIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1513).

## COUNT XXIV

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1514).

## COUNT XXV

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1518).

## COUNT XXVI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1592).

## COUNT XXVII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1621).

## COUNT XXVIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §1622).

## COUNT XXIX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1623).

## COUNT XXIX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 1957).

## COUNT XXX

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 2340).

## COUNT XXXI

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. §4304).

## COUNT XXXII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 2236).

## COUNT XXXIII

(Plaintiff Hadassah Feinbergs claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of Title 18, U.S.C. § 2237).

126.  Plaintiff, Hadassah Feinberg, re-alleges and incorporates by reference all allegations contained in the forgoing paragraphs of this Amended Complaint as if fully set forth herein.

127.  The First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution ("Constitution") protect the associational, free speech, protection from warrantless search and seizure, affordability of

Due Process, and right to parent without government interference to the United States citizens.

128.   Under color of state law, defendants Marisa McClellan, Currin Haines-Yoder, Kim Deibler, Noelle Barrett, Lisa Wheeler, and Scott Smith, violated and continue to conceal and obstruct Plaintiffs, free speech against their crimes, protection from warrantless search and seizure, affordability of Due Process in multiple Courts, and her rights to parent her four children without government interference under the Constitution.

129.   As a direct result of said Defendants' actions taken, Plaintiff and her minor children's constitutional rights:

> a.   have been violated by an obstruction of justice, fraud, malice, and retaliation by the Defendants;
>
> b.   have been deprived, contrary to the local, state, and federal laws of the United States foundation; and
>
> c.   remain at great risk of ongoing physical, emotional, and financial harm; which is inherently a violation of the First, Fourth, Sixth, and Fourteenth Amendment rights, for which there is no adequate remedy at law.

130.   If not enjoined by this Court, the Defendants shall continue to engage in <u>unconstitutional and criminal actions</u> resulting in deprivations

and abridgments to their victims, afforded constitutional rights, which thereby contradicts the Commonwealths public interest, and challenges the Plaintiffs constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments. It results in senseless harm, damage, and injury, for which there is no adequate remedy at law. The Defendants habitual actions have injured vulnerable individuals across the Commonwealth population, who reside in the State of Pennsylvania. The Defendant will not cease to commit crimes until they are forcefully apprehended by Court Order, judicial involvement, and legislative revision. The Defendants actions have injured and will continue to unequivocally harm innocent children, parents, and extended family members, who refuse to submit, concur, and/or pose a <u>political or authoritative</u> "threat", to the state actors and their objectives.

## PRAYER FOR RELIEF

131. **WHEREFORE**, Plaintiff prays that this Court:

a. enters a judgment based upon past, current, and future physical, monetary, and emotional damages, and losses, to the Plaintiff and her four children:

i. that to the extent the Defendants actions are deemed unconstitutional on their face and as applied in that they impermissibly abridge Plaintiffs' First, Fourth,

Sixth, and Fourteenth Amendment Rights of free speech, protection from warrantless search and seizure, affordability of Due Process in varying related legal proceedings, and freedom to care, raise, and educate one's own children, uninterrupted by government intervention and control.

b.    enters a permanent injunction:

i.    barring Defendants from conducting any form of retaliatory action.

ii.    expunging all CPS records relating to the Plaintiff and her children fabricated by the Defendants between the dates of October 12, 2023 - April 22, 2024, due to fraud, and resulting solely from retaliatory actions, by a powerful state actor.

iii.    remove Marcie Smith and Kathryn Crowell from this docket, since they are not state actors, and shall be named Defendants in the pending federal case for RICO crimes.

c.    award Plaintiff nominal damages for injuries caused to her and her four children: in the amount of $213,500,000 similar to

Maya Kawolski, who was awarded this amount by a Jury after her mother and her were separated on faulty allegations.

d.     award Plaintiffs any such additional relief the Court deems appropriate; and

e.     enter a judgment awarding Plaintiffs reimbursement of any, and all, legal related costs, regardless of designated self-representation pursuant to 42 U.S.C. § 1988.

Dated: April 22, 2024                         Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa 17112
(717) 571-7021
H_feinberg@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that on April 22, 2024, I filed the foregoing

*Amended Complaint for Violation of Civil Rights, Injunction, Compensatory,*

*and Nominal Relief* by Electronic Filing upon the following individuals:

Sylvia H. Rambo
United States Courthouse
Attention: Clerks Office
1501 North 6th Street
Harrisburg, PA 17102

Marcie Gail Smith
C/O Dauphin County Children and Youth Services
1001 North 6th Street
Harrisburg, Pa. 17102

(Address Verified February 1, 2024)
Marcie Gail Smith
503 State Street
Steelton, Pa. 17061

Marisa McClellan
1001 North 6th Street
Harrisburg, Pa. 17102

Currin Haines-Yoder
1001 North 6th Street
Harrisburg, Pa. 17102

Noelle Barrett
1001 North 6th Street
Harrisburg, Pa. 17102

Kim Deibler
1001 North 6th Street
Harrisburg, Pa. 17102

Lisa Wheeler
1001 North 6th Street
Harrisburg, Pa. 17102

Scott Smith
1001 North 6th Street
Harrisburg, Pa. 17102

Kathryn Crowell
500 University Drive
Hershey, Pa 17033

Dated: April 22, 2024                    Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
(717) 571-7021
H_feinberg@yahoo.com