HADASSAH FEINBERG,     : HON. SUSAN E. SCHWAB
                             : HON. JENNIFER P. WILSON
          Plaintiff,     :
                             : CIVIL CASE NO: 1:23 cv 02165
          v.              : CONSOLIDATED 1:24 CV 00706
                             :
MARCIE SMITH, et al.       : ELECTRONICALLY FILED
                             :
          Defendants,    : DEMAND FOR JURY TRIAL

## SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, INJUNCTION, COMPENSATORY, AND NOMINAL RELIEF

AND NOW comes Plaintiff, aka "Hadassah Feinberg", aka "Biological Mother of E.L.F. (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. (DOB 10/19/2016)", aka "Adoptive mother of B.N.F. (DOB 10/22/2020)", aka "*in loco parentis*" for E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020), E.R.S. (DOB 6/18/2020), and E.N.S. (DOB 6/18/2021)", *pro se*, and states the following claims for relief against Defendants Marisa McClellan, in her individual and personal capacity as Director of Dauphin County Children and Youth Services, Currin Haines-Yoder, in her individual and personal capacity as Supervisor of Dauphin County Children and Youth Services, Kim Deibler, in her individual and personal capacity as employee of Dauphin County Children and Youth Services, Lisa Wheeler, in her individual and personal capacity as Manager of Dauphin County Children

and Youth Services, Noelle Barrett, in her individual and personal capacity as Supervisor of Dauphin County Children and Youth Services, and Scott Smith, in his individual and personal capacity as Supervisor of Dauphin County Children and Youth Services (collectively, "Defendants"), and avers as follows:

## SUMMARY OF THE CASE

1.      This is primarily a civil rights action pursuant to 42 U.S.C. § 1983 U.S. Const. Amend I., U.S. Const. Amend. IV., U.S. Const. Amend. VI, and U.S. Const. Amend. XIV, for declaratory and injunctive relief, as well as nominal, punitive, and compensatory relief, to redress and to prevent the deprivation of rights, privileges, and immunities under the First, Fourth, Sixth, and Fourteenth Amendments, to the United States Constitution, caused by the Defendants through retaliation against freedom of speech, warrantless search and seizure, admission of false hearsay evidence, interference of parental rights, abuse of power, discrimination against a disability, fraud, misrepresentation, child endangerment, concealment, corruption, obstruction, retaliation, intimidation, and harassment. A separate lawsuit for Rico was lodged in another state before another court where additional Defendants are being sued. Defendants added on May 2, 2024, through consolidation should be removed from this

docket, except for those listed on this Amended Complaint. Donald L. Carmelite, Esq., and Jonathan B. Stepanian Esq., who have entered their appearance on this docket, have been referred to the respective Pennsylvania Supreme Court Disciplinary Boards, Office of Disciplinary Counsel, Pennsylvania Department of State Professional Licensing Bureau of Enforcement and Investigation, and Pennsylvania State Board of Social Workers. for investigation of unethical conduct, and intimidation of witnesses, pursuant to their relative professional licensing provisions, File Reference # C3-24-242, File Reference # C3-24-243, and File Reference # C3-23-932.

2.      In Pennsylvania, Defendants, employees for Dauphin County Children and Youth Services, operate under the Pennsylvania Department of Human Services rules and regulations pursuant to § 6301. The Defendants, while being employed, committed fraud, falsified statements to public officials, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation involving a neglectful Mother (and father), aka "Marcie Gail Smith" (DOB 7/28/1983) and "Eric Smith" (DOB unknown), where mother is the primary caregiver. Marcie Smith abandoned her four children on October 12, 2023, at a residence located at 63 North 18th Street, Harrisburg, Pennsylvania, 17103.

3. In Pennsylvania, the Defendants, collaboratively operate alongside the Pennsylvania Department of Health when providing emergency medical care to children at risk of child abuse and physical injury pursuant to 28 Pa. Code § 711.2 (relating to policy); and 55 Pa. Code § 5320.54 and the provisions of this Part IV issued under sections 2101—3002 of The Administrative Code of 1929 (71 P. S. §§ 531—732); Articles IX and X of the Public Welfare Code (62 P. S. §§ 901—922 and 1001—1080). The Defendants committed fraud, tampered with medical evidence, manipulated medical personnel, intimidated witnesses, legally trafficked four minor children without proper grounds, withheld lifesaving medication from the Plaintiff's minor children, committed child endangerment with more than fourteen children since 2015, retaliated against the Plaintiff for exposing their crimes, and concealed pertinent information to obstruct justice in an incriminating child abuse investigation for which they committed fraud.

4. Plaintiff in this matter, was physically, emotionally, and financially harmed and defamed by Defendants, along with her minor children E.L.F (DOB 12/11/2013), A.N.F. (DOB 10/06/2015), E.A.F. (DOB 10/19/2016), and B.N.F (DOB 10/22/2020), after advocating and acting *in loco parentis* for the children of Marcie Smith; E.J.S. (DOB 12/17/2017),

E.S. (DOB 6/18/2020), E.R.S. (DOB 6/18/2020), and E.N.S. (DOB 6/18/2021). The Defendants fraudulent reports to law enforcement, and other government officials, was motivated by an objective to obstruct justice in a child abuse case in which they had made errors. They interfered with child custody to conceal their actions which led to violations of the First, Fourth, Sixth, and Fourteenth Amendments, causing harm to Plaintiff and her children.

5.     Plaintiff in this matter, along with her four minor children, Plaintiff, E.L.F (DOB 12/11/2013), Plaintiff, A.N.F. (DOB 10/06/2015), Plaintiff, E.A.F. (DOB 10/19/2016), and Plaintiff, B.N.F (DOB 10/22/2020), were stripped of their constitutional rights and significantly harmed, physically, emotionally, and financially, due to the county's retaliation after the Plaintiff filed a complaint to the state for liability against them on October 17, 2023. The Plaintiff exposed the Defendant's failure to assist the abandoned Smith children, whom the Plaintiff voluntarily sheltered in her home, located at 3807 Bonnyview Road, Harrisburg, Pa 17109, for a total of five days. The Defendants, all Dauphin County, "DCCYS employees", and state actors, willfully and knowingly violated Plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights, by filing false Child Protective Service reports to the state on October 18, 2023, to conceal their

misconduct. The Defendants conducted warrantless interviews, harassing the Plaintiff and her minor children. They denied the Feinberg children's request for access to witnesses and denied the children's freedom to leave the secluded rooms when they requested. The Defendants interfered with the Due Process Clause, by removing custody of the children from the Plaintiff, when there was no evidence of abuse, and where the sole objective of the dependency claim, was to punish the Plaintiff by trafficking her children.

6.     The Due Process Clause protects the fundamental rights of parents to direct the care, upbringing, and education of their children (Glucksberg, 521 U.S. 702 (1997.) The Defendants interfered with the Plaintiffs rights as a parent by falsifying statements and perjuring themselves before two trial courts alleging "imminent risk" when the children were thriving physically, emotionally, and academically, and where there was no physical evidence to support their false claims. The Defendants endangered the Smith children, by placing them back with their biological mother who was engaging in illicit drug use, within a brief period, who had knowingly and intentionally abandoned her children for an excessive period without proper supervision, access to food, toileting, and clothing. This mother was also known to have a history of domestic

violence for causing an immediate family member serious bodily injury. The Defendants concealed medical documents from physicians, incident reports from law enforcement, call logs from Dauphin County Dispatch Communication, ChildLine recordings and reports, and complaints from a foster/adoptive mother regarding the endangered welfare of the Smith children. The Plaintiffs children who were <u>not</u> at risk for abuse, were the ones targeted and trafficked as punishment to the Plaintiff, in a twisted and distorted sequence of events, while the children at risk, were returned without inquiry to a dangerous and manipulative mother. DCCYS forced separation between Plaintiff and her children and enforced an unjustified "no contact" directive. The Defendants directed the guardians caring for the Feinberg children to "contact the police" if the Plaintiff attempted to communicate with her children (Shraga Feinberg, November 4, 2023). Plaintiff and her children's constitutional rights were violated under the First, Fourth, Sixth, and Fourteenth Amendment, resulting in temporary and permanent physical, emotional, and financial damage.

7.      The Defendants made multiple attempts to confiscate, seal, withhold, and destroy, vital medical documentation from UPMC dated October 13, 2023, serving as physical evidence of their lies and crimes which suggested the Smith children were abused and a police report and

ChildLine report was made. The Defendants engaged in illegal and unethical behavior by preventing medical personnel from satisfying their mandated reporter duties by distorting the facts of the crimes committed on October 12, 2023. They lied under oath in both the written petition and at trial suggesting that such medical records "did not exist". The Defendants disregarded reports of neglect with the Smith children documented by Alyssa Schatz, PA-C, written communications from Bryan Reid, PhD, incident reports from Harrisburg Police Department Officer Christian Ribec, and the Plaintiff, who at the time was acting, *in loco parentis* for the Smith children, and was an experienced mandated reporter with foster care, adoption, educator, and behavioral therapist.

8.      The Defendants' actions were taken in bad faith and for the sole purpose of harming the Plaintiff, and obtaining federal funds pursuant to Title IV-E, 42 U.S.C. § 672 *et seq*. Title IV-E allows states to receive reimbursement for costs related to a child abuse investigation on behalf of a child who is receiving services within their home so long as there is a defined "prevention plan" in place under which foster care is the planned arrangement for the child. Retaliation, harassment, obstruction of justice, corruption, and fraud, are not qualifying criteria to for reimbursement of federal funds and abhorrent involvement with CYS.

9.     The Feinberg children had a clearly established Fourth
Amendment right to be free from unreasonable search and seizures, which
was violated when Defendants conducted the warrantless, in-school
interviews on retaliatory grounds, when reasonable suspicion of child
abuse was non-existent.

10.     Plaintiff has a clearly established substantive due process right
to family integrity. Plaintiff has substantive evidence supporting the
Defendants violation of that right.  Plaintiff had a clearly established right to
procedural due process before Defendants could constrain Hadassah
Feinberg's contact with her children without a finding that she was unfit as
a parent, which was violated in this case. For nearly two weeks, Plaintiff
was prevented from physically meeting or communicating with her children,
resulting in emotional distress to the children and herself.

### I. Plaintiffs' First Amendment Claims

11.     At the heart of the First Amendment is the notion that an
individual should be free to believe as he or she will, and that in a free
society one's beliefs should be shaped by his or her mind and his or her
conscience rather than coerced by a state actor. Subsumed within that
constitutional freedom to believe as one will, is the right to make one's own
choice, free of government compulsion. The Plaintiff had the right under the

first amendment to file a complaint against the Defendants on October 17, 2023, to the Office of Children and Youth Families, when DCCYS failed the endangered Smith children between 10/12/2023-10/17/2023. As a whistleblower, she was to be protected against retaliation from DCCYS. The Plaintiff's rights were violated through retaliation, harassment, and intimidation because of the complaints she made as evidenced by the clear timeline and sequence of events.

## II. Plaintiffs' Fourth Amendment Claims

12. The Fourth Amendment protects against unreasonable searches and seizures, see *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). Courts have held that the Fourth Amendment governs social workers just like any other government official. *See, e.g.*, *id.* at 859 ("[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement."); *accord Kovacic*, 724 F.3d at 695. Children are entitled to the Fourth Amendment's protections even when they are away from home and attending public and private school. *See, e.g.*, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370–71 (2009); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). In accordance with these principles, Plaintiff argues that the Defendants, violated the Feinberg children's Fourth Amendment rights, by seizing them from their

school classrooms, and interviewing them against their will, without justified suspicion of abuse, a warrant, or consent. Defendants are not entitled to qualified immunity because it is established that social workers are bound by the Fourth Amendment when conducting in-school interviews.

13.     In *Jones v. Hunt*, the Tenth Circuit considered which standard might govern a social worker's interview of a child at a school pursuant to an abuse investigation, but the court found that it was ultimately unnecessary to determine whether a special needs exception applied because the social worker's conduct in that case failed even under *T.L.O.*'s modified reasonableness standard. *See Jones*, 410 F.3d at 1228. This case would violate the most minimal standard of which we can conceive.'" (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.1990)).

14.     In the present case, Defendant Smith's conduct fails even the modified reasonableness standard of *New Jersey v. T.L.O.* The Defendants' conduct violated Plaintiffs' and her children's Fourth Amendment rights. Plaintiff alleges that before the DCCYS Defendants conducted the interviews, Defendants knew (1) that Plaintiff was a qualified and experienced foster and adoptive parent, abiding by all state and federal regulations, (2) that two days prior to the interviews, Defendants agreed for the Plaintiff to Kinship the Smith children with her own children (eight

children in total), further supporting Plaintiffs parental fitness, (3) that prior to the interviews DCCYS knew that the safety bed was prescribed by a qualified pediatrician and paid for by medical assistance for a special needs child, which they lied under oath about on November 8, 2023, (4) that Plaintiffs children were thriving under proper medical care and education; see medical note dated November 2, 2023, and Feinberg Family Profile for Foster care and Adoption through Common Sense Foster Care Agency, (5) and that Plaintiff had her children in numerous Dauphin County services i.e. Case Management Unit, Early Intervention, therapeutic Services, etc. The Defendants intentionally failed to inform the Court that Plaintiff was an experienced foster and adoptive mother. In their Dependency Petition, they ensured that irrelevant factors from 2014 that were unfounded would be added, and that recent positive recommendations would be omitted so that the Court would be deceived and remove Plaintiff's children.

15.    Plaintiff alleges that the Defendants had no plausible suspicion that the Feinberg children were subjected to abuse or neglect at the time they conducted the interviews, and that false reports were commenced as pure retaliation against the Plaintiff.

16.    A reasonable jury could find that Defendants' seizure of Plaintiffs children was not "justified at its inception." *T.L.O.*, 469 U.S. at 341

(quoting *Terry*, 392 U.S. at 20). Plaintiff demonstrated that the county did not have any significant interest in interviewing the children that "was reasonably related in scope" to the seizures at issue. In fact, Plaintiff has alleged that prior to the interviews, Defendants did not have any legitimate reason to suspect Plaintiff, of child abuse or neglect. They highly recommended Plaintiff's adoption through Dauphin County in 2022. They authorized the Plaintiff to kinship the Smith children, over ratio and regulation on October 16, 2023, supporting the Plaintiff's cognitive and mental stability.

17.    The Defendants actions were precipitated by an authoritative necessity to control, spite, and punish the Plaintiff for exposing them. Plaintiff had initiated the request for Defendants to visit her home on October 13, 2023, to assist the abused Smith children. She was consistent in her actions to help and there is supporting evidence that she was thanked by the state in a letter for her actions. Out of enmity, Defendants violated Plaintiffs' Fourth Amendment rights by seizing the Feinberg children from their classrooms and subjecting them to interrogation without any suspicion of abuse, and without obtaining a warrant or consent. There was no suspicion of abuse on October 19, 2023, when they coerced the Feinberg children into warrantless interviews and targeted the special

needs bed, because a complaint was not filed on October 13, 2023, when Defendants saw the bed. There was no concern, until DCCYS Defendants needed a concern to retaliate with a vindicative objective; to "charge the Plaintiff with a felony", and label her as "mentally unstable", both which they suggest in their fabricated petition. This is an underlying matter of cause and effect for 1) refusal to work with their agency of choice "Families United" versus "PA Mentor", Plaintiff's agency of choice on October 16, 2023, 2) exposing Defendants crimes to Commissioner George Hartwick's office on October 13, 2023, and 3) exposing Defendant's crimes to Office of Children Youth and Families on October 17, 2023. This is not mere coincidence or two separate matters. The crimes the Defendants committed against the Smith children is directly related to the claims they fabricated against this Plaintiff. The timeline of complaints supports the truth.

18.     When Defendant Smith interviewed the Feinberg children at their schools on October 19, 2023, the law required a warrant or reasonable suspicion of child abuse without a warrant. For the Defendant to establish "opportunity" to fabricate a complaint, he first submitted a false report, dated October 18, 2023, and then consecutively proceeded with a warrantless interview in the children's schools the following day, October

19, 2023, to "fabricate false statements". The false report was not filed coincidentally by an outside party. The CPS report was filed by the motivated perpetrator that had a preemptive plan to disable and eradicate the Plaintiff's credibility in her complaint to the state against the Defendants which preceded their retaliatory actions.

19.     The schools were compelled to authorize warrantless interviews of the children, because of Scott Smith's directive and the agency's overwhelming authority in the community. Defendant Smith, as Perpetrator, abused his power, through mask of a county agency created to "protect children", to carry out his motive and goal. Although the Children and Youth Agency is designed to protect children at risk, there is no "warranty" or "guarantee" that the employees hired by the agency will be truthful and honest, acting neutrally and unbiased. This can be very dangerous when it involves dealings with children and vulnerable families. The employees are also subjected to human habit to protect their ego and confidence.

20.     Silver Academy personnel attempted to defend the Feinberg children's civil rights but were denied by Defendant Smith. Officer Tony Frei and Principal Samara Sofian reported his refusal to the Plaintiff. The Plaintiff and her children were abused by county authority contrary to

constitutional rights afforded to them. Clearly, DCCYS had no concern for the Feinberg children on October 18, 2023, or October 19, 2023, because DCCYS agreed to initiate the Smith kinship on October 16, 2023, and did not show concern for the Feinberg children between those dates. DCCYS's illegal interviews were conducted <u>solely</u> to establish grounds for false claims, when there was no suspicion prior to the Plaintiff filing a complaint against them. DCCYS caused significant injury to all four Feinberg children resulting in extensive hospital visits, permanent and lifelong trauma, displacement from a permanent home for over six months, extensive lack of food, shelter, social isolation, and funds for basic needs. The Fourth Amendment governs a social worker's in-school interview of a child pursuant to a child abuse investigation, see *Barber v. Miller*, 809 F.3d at 847. At a minimum, a social worker must have reasonable suspicion of child abuse before conducting an in-school interview without a warrant or consent. Therefore, Defendants' conduct in this case, was unconstitutional because it failed to satisfy even the lesser modified reasonableness standard of *New Jersey v. T.L.O.* The seizures were not "justified at [their] inception" and they were not "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 569 U.S. at 341 (quoting *Terry*, 392 U.S. at 20). The Defendants actions were

described by licensed professionals as: "Preposterous" (Dr. Charles F. Lorbeer, PHD, LICSW (MA), LCSW (FL), Mar. 2024), and "Over the top and not justified. DCCY did not act competently or ethically." (Dr. Richard Blutstein, Pediatrician, Jan. 12, 2024).

21.    The threshold to determine if Plaintiff's children's Fourth Amendment rights were violated is whether they were "seized" within the meaning of the Fourth Amendment. "A seizure occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). Courts generally <u>should</u> consider the plaintiff's age when determining if a reasonable person would have felt free to leave. *E.g.*, *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005); *Heck*, 327 F.3d at 510. There is sufficient physical evidence supporting the belief that the children's rights were violated because they were not free to leave the interview at school when they asked to leave the interview. On 11/02/2023, E.L.F. and E.A.F. reported not being permitted to leave the interview room by Defendant Smith, consistent with the statements from Officer Toni Frei, and statements from Principal Samara Sofian.

22.     In addition, minor child, A.N.F., a verbal and autistic, eight-year-old child, reported being "locked in Lisa Wheeler's office" unsupervised, and "unable to open the door", at the Dauphin County Children and Youth Services building on November 3, 2023. Plaintiff filed a report to ChildLine staff regarding the incident, but a thorough investigation was not completed. "Sally Lupini", who claimed to "investigate" the matter, did <u>not</u> interview A.N.F. about the incident. Contrary to the methods she conducted to investigate the reports filed by the county employees, similar protocol was not conducted against the state actors. There is <u>no</u> accountability when it comes to liability for employees with the county agency. Sally Lupini, a state employee with Office of Children, Youth, and Families, is appointed to provide oversight, and is responsible for, the provisional and permanent licensing and compliance in approximately thirty-five counties. She has not taken any corrective or punitive action for their senseless criminal and unethical actions, nor does she intend to. She was provided overwhelming physical evidence to suspend the employees and refer them for prosecution but disregarded their crimes. She is named a "Defendant", in the pending federal RICO case.

23.     In 2015, a grand jury investigated Jarrod Tutko's death, a nine-year-old-boy, after his parents went to jail, and it came down hard on the

Dauphin County child welfare agency. The jury recommended changes, and six years later, McCormack, the county prosecutor who led the investigation, still refers to the 122-page grand jury document because, while there has been some reform, concerns remain for the state's child welfare system. Ultimately, the social workers are inexperienced, untrained, and have inconsistent discretion to work as they please. They overlook cases where risk of physical abuse is imminent, such as with the Smith children on October 12, 2023, and they manipulate, and retaliate against innocent families that should have no county involvement. There are no checks and balances when it comes to their authority and ability to abuse their power. They do not wear body cameras, and their statements petitioned to the Courts are rarely dismissed when they seal permanent fates of numerous families.

24.     To this date, the Defendants have not been held liable for their neglect and endangerment of A.N.F. on November 3, 2023. A.N.F., triggered by the forced seclusion, "punched" Defendant Smith, and was transported to UPMC emergency room to be evaluated on November 3, 2023. The Defendant's concealed the medical incident from Plaintiff regarding her special needs son. Plaintiff accessed this report

coincidentally upon review of his medical chart. A.N.F. reported the forced

seclusion to this Plaintiff after his return to her custody.

25.    The Feinberg children were denied a neutral party when

Defendant Smith interviewed them in isolation on October 19, 2023, and

November 3, 2023. The Defendant coerced and intimidated the Feinberg

children, like the crimes committed by the county social workers in

Bakersfield, California (1982), involving the McCuan and Kniffen families;

convicted on false allegations, and later exonerated. There the prosecution

representatives resorted to coercive and suggestive interrogation

procedures. Drs. Stephen Ceci, Richard Ofshe, and other psychiatric

research experts demonstrated, "Children can by suggestive questioning

be induced to make false statements". Similarly, on October 19, 2023,

E.L.F. reported to the Plaintiff that Defendant Smith asked questions like,

"What dark secrets are in your family", and "Did mommy tell you what to

say". She responded to the effect of, "I have my own mind and can think for

myself". E.A.F. reported to the Plaintiff that Defendant Smith stated, "I can

protect you, not mommy." She responded, "No, my mommy protects me."

The Feinberg children attempted leaving the interview room and were

prevented. E.L.F., teary-eyed, on video, made statements to the effect of,

"Scott Smith wasted my study time during math practice when I have a

test", and that she would "fail because he would not let her return to class". Principal Sofian and Officer Frei witnessed the crimes committed.

### III. Plaintiff's Sixth Amendment Claims

26.    Under the Sixth Constitutional Amendment, Americans have the right to not be subjected to hearsay evidence against them in all criminal prosecutions:

> "The accused shall enjoy the right to be confronted with the witnesses against him; accordingly, no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross..." United States v. Becker, 81 M.J. 483.

27.    Although the matter of Dependency is civil by nature, false allegations filed with intent to charge the Plaintiff criminally with Per Se Acts should be treated pursuant to the Rules of Criminal Procedure. On November 8, 2023, Defendant, Lisa Wheeler, testified under oath before Honorable Edward Guido, Judge, in the Cumberland Court of Common Pleas that she was seeking "Criminal Charges." Intent to pursue criminal charges is not disputed. On October 13, 2023, Defendant Smith, came to Plaintiff's home located at 3807 Bonnyview Road, Harrisburg, Pa 17109. Defendant Smith observed the prescribed safety bed for A.N.F. and made no report. Plaintiff provided Defendant Smith with documentation from the pediatrician, and he rejected it. After seeing the bed, Defendants

recommended that Plaintiff "Kinship" the four Smith children. There was no concern regarding the Plaintiffs parental fitness. Only after Plaintiff filed a complaint against Defendants, they pretended to be concerned about the bed. When Defendant Smith came out to interview the children at their schools, he did not have a warrant and coerced the Feinberg children to remain in the isolated room with him while he documented fabricated statements regarding the bed. No body camera was used, and he had the sole discretion to fabricate his own statements.

28.     On November 2, 2023, Defendant Lisa Wheeler petitioned the Dauphin County Court of Common Pleas notating statements such as, "A.N.F reported being locked in the bed when he is bad." Not only was this fabricated and documented as a motive to retaliate, but there is clear and convincing evidence that Defendant Smith told A.N.F. that "he was bad and that he was going to take his mother away." Plaintiff reported this to Dauphin County Dispatch on October 19, 2023, nearly two weeks before the Feinberg children were falsely removed by the county. It is on audio recording with Dauphin County Emergency Communications. The threats made by Defendant Smith triggered A.N.F. causing him to respond violently resulting in his transfer to the emergency room for evaluation at UPMC Emergency Room on October 19, 2023. Plaintiff attempted to subpoena the

audio recordings from the Director of Dauphin County Emergency Communications Department, Jeff Enders, but he ignored the subpoena after learning its nature. He previously provided Plaintiff with documentation for another subpoena request which was unrelated to the county crimes, in 2018. Due to the nature of Dauphin County employee's involvement, he reported being advised by Stephen Libhart, aka "Officer of Open Records", aka "Chief Clerk", not to provide the evidence to the Plaintiff. Jeff Enders, along with Stephen Libhart, are both named "Defendants", in the pending federal RICO case. Plaintiff filed the noncompliance on record with the Cumberland County Court of Common Pleas, see *Feinberg, H. v Dauphin County CYS*, et al., do. 2023-09266. The fact that hearsay was used when there is no evidence to support such, and where the complaint submitted by Defendant Smith, was groundless, and motivated by personal motive, is a clear violation of the Plaintiff's and her children's Sixth Amendment Rights. Plaintiff's children were removed from her care under false statements to punish the Plaintiff, and she was stripped of opportunity to respond against their false petition, because she was not informed to be present.

## IV. Plaintiffs' Fourteenth Amendment Claims

29. Nearly one hundred years ago, the Court acknowledged that "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Pierce v. Society of Sisters, 268 U.S. 510 (1925). Thereafter, in Stanley v. Illinois, 405 U.S. 645 (1972), Court's affirmed the fundamental rights of parents "in the companionship, care, custody, and management" of their children. Id. at 651. That same year, in Wisconsin v. Yoder, 406 U.S. 205 (1972), the Court declared that "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Id. at 232. More recently, the Court declared in Washington v. Glucksberg, 521 U.S. 702 (1997), that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, protects the fundamental right of parents to direct the care, upbringing, and education of their children. Id. at 720. And in Troxel v. Granville, 530 U.S. 57 (2000), the Court again unequivocally affirmed the fundamental right of parents to direct the care, custody, and control of their children.

30. Under recent Supreme Court decisions, there is no compelling governmental interest that justifies these severe infringements to Plaintiffs'

and her children's First, Fourth, Sixth, and Fourteenth Amendment rights and that can withstand exacting the Amendments' scrutiny.

31.　Defendants violated the Plaintiffs rights to both procedural and substantive due process under the Fourteenth Amendment by constraining her ability to communicate with her children for thirteen days, and then to continue with unnecessary oversight from Cumberland County CYS for months without any valid governmental interest, and without affording the Plaintiff any procedural protections, such as notice or a hearing after the children were not adjudicated. Defendants petition was withdrawn by the Cumberland County Children and Youth Agency for lack of grounds on November 16, 2023. The case worker assigned to the case, Sandy Gibson, LCSW, agreed to testify before this Court, but is concerned for retaliation by County administration. She too is vulnerable to retaliation. In March 2024, Mindy Kell, a licensed investigator with the Pennsylvania State Department of Bureau Enforcement and Investigation, resigned from the case after being intimidated by Jonathan Stepanian, Esq., Penn State Hershey, and Dauphin County Administration within her department.

32.　The Due Process Clause of the Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. This clause ensures fair

process and safeguards "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "[t]he touchstone of due process is the protection against arbitrary governmental action, including 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Schulkers v. Kammer*, 367 F. Supp. 3d 626, 637 (E.D. Ky. 2019) (quoting *Lewis*, 523 U.S. at 845–46).

33.    The Courts have held that "[i]t is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (collecting cases); *accord Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008) ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." (alterations in original) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006))). In *Bartell*, its explained that "the differences between the procedural interest in raising one's child and the substantive right, and the corresponding scope of the duties imposed on government,

are significant. While procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests . . . substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." 215 F.3d at 557–58 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

34.    Defendants unconstitutionally exceeded their powers in both ways in the present case. Defendants violated Plaintiffs substantive right to family integrity because the removal was unwarranted and initiated as a result of retaliation for exposing their neglect in a child abuse investigation and was not supported by any imminent risk for physical injury or compelling governmental interest, given that Defendants had no reason to suspect the Plaintiff of child abuse. Plaintiff was also not afforded any process for liberty deprivation once the case was withdrawn, and thus Defendants violated Plaintiffs right to procedural due process.

### i. Substantive Due Process

35.    The Supreme Court has repeatedly held that "[i]t is cardinal with us that the custody, care, and nurture of the child reside first in the parents,

whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Thus, in *Lassiter v. Department of Social Services*, the Supreme Court declared that it is "plain beyond the need for multiple citation" that a parent's "desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). And, in *Cleveland Board of Education v. LaFleur*, the Court stated that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." 414 U.S. 632, 639 (1974); *see also Quilloin*, 434 U.S. at 255 (stating that *LaFleur* "firmly established" the right to personal choice in matters of family life); *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (recognizing "the fundamental right of parents to make decisions concerning the care, custody, and control of their children").

36. The right to family integrity and association without interference from the state—is the paradigmatic example of a substantive due process guarantee. *See, e.g.*, *Moore v. City of E. Cleveland*, 431 U.S. 494, 498–99

(1977) ("A host of cases . . . have consistently acknowledged a 'private realm of family life which the state cannot enter.'" (quoting *Prince*, 321 U.S. at 166)); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."). The right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference was clearly established at the time of Defendants' conduct. *Troxel*, 530 U.S. at 66.

37. The state did not have any interest in preventing child abuse in the present case because they had no reason to suspect Plaintiff of child abuse, until Plaintiff complained of Defendants neglect of care with the Smith children. The removal and supervision after the petition was withdrawn contravened "the traditional presumption" articulated by the Supreme Court in *Troxel* "that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69; *see also id.* at 68–69 ("[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best

decisions concerning the rearing of that parent's children."). When, the government prevents a fit mother from being unsupervised with her children "at all times (24/7)" without any compelling government interest, it clearly contravenes this presumption. R. 67-9, Prevention Plan, Pg. ID 1659. The Defendants had fair notice that the Plaintiff had a protected liberty interest in "the companionship, care, custody, and management of [their] children," *Lassiter*, 452 U.S. at 27, and in the right "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference, *Troxel*, 530 U.S. at 66. Between November 3, 2023 to November 8, 2023, the Defendants did not even let the Plaintiff communicate with her children. They told all the foster parents to enter the court from a separate entrance so the Plaintiff would not see her children. The put preventative measures in place for the children similar to those measures placed on a murderer. The foster parents were confused because the Defendants told them that there were no drugs or physical abuse involved. No one understood why they were treating Plaintiff this way.

38.     Plaintiff has a well-established right "to the companionship, care, custody, and management of [their] children," *Lassiter*, 452 U.S. at 27. "The Constitution recognizes . . . a substantive fundamental right to

raise one's child," *Bartell*, 215 F.3d at 557. *See also Kottmyer*, 436 F.3d at 689 ("There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law.").

39.     In this case the removal and implemented Family Service Plan constituted an interference with the natural "parent-child relation." *Kottmyer*, 436 F.3d at 689. By arbitrarily mandating the Plaintiff to cooperate with Children and Youth Services and sign a Family Service Plan or risk losing her children, when there was no abuse founded, is a clear violation of Plaintiff's due process right to family integrity under *Troxel*. Numerous Supreme Court cases have found that a parent has a fundamental right to "the companionship, care, custody, and management of his or her children," *Lassiter*, 452 U.S. at 27, and that "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children," *Troxel*, 530 U.S. at 68–69. The Supreme Court stated in *Moore*, "unless we close our eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth Amendment's Due Process Clause, we cannot avoid

applying the force and rationale of these precedents to the family choice involved in this case." 431 U.S. at 501.

Although, no services were ever provided or warranted to date, since the Plaintiffs family was technically labeled as "accepted for services", the label will never be expunged. This will affect the Plaintiff for the rest of her life and career if the Court does not intervene and Order that the record be expunged.

### ii. Procedural Due Process

40.     "It is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child."); *Smith*, 520 F.3d at 599 ("[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." (quoting *Kottmyer*, 436 F.3d at 689)); *accord Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125–26 (3d Cir. 1997).

41.     The decision to cooperate with a Family Service Plan was not voluntarily agreed upon. Any of Plaintiff's "consents" were premised on the misrepresentation that if she does not agree to the Plan, Defendants will

withhold her children or even remove them a second time without grounds, which is a form of duress.

## B. Constitutional Violation

42.    The county injected itself into the private realm of family life without any process or any doubt as to Plaintiff's fitness as a parent, in violation of *Troxel*, 530 U.S. at 66. Following the fabricated referral for service, the Defendants are responsible for the actions of Cumberland County CYS staff's interference with Plaintiff's right to be free from government interference. Due to their retaliation, an unnecessary investigation was conducted by Cumberland County and unnecessary federal funds were allocated in vain because of false claims. It has caused detrimental negative consequences on Plaintiff's professional capacity as an experienced teacher and behavioral therapist and can cause significant financial harm in future employment positions.

43.    Plaintiff made repeated requests for the harassment from the Defendants to cease, both before and after the children were removed without grounds. Plaintiff was forced out of her home through lies, defamation, and bullying. Plaintiff knew from October 18, 2023, that the Defendants objective was to kidnap the children. The moment they fabricated allegations against her, she knew what their end goal was. She

was compelled to leave the home she worked hard to purchase, and the county she resided in for 25 years, because the harassment and intimidation did not cease, it became worse. On December 24, 2023, Plaintiff requested from Cumberland County that a Family Service Plan not be executed because there are no grounds for state involvement. Plaintiff provided all documentation to verify requests by CCCYS. On December 28, 2023, CCCYS emailed the Plaintiff requesting to execute home visits and Plaintiff reiterated that absent a government need for interference, it is her family's Constitutional Right to be free from government control and that she is protecting her children from continued trauma with CYS harassment and involvement. Plaintiff informed CCCYS through email that her children attend programs and see doctors regularly that have no concern. There is no need for services and CYS involvement. Plaintiff requested legal correspondence twice but received no response. On January 9, 2024, the case was officially closed by CCCYS.

44.    Through their initial actions, the Defendants continued to impose restrictions and interfere with Plaintiff's relationship with her children for more than two months after their fabricated referral was placed and unfounded. Defendants' interference with the Plaintiffs parent-child relationship, was a violation of her Amendment rights. In so doing, they

abridged Plaintiff's clearly established right to the companionship and care of her children without arbitrary government interference in violation of the Due Process Clause of the Fourteenth Amendment.

45.     Ultimately, Plaintiff seeks the Court's review of the violations alleged.

## JURISDICTION AND VENUE

46.     This is an action that arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, of rights, privileges, and immunities secured to Plaintiff and her children, by the Constitution of the United States, particularly the First, Fourth, Sixth, and Fourteenth Amendments thereto.

47.     The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331—because the claims arise under the United States Constitution—and 28 U.S.C. § 1343—because Plaintiff seeks relief under 42 U.S.C. § 1983.

48.     This action is an actual controversy in which Plaintiff seeks a declaration of hers and her minor children's rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff and her minor children and grant further

necessary and proper compensatory and nominal relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

49.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a Defendant, is domiciled in and operates or does significant business in this judicial district.

## PARTIES

50.     Plaintiff, Hadassah Feinberg, resided in Cumberland County, Pennsylvania.

55.     Defendant, Marisa McClellan, in her individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

56.     Defendant, Currin Haines-Yoder, in her individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

57.     Defendant, Noelle Barrett, in her individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

58.     Defendant Lisa Wheeler, in her individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

59.     Defendant, Kim Deibler, in her individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

60.     Defendant Scott Smith, in his individual and personal capacity, is employed at Dauphin County Children Youth Services, located at 1001 N. 6th Street, Harrisburg, PA 17102.

## FACTUAL ALLEGATIONS

61.     On October 12, 2023, at 12:40 p.m., the Plaintiff was notified by two credible members of the Jewish Community, Faye Doctrow, and Samara Sofian, that the four Smith children had been missing for six days. The Plaintiff reported the missing children Dauphin County Dispatch 9-1-1.

62.     On October 12, 2023, at 6:00 p.m., the Smith children were located by Officer Ribec of the Harrisburg Police Department at 63 North 18th Street, Harrisburg Pa. 17103. The children were found soiled in feces, and unclothed. They had been reportedly abandoned by Marcie Gail Smith, their biological mother, and primary care giver.

63.     On October 12, 2023, at 7:00 p.m. the Plaintiff voluntarily assisted the Smith children, provided them clothing from her trunk in presence of multiple witnesses.

64.    On October 12, 2023, Dauphin County CYS Supervisor, Noelle Barrett, refused to arrive to the scene to aid the Smith children. The Plaintiff transported the four Smith children to her home, released to her care by Officer Ribec, of Harrisburg Police Department. Plaintiff was assisted by a social worker, and another friend, in transporting the four Smith children to her home located at 3807 Bonnyview Road, Harrisburg, PA 17109.

65.    Upon arrival, Plaintiff bathed the Smith children where she noted numerous bruises on their bodies. She made a report to Childline and two police departments, and tried to contact DCCYS again, but to no avail.

66.     On October 13, 2023, Plaintiff sent Smith child, E.J.S. to school, and took the younger three Smith children to UPMC emergency room located at 111 S. Front St, Harrisburg, PA 17101 where they were diagnosed with suspected child abuse by Alyssa Schatz, PA-C. Alyssa Schatz made a police report and called ChildLine.

67.    On October 13, 2023, at 3:30 p.m., Plaintiff contacted Commissioner George Hartwick III because Dauphin County CYS staff were not coming to aid the Smith children. She talked to his secretary "Julie". Commissioner George P. Hartwick and "Julie" are named Defendants in the pending federal suit for RICO crimes.

68.    On October 13, 2023, at 6:30 p.m. Defendant, Dauphin County Supervisor Scott Smith, came out to the Plaintiff's home to visit the Smith children. Scott Smith photographed the Smith's injuries. During the house tour Scott Smith asked about A.N.F.'s safety bed. Plaintiff provided him with medical documentation prescribed by a pediatrician and explained that the bed was for A.N.F. safety at night. He had no concern and refused to take documentation offered by the Plaintiff.

69.    On October 15, 2023, Dauphin CYS consented to arrange transportation for the Smith Children from the Plaintiffs home to respective schools for kinship purposes. There were no concerns mentioned by DCCYS regarding Plaintiff's ability to care for her own four children, and four more young children, totaling 8 children, by herself as a single mother.

70.    On October 16, 2023, at 9:30 a.m. DCCYS facilitated a meeting with the Smith children's biological mother, Marcie Smith and the Plaintiff, regarding kinship. They did not inform the biological father, Eric Smith to attend. At the meeting, Marcie Smith, agreed for her children to remain with the Plaintiff and voluntarily signed legal custody to DCCYS for E.J.S. (DOB 12/17/2017), E.S. (DOB 6/18/2020), E.R.S. (6/18/2020), and (E.N.S. 6/18/2021). At the meeting, Marcie Smith lied about why she was unable to obtain housing for her family. The Defendant had a domestic violence

charge for serious bodily injury. She falsely accused Eric Smith, the father, and informed DCCYS that he is the violent one.

71.    On October 16, 2023, at 3:30 p.m. DCCYS case worker "Allison Vajdic" arrived at Plaintiffs home located at 3807 Bonnyview Road, Harrisburg, Pa 17109 to initiate intake for kinship. She did a tour of the Plaintiff's home. No concerns were noted. During the visit, Plaintiff disputed the agency of choice. She requested to work with Pa. Mentor instead of Families United, as she was already in communication with that agency. DCCYS verbally threatened the Plaintiff that Title IV-E funds would be withheld for the Smith children's kinship if she did not agree to work with Families United. The Plaintiff stood her ground and told them she would not agree.

72.    On October 17, 2023, Plaintiff filed a complaint against Defendants for withholding funds for the Smith children's basic needs under Title IV-E and for failure to investigate the Smith children's abandonment and physical abuse. At 11:00 a.m. Plaintiff took the Smith children into Penn State Hershey Medical Center to follow up with their special child abuse unit. Plaintiff informed Dr. Kathryn Crowell of DCCYS's failure to assist the children. Plaintiff also sent a message through the Penn State portal prior to the visit and received no response. During the visit,

E.S. DOB 6/18/2020, was banging his head on the hard-surfaced floor in room 54. Dr. Crowell and her team failed to provide adequate medical care for his needs, which was documented by Plaintiff to DCCYS through email and telephone calls. Plaintiff served a subpoena to obtain video footage of the incident, issued by the Cumberland Court of Common Pleas Prothonotary Office, and filed it under civil case: *Feinberg, H. v. Dauphin County CYS, et al., see* docket number 2023cv02165., However, it was intentionally blocked by Penn State Hershey legal team, and the footage documenting the willful fraud and child endangerment of E.S. by hospital staff was not provided to the Plaintiff.

73.    Plaintiff informed Defendants she could not take E.S. home without an implemented safety plan in place due to head-banging self-injurious behavior. Plaintiff has vast experience with behavioral therapy from professional experience. Dr. Crowell and Defendants ignored Plaintiff's reports. At 3:00 p.m., Plaintiff was advised by a Licensed Clinical Social Worker and Director of an Adoption and Foster care Agency in Dauphin County, that she should inform medical staff of her timely obligation to leave to get her own children off the bus. Since E.S. was a danger to himself, by head-banging, he needed to remain under medical observation.

74.    Two staff on the child abuse team, one male and one female (personnel names unknown), threatened the Plaintiff stating, "If you don't take all three children home, you are not taking any of them home." They did nothing to prevent E.S. from injuring his head. Plaintiff was forced into a corner, where the safest choice was to leave E.S. in the care of medical staff, along with his two siblings, and leave to get her own biological children off the bus from school. Per the Plaintiff's request, the LCSW from Jewish Family Services, remained on the phone with Plaintiff until she stepped out of the hospital building. Plaintiff was in absolute fear of the illegal and unethical actions of the Penn State Hershey Staff. Plaintiff filed a police report against Dr. Kathryn Crowell with Officer Libby Strayer from the Derry Township Police Department, see report number DR-24-03954, for tampering with medical documentation, fraud, and failing to provide medical care to E.S.

75.    On October 18, 2023, Plaintiff visited the Harrisburg Police Department located at 123 Walnut Street, #217, Harrisburg, Pa. 17101 and Victim Witness Department located at 25 South Front Street, 7th Floor, Harrisburg, Pa. 17101 to advise and follow up on complaints about the Smith children's endangerment by the biological mother and DCCYS's retaliation, fraud, obstruction of justice, and intimidation for exposing them.

76.    Subsequently, Defendant Smith filed a fabricated CPS report against Plaintiff. Plaintiff was uninformed until Defendant Smith visited the children's schools on October 19, 2023. In his report, Defendant Smith falsified statements against the Plaintiff without grounds. Plaintiff requested the records from the County and their legal counsel, Donald Carmelite, Esq., but the requests have been ignored. It is important to note, that for due process to be commenced and discovery to be conducted, the records are essential for the judicial process. By intentionally obstructing the release of records from Dauphin County Children and Youth Services, Childline reports, and Department of Human Services records, the Defendants are tactically preventing the Plaintiffs expert witness, Charles F. Lorbeer, PhD, from assessing the concerns and providing this Court with an informed statement on the matter required by a Certificate of Merit.

76.    It is under the discretion of this Court, but respectfully requested by this Plaintiff, that the Defendants be directed by official Court Order to supply and provide a notarized copy of the official Feinberg CPS record, unredacted and in its entirety, within a reasonable time frame, for review, in order to execute and comply with the rules of due process and discovery pursuant to the federal laws of civil procedure.

77.     On October 19, 2023, Defendant Smith went in to Sara Lindemuth Anna Carter Primary School located at 1201 North Progress Avenue, Harrisburg, Pa 17109, and in to the Silver Academy private school located at 2986 North Second Street, Harrisburg, Pa. 17110, unannounced, to conduct groundless interviews from the Feinberg children without a warrant. A.N.F., E.L.F., and E.A.F. were forced against their will to cooperate with the Defendants interrogations, in a secluded room, alone with the Defendant with the door closed. Defendant Smith asked the children to tell him about "dark secrets" and attempted to coerce them to make false statements about A.N.F.'s safety bed in the Plaintiff's home. They were uncooperative. Principal Samara Sofian, the Plaintiff that she relayed to Defendant Smith that she was "Not concerned for abuse or neglect of the Feinberg children", and that she, "Takes her mandated reporting responsibilities seriously." Defendant Smith interrogated the Feinberg children for an unreasonable period. E.L.F. informed Defendant Smith that the bed was to, "Provide A.N.F. safety at night because he was a danger to himself and his family without supervision". E.L.F. informed him that A.N.F had a history of safety concerns.

78.     Defendant Smith's interview triggered excessive fear, panic, and symptoms of anxiety in A.N.F., who is an eight-year-old, verbal-autistic

child, and already diagnosed with underlying anxiety. He told A.N.F. that, "He is bad, and that he is going to take his mother away". Upon the children's return from school, A.N.F. immediately exhibited severe panic attacks, causing shallow breathing, confusion, and erratic behavior. The Plaintiff called 9-1-1 twice and A.N.F. was transported to the UPMC Emergency Room located at 111 South Front Street, Harrisburg, Pa. 17101. What should have been a birthday celebration for E.A.F., turned in to a nightmare of permanent trauma.

77. Upon arrival at the hospital, the treating physician increased A.N.F.'s anxiety medication, and he was discharged home with the Plaintiff. Plaintiff repeatedly implored law enforcement to protect her family against DCCYS employees' actions, but they declined stating, "Municipal can not intervene in County matters" and that Plaintiff should "File a complaint with Attorney General" (Corporal Glenn, Susquehanna Township Police Department).

78. Plaintiff made multiple attempts to file complaints with Attorney General which are documented, but she was advised by staff to contact the Department of Human Services who oversees Dauphin County Children and Youth Services. For days, Plaintiff was sent in circles between authorities who refused to get involved.

79. On October 20, 2023, Defendant Smith arrived unannounced at UGRO Childcare Center located at 3880 Tec Port Drive, Harrisburg, Pa. 17111, where B.N.F. was enrolled part-time. Upon his arrival, daycare staff contacted the Plaintiff to inform her that Defendant Smith was proceeding against their request to await law enforcement presence, and/or a third-party, as directed by the Plaintiff. Plaintiff had openly communicated with UGRO administration about her concerns for county employee retaliation. They were also informed that Plaintiff had been licensed as a foster care parent and adopted through Dauphin County's recommendation in 2022, and that Plaintiff had a verbal contract with the county to satisfy the financial cost of B.N.F.'s attendance at UGRO, in lieu of an increased annual per diem.

80. Defendant Smith proceeded with the interview for a child that was not at risk, against the directive of his custodial parent, and against the directives of his educational guardians, in the academic setting, without suspicion of abuse.

81. On October 20, 2023, Plaintiff traveled with her four children to visit family friends in Maryland and seek legal advice. During her travels, she contacted law enforcement in Baltimore, Maryland, seeking advice against Dauphin County employees. She spoke with officer Ferdinand

Cintron, Jr., but he failed to arrive at the Plaintiff's location. It is fair to presume, that he contacted the Defendants.

82.    Plaintiff proceeded with attempts to contact Maryland State Police, and they directed Plaintiff up the chain of command. Through each step, Plaintiff stayed in close contact and consulted with family members, close friends, and licensed professionals, about the incidents.

83.    Plaintiff contacted multiple licensed attorneys, one of whom is an experienced federal attorney in the Middle District Court. He requested anonymity, but informed the Plaintiff of the statewide corruption, intimidation, and retaliation, historically documented relating to the child protective agency, and that successful litigation against CYS misconduct was an uphill battle. A separate civil rights attorney offered the Plaintiff representation on terms of executing a binding legal contract in the amount of $100,000, but the Plaintiff could not commit for financial reasons.

84.    On October 23, 2023, Plaintiff learned that public corruption is handled and investigated primarily by the Federal Bureau of Investigation. Since she was out-of-state, she requested to visit the nearest FBI field office to report the county employees abuse of power, fraud, and corruption. Plaintiff met with Supervisory Field Agent, Kenneth Keller, based in Manassas, Va., about an hour drive from her stay. Agent Keller

informed her that due to jurisdiction, the Philadelphia Field Office, would be her best point of contact, but that per policy he would complete an official report. Agent Keller provided the Plaintiff with his email address and phone number. During the three-hour visit, Agent Keller and his co-agent, "Ben" observed the Plaintiff with her four children in person and made no attempt to file a ChildLine report for concerns of the Plaintiffs interactions with her children during the visit. The children were clean, fed, and dressed appropriately. Although the children became restless as the visit progressed, the agents did not pass judgement or show reason for concern with the Feinberg children.

85.    On October 24, 2023, Plaintiff returned to Dauphin County with her four children and dropped them off at school. Within less than 10 minutes, Plaintiff was apprehended by a Susquehanna Township Police Officer "AJ Young", without a traffic violation. Officer Young is named a Defendant in the civil suit lodged for RICO crimes outside the State of Pennsylvania. The citation issued by Officer Young was subsequently dismissed on December 18, 2023 after Plaintiff filed an appeal to the Magistrate Court 12-1-01. It was dismissed prior to trial.

86.    Triggered by the groundless apprehension, Plaintiff knew she was in danger, and followed the suggestion of Agent Keller to visit the

correct jurisdiction field office, Philadelphia FBI Office. Upon her arrival, she was turned away without interview. The Agent at the entrance refused to accept a report. Plaintiff contacted Agent Keller by phone to prove the validity. Agent Keller informed the Philadelphia Agent that the report was not yet complete in the system, but that it was pending. The Agent disregarded Keller's statements, and Plaintiff returned to Dauphin County. Upon her return, Plaintiff called the Philadelphia Field Office to provide physical and audio evidence but did not respond. An agency established to safeguard and protect, once again, failing its citizens.

87.    On April 3, 2024, Plaintiff contacted Agent Keller, in response to an email she received from him. He informed her that despite his attempts to communicate with the FBI Philadelphia Field Office, he has no jurisdiction in Pennsylvania. He informed the plaintiff of her options to file a complaint with the Department of Justice for review of the internal handlings conducted by the Philadelphia Field Office.

88.    Plaintiff filed with the Department of Justice, and on April 16, 2024, she filed a complaint with the Government Accountability Office for fraud, waste, and abuse by the Defendants.

89.    Contemporaneously, on April 5, 2024, Plaintiff filed with the Dauphin County Clerk of Court an "Appeal of District Attorney's Denial" for

the Private Criminal Complaint lodged against Marcie Gail Smith and the Defendants on February 1, 2024, at MDJ 12-1-05. ADA Colin Zwally, who stated to the Plaintiff that he has a "job to protect" in the presence of CID Chief Corey Dickerson. Both state actors are named Defendants in the RICO lawsuit. Plaintiff contacted the Philadelphia Field Office to provide physical and audio evidence, but they have not responded.

88.     The scale of organized crime, fraud, kidnapping, and corruption being committed across the Commonwealth by political and state actors is overwhelming, unconstitutional, and needs to be brought to light.

89.     During the unprecedented sequence of events, and without any assistance, Plaintiff was compelled to permanently leave her home with her four children. A mortgage of $2177 per month, would not outweigh the priceless cost she faced if her children were permanently separated. She had lived in Dauphin County for 25 years and was established within her community. However, the Plaintiff was obliged to prioritize the immediate risk to her family and protect her children and herself against criminal acts committed by the Defendants. Plaintiff fled Dauphin County preemptively to avoid losing her children permanently through lies, fraud, and malicious corruption. Shortly thereafter, Plaintiffs notions, and gut instinct, were confirmed regarding the Defendants intent and objective.

90.     Plaintiff is certain, and without regret, that the lifesaving decision she made to flee Dauphin County's crimes, is what saved her family. Statistically, Dauphin County families who have been fraudulently harassed and harmed have permanently lost custody of their children. Matthew and Carolyn Peterson, fellow foster, and adoptive parents who positively impacted hundreds of vulnerable children, were harmed permanently without recourse by the same state actors. Their six children were trafficked by the same Defendants in 2017 on baseless grounds that were not pursued. They were verbally threatened and intimidated, by Detective Lee Tarasi, and the same Defendants at DCCYS. They were not afforded legitimate due process and were stripped of their constitutional rights under the same authority. Carolyn Peterson suffered two consecutive heart attacks because of the overwhelming emotional distress. Reunification did not occur, despite the dismissal of charges. When will state actors be held liable for their white-collar crimes? Public interest in this matter is compelling. In Adams County, three state actors were recently charged with child endangerment after Iris Mummert, a fifteen-month-old baby was found deceased after the county overlooked the concerns. Will this happen to the Smith children who were abandoned by their mother, left soiled in feces, and unclothed on October 12, 2023? This

is a perfect example of how the county welfare system is failing its children and failing its families. In Adams County, the employees were charged, but only due to the severity involving a death, and media exposure. Is that what it takes for a county employee to be held liable? The Smith children were in imminent risk, not just one child, but four children, left to fend for themselves, each one of them lacking bladder control upon discovery. To conceal, control, and keep their authoritative positions, the Defendants would rather shift blame for their mistakes and make the Plaintiff "look crazy," then accept accountability. They prefer to endanger four Smith Children and traumatize four Feinberg children, then risk losing their job or going to jail.

91.     The Defendants attempted to influence the neighboring county during their meeting, but Cumberland County conducted their own meeting separately after they had met with the Defendants. The Defendants fabricated allegations didn't sit right with them, so they didn't follow along (Sandy Gibson, LCSW). Perhaps the Defendants believe that every time Plaintiff drives her vehicle across the Susquehanna River bridge which connects the two counties, she "transforms" from "stable" to "unstable", or perhaps the water in Dauphin County is polluted with "mental instability" and in Cumberland County the water is filtered? Strange and bizarre one

might think. Plaintiff cannot be "crazy" in Dauphin County, and "parentally fit" in Cumberland County? The sequence of events speaks for itself. The physical timeline tells the story of what transpired, when it transpired, and which party is credible in this lawsuit.

92.    Towards the last week of October 2023, Plaintiff fled with her four children to the neighboring Cumberland County. Plaintiff consistently ensured that her children's daily attendance in their Dauphin County schools would not be affected and continued to take her children to all their scheduled medical visits in Dauphin County. No concerns were reported for neglect, abuse, or mental instability by any mandated reporter in the schools or doctors' offices. The only reports made to date, were made by the Defendants, who had a personal vendetta to harm the Plaintiff. In fact, it is documented and supported that the Plaintiffs children were thriving on November 1-2, 2023, when B.N.F. and A.N.F. were present at a Penn State Doctors appointment, the day preceding the false removal of the children which alleged "imminent risk." The actual risk was the Defendant's civil rights violations harassment, fraud, and corruption to cause a permanent separation between a mother and her children as punishment.

93.   In between the dates of October 18, 2023, to November 3, 2023, the Defendants used their authoritative powers to work

collaboratively with Detective Lee Tarasi and Officer Young from the Susquehanna Township Police Department, to devise, lure, ambush, falsely remove custody, and charge the Plaintiff with crimes she did not commit. Detective Lee Tarasi is named as a Defendant in the RICO lawsuit.

94.    Unbeknownst to the Plaintiff at the time, the Defendants and their colleagues have a vast history of committing such crimes together, against numerous victims, and have never been investigated by any agency. The Defendants in this case, along with the Defendants in the Rico lawsuit continue to be employed without suspension, corrective action, or criminal charges, despite the heinous crimes they have committed under the mask of the Commonwealth's immune umbrella.

95.    Detective Tarasi contacted the Plaintiffs peer, Amy Otstott, and falsely informed her that she was investigating the crimes of the county and needed the cooperation of the Plaintiff. In response, Amy Otstott convinced the Plaintiff to schedule a meeting with Detective Tarasi on November 3, 2023, at her vacant home in Dauphin County. Under the impression that a law enforcement official was assisting, Defendants successfully lured the Plaintiff back to her uninhabited Dauphin County home located at 3807 Bonnyview Road, Harrisburg, Pa. 17109, where they served her with

papers to remove the care and custody of her children under falsified grounds for "imminent risk". This was commenced despite DHS's investigation conducted by Carrie Self on October 25, 2023, who claimed to "prioritize" and have more concern for the safety allegations regarding the Smith children, and not concerned for the false allegations made against the Plaintiff involving the Feinberg children. She confidentially informed the Plaintiff that Plaintiffs complaint against the Defendants preceded their retaliatory complaint, and they were not aware.

96.    On November 6, 2023, in the chambers of Presiding Honorable John J. McNally, Judge, of Dauphin County Common Pleas, Plaintiff informed him of the lies, and civil rights violations the Defendants were committing. Honorable McNally subsequently transferred the case to Cumberland County Court of Common Pleas and Cumberland County Children and Youth Services (CCCYS).

97.    On November 8, 2023, Honorable Edward E. Guido, Judge, accepted the transferred case in Cumberland County. During the hearing, the Plaintiff was denied her request to self-represent without justification, because Defendants testified that Plaintiff was mentally unstable." Apparently, Plaintiff was reported to be "so incompetent" that defending herself would not be suitable. Public counsel was appointed but was

unfamiliar with the case. Plaintiff was denied her constitutional rights to due process and prevented from being able to respectively object to statements made by Defendant Wheeler who perjured herself before the court numerous times. During the hearing, Defendant Wheeler requested to withdraw A.N.F.'s enrollment in the Cumberland school and return it to Dauphin County against his mother's calculated decision to avoid the Defendants jurisdictional abuse of power. Defendant Wheeler's request was denied by Honorable Edward E. Guido. Defendant Wheeler was questioned by Honorable Guido as to why she had withheld A.N.F.'s attendance at school.

98.    Between November 8, 2023, through November 15, 2023, CCCYS confirmed that there was no imminent risk to the Feinberg children despite the exhaustive claims by the Defendants. Sandy Gibsons, LCSW, stated that she "found it odd", that the children had been removed without their clothing and belongings when they were not being harmed and all their needs were being met, unlike the incident of the Smith children who were unclothed and soiled when they were found by Police officer Christian Ribec (audio recording was obtained).

99.	On November 16, 2023, CCCYS withdrew Defendants petition for Dependency, and the Plaintiff's children were returned without adjudication.

100.	Plaintiff cooperated with CCCYS reluctantly by signing releases of her private information regarding medical and mental health records out of fear that her children could be removed again from her care. She felt compelled because of the Defendants abuse of power, and the actions they had taken to harm her family.

101.	Since October 2023, Plaintiff and her children have continued to experience severe post-traumatic stress symptoms caused by the Defendants crimes. The children are fearful to sleep alone, and the presence of any authorities remind them of the horrors in Dauphin County. Statistically, it has been proven that children placed in foster care have an increased risk of suicide. The abuse CPS workers cause to children who do not belong in foster care is rarely accounted for, which unequivocally contradicts the laws imposed against abusive parents.

102.	All aspects of the Plaintiffs life have been damaged, and affected in a way that will never be repaired. Plaintiff incurred excessive debts because of the Defendants crimes, and lost thousands in equity

amidst the swift sale of her home, which she had no plans to sell, prior to the Defendants horrific actions.

103.  The Plaintiffs credit declined due to the mortgage forbearance applied. It was also damaged due to emergency over-utilization necessary for temporary shelter for her children. As the Plaintiff and her children struggled to survive, they could not qualify for food-stamps under the mortgage and additional rental payments built up, because there is no program guideline set up to calculate and consider this form of domestic "refugee crisis" caused by Dauphin County Children and Youth agency. Plaintiff employed survival hacks, such as watering down whole milk, increasing inexpensive carbs, i.e. rice, pasta, and purchasing unpreferred groceries that were marked down as for soon to expire or next day break at Walmart. While this may be instance that occurs in third world countries, this should not be caused to occur in a progressive democratic country who resources are endless. Most certainly, this should not be caused by the very same agency that was established to protect families and children. Legislature has failed the communities and populations by enabling such authorities to have unlimited excess discretion against innocent victims. Attempts to raise money through crowd funding were futile. The children were disenrolled from long-term community programs they could no longer

access. The children were isolated from their community of friends who were afraid of the Defendants authority. The Plaintiff incurred excessive transportation costs due to the distance between the Cumberland residence and private school in Dauphin County. She accrued approximately $15,000 in debt because of the unplanned displacement.

104.  Plaintiff suffered significant emotional distress and harm to her professional and personal reputation and capacity, since her network of friends and employment are engaged in the field of mandated reporting, teaching, counseling, etc.

105.  The Plaintiff and her children have been displaced and distanced from their family and friends residing in Dauphin County. The Plaintiff's children have lost relationships with friends since their parents fear the county agency's retaliation.

106.  Under color of state law, each named Defendant has violated the constitutional rights of the Plaintiff included in this Complaint in an effort to obstruct justice in a significant child abuse investigation, see "Exhibit 1," "Exhibit 2," "Exhibit 3," "Exhibit 4," "Exhibit 5," "Exhibit 6," "Exhibit 7," "Exhibit 8,"  "Exhibit 9," "Exhibit 10," "Exhibit 11,"  "Exhibit 12,"  "Exhibit 13," "Exhibit 14,"  "Exhibit 15,"  "Exhibit 16,"  "Exhibit 17," "Exhibit 18,"  "Exhibit 19,"  "Exhibit 21,"  and "Exhibit 22,"  and incorporated herein.

107.  Pursuant to 42 U.S.C. § 1983, U.S. Const. Amend I., U.S. Const. Amend. IV., U.S. Const. Amend. VI, U.S. Const. Amend. XIV., for declaratory and injunctive relief, as well as nominal, punitive, and compensatory relief, to redress and to prevent the deprivation of rights, privileges, and immunities under the First, Fourth, Sixth, and Fourteenth Amendments, to the United States Constitution, caused by the Defendants through retaliation against freedom of speech, warrantless search and seizure, false hearsay evidence, interference of parental rights, abuse of power, discrimination against a disability, fraud, misrepresentation, child endangerment, retaliation, intimidation, and harassment, the Defendants, having not acted lawfully in their professional or personal capacity, and having committed Federal violations; are allegedly guilty of the following crimes.

108.  On information and belief, when the county, particularly Defendants expend federal dollars under Title IV-E for families at risk, they must use it for families in need of services, and not for retaliation when individuals already have services.

109.  Title IV-E while permitted by the aforementioned Pennsylvania laws pursuant to The Family First Prevention Services Act (FFPSA), enacted as part of Public Law (P.L.) 115—123, authorized new optional title

IV-E funding for time-limited prevention services for mental health, substance abuse, and in-home parent skill-based programs for children or youth who are candidates for foster care, pregnant or parenting youth in foster care, and the parents or kin caregivers of those children and youth, the Plaintiff's family was never a candidate for foster care, because there were no grounds for suspected child abuse. All the services the Plaintiff had for her children, were already assumed under a voluntary means prior to and outside of County involvement.

## COUNT I

(Plaintiff Hadassah Feinberg's claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States; U.S. Const. amend. 1).

## COUNT II

(Plaintiff Hadassah Feinberg's claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. IV).

## COUNT III

(Plaintiff Hadassah Feinberg's claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States; U.S. Const. amend. VI).

## COUNT IV

(Plaintiff Hadassah Feinberg's claim against Defendants, Marisa McClellan, Currin Haines-Yoder, Noelle Barrett, Kim Deibler, Lisa Wheeler, and Scott Smith, for their violation of 42 U.S.C. § 1983 and the Constitution of the United States, U.S. Const. amend. XIV).

110.  Plaintiff, Hadassah Feinberg, re-alleges and incorporates by reference all allegations contained in the forgoing paragraphs of this Complaint as if fully set forth herein.

111.  The First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution ("Constitution") protect the associational, free speech, and free choice rights of United States citizens.

112.  Under color of state law, defendants Marisa McClellan, Currin Haines-Yoder, Kim Deibler, Noelle Barrett, Lisa Wheeler, and Scott Smith, have violated and continue to violate Plaintiff's, free speech, warrantless search and seizure, and parental rights under the Constitution.

113.  As a direct result of said Defendants' actions taken Plaintiff and her children:

a.      have been prevented from exercising their rights and privileges as citizens of the United States which they have not voluntarily chosen to support and with which they object to support or associate;

b.      have been deprived of their civil rights guaranteed to them under the statutes of the United States;

c.      are in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States and are in imminent danger of suffering additional physical, emotional, monetary, equitable, and other damages; and

114.   If not enjoined by this Court, said defendants and/or their will continue to deprive and abridge Plaintiff Constitutional rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

115.   WHEREFORE, Plaintiff prays that this Court:

a.      enter a judgment based upon past, current, and future monetary and emotional damages and losses to personal and property:

i.      that to the extent a jury finds that the Defendants actions were unconstitutional on their face and as applied in that they impermissibly abridge Plaintiffs' First, Fourth, Sixth, and Fourteenth Amendment rights of free speech, free choice, freedom from unlawful search and seizure, Due Process against hearsay, and freedom to care, raise, and educate one's

own children, uninterrupted by government intervention and control.

b.     award Plaintiff nominal damages; in the amount of $200,000,000.

c.     award Plaintiff such additional relief the Court deems just and proper;

d.     enter a judgment awarding Plaintiff costs and reasonable court' and legal-related fees that have been incurred as a *pro se* litigant pursuant to 42 U.S.C. § 1988.

e.     enter an Order to expunge Plaintiff's CPS record in its entirety.

f.     remove all Defendants from the consolidated case, except those listed in this Second Amended Complaint 1:24 cv 00706, since they are named in a different Court for separate crimes outside of Pennsylvania.

Dated: May 31, 2024                    Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
(717) 571-7021
H_feinberg@yahoo.com

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, certify that on May 31, 2024 I filed the foregoing

*Complaint* and *Table of Contents* by Electronic Filing and USPS First Class

Mail upon the following individuals:

Sylvia H. Rambo
United States Courthouse
Attention: Clerks Office
1501 North 6th Street
Harrisburg, PA 17102

Coryn D. Hubbert, Esq.
PA I.D. No. 334121
and Donald Carmelite, Esq.
200 Corporate Center Drive, Suite 300
Camp Hill, Pa. 17011
Attorneys for Defendants:
Marisa McClellan, Currin Haines-Yoder, Kim Deibler,
Lisa Wheeler, Noelle Barrett, and Scott Smith

DA Francis Chardo, Esq.
101 Market Street,
Harrisburg, Pa. 17101

ADA Colin Zwally, Esq.
101 Market Street,
Harrisburg, Pa. 17101

Michelle Avery
101 Market Street,
Harrisburg, Pa. 17101

Emily Hoffman, Esq.
101 Market Street,
Harrisburg, Pa. 17101

Joshua Young, Esq.

333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Jeff Enders
911 Gibson Blvd.
Steelton, Pa. 17113

Stephen Libhart
101 Market Street,
Harrisburg, Pa. 17101

Sally Lupini
2525 North 7th Street,
Harrisburg, Pa. 17110

Carrie Self
2525 North 7th Street,
Harrisburg, Pa. 17110

Gabi Williams
2525 North 7th Street,
Harrisburg, Pa. 17110

Valerie Arkoosh
2525 North 7th Street,
Harrisburg, Pa. 17110

Vincent Paese
333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Laval Miller-Wilson
2525 North 7th Street,
Harrisburg, Pa. 17110

Andrea Bankes
2525 North 7th Street,
Harrisburg, Pa. 17110

Corey Dickerson
2 South 2nd Street, #3,
Harrisburg, Pa. 17101

Andrew Bath
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Christian Ribec
123 Walnut Street, #217,
Harrisburg, Pa. 17101

AJ Young
1900 Linglestown Rd.,
Harrisburg, Pa. 17110

Lee Ann Tarasi
1900 Linglestown Rd.,
Harrisburg, Pa. 17110

Robert Martin
1900 Linglestown Road,
Harrisburg, Pa. 17110

Marcie Smith
503 State Street,
Steelton, Pa. 17061

Eric Smith
503 State Street,
Steelton, Pa. 17061

Rosa Cruz
63 North 18th Street,
Harrisburg, Pa. 17103

Mandjou Sylla
63 North 18th Street,
Harrisburg, Pa. 17103

Joshua Appleby
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Alyssa Schatz
111 S. Front Street,
Harrisburg, Pa. 17101

Kathryn Crowell
500 University Drive,
Hershey, Pa. 17033

Kenny Young
123 Walnut Street, #217
Harrisburg, Pa 17101.

Tom McGarrity
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Thomas Carter
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Allison Vajdic
1001 North 6th Street,
Harrisburg, Pa. 17102

Amanda Ozenbaugh
1001 North 6th Street,
Harrisburg, Pa. 17102

George P. Hartwick III
2 South 2nd Street,
4th Floor,
Harrisburg, Pa. 17101

Julie Reis
2 South 2nd Street,

4th Floor,
Harrisburg, Pa. 17101

Gerard M. Karam, Esq.
321 Spruce Street,
Scranton, Pa. 18503

Andrea Martin
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Sean McCormack, Esq.
1 Courthouse Square,
Floor 2,
Carlisle, Pa. 17013

Tamara B. Willis
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Erika Martel
1001 North 6th Street,
Harrisburg, Pa. 17102

Michael Palermo, Esq.
3300 E. Trindle Rd.,
Camp Hill, Pa. 17011

John F. Cherry, Judge
101 Market Street,
Harrisburg, Pa. 17101

John J. McNally, Judge
101 Market Street,
Harrisburg, Pa. 17101

Deborah Smyre
101 Market Street,
Harrisburg, Pa. 17101

Matthew P. Smith, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Kimberley Kardelis, Esq.
1001 North 6th Street,
Harrisburg, Pa. 17102

Edward E. Guido, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Wayne A. Jacobs
600 Arch Street,
Philadelphia, Pa. 19106

Dated: May 31, 2024                    Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
(717) 571-7021
H_feinberg@yahoo.com

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

HADASSAH FEINBERG,       :
                                :
          Plaintiff,      :
                                : CIVIL CASE NO: 1:23 cv 02165
      v.                   :
                                :
MARCIE SMITH, et al.       :
                                :
          Defendants,   : DEMAND FOR JURY TRIAL

## <u>TABLE OF CONTENTS</u>

<u>SUMMARY OF CASE</u>....................................................................2

<u>FIRST AMENDMENT CLAIMS</u>....................................................9

<u>FOURTH AMENDMENT CLAIMS</u>.............................................10

<u>SIXTH AMENDMENT CLAIMS</u>.................................................23

<u>FOURTEENTH AMENDMENT CLAIMS</u>...................................35

<u>JURISDICTION AND VENUE</u>...................................................35

<u>COUNT I</u>.....................................................................................61

<u>COUNT II</u>...................................................................................61

<u>COUNT III</u>..................................................................................61

<u>COUNT IV</u>..................................................................................61

<u>CERTIFICATE OF SERVICE</u>...................................................65

Dated: May 31, 2024        Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
(717) 571-7021
H_feinberg@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that on May 31, 2024 I filed the foregoing

*Complaint* and *Table of Contents* by Electronic Filing and USPS First Class

Mail upon the following individuals:

Sylvia H. Rambo
United States Courthouse
Attention: Clerks Office
1501 North 6th Street
Harrisburg, PA 17102

Coryn D. Hubbert, Esq.
PA I.D. No. 334121
and Donald Carmelite, Esq.
200 Corporate Center Drive, Suite 300
Camp Hill, Pa. 17011
Attorneys for Defendants:
Marisa McClellan, Currin Haines-Yoder, Kim Deibler,
Lisa Wheeler, Noelle Barrett, and Scott Smith

DA Francis Chardo, Esq.
101 Market Street,
Harrisburg, Pa. 17101

ADA Colin Zwally, Esq.
101 Market Street,
Harrisburg, Pa. 17101

Michelle Avery
101 Market Street,
Harrisburg, Pa. 17101

Emily Hoffman, Esq.
101 Market Street,
Harrisburg, Pa. 17101

Joshua Young, Esq.

333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Jeff Enders
911 Gibson Blvd.
Steelton, Pa. 17113

Stephen Libhart
101 Market Street,
Harrisburg, Pa. 17101

Sally Lupini
2525 North 7th Street,
Harrisburg, Pa. 17110

Carrie Self
2525 North 7th Street,
Harrisburg, Pa. 17110

Gabi Williams
2525 North 7th Street,
Harrisburg, Pa. 17110

Valerie Arkoosh
2525 North 7th Street,
Harrisburg, Pa. 17110

Vincent Paese
333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Laval Miller-Wilson
2525 North 7th Street,
Harrisburg, Pa. 17110

Andrea Bankes
2525 North 7th Street,
Harrisburg, Pa. 17110

Corey Dickerson
2 South 2nd Street, #3,
Harrisburg, Pa. 17101

Andrew Bath
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Christian Ribec
123 Walnut Street, #217,
Harrisburg, Pa. 17101

AJ Young
1900 Linglestown Rd.,
Harrisburg, Pa. 17110

Lee Ann Tarasi
1900 Linglestown Rd.,
Harrisburg, Pa. 17110

Robert Martin
1900 Linglestown Road,
Harrisburg, Pa. 17110

Marcie Smith
503 State Street,
Steelton, Pa. 17061

Eric Smith
503 State Street,
Steelton, Pa. 17061

Rosa Cruz
63 North 18th Street,
Harrisburg, Pa. 17103

Mandjou Sylla
63 North 18th Street,
Harrisburg, Pa. 17103

Joshua Appleby
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Alyssa Schatz
111 S. Front Street,
Harrisburg, Pa. 17101

Kathryn Crowell
500 University Drive,
Hershey, Pa. 17033

Kenny Young
123 Walnut Street, #217
Harrisburg, Pa 17101.

Tom McGarrity
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Thomas Carter
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Allison Vajdic
1001 North 6th Street,
Harrisburg, Pa. 17102

Amanda Ozenbaugh
1001 North 6th Street,
Harrisburg, Pa. 17102

George P. Hartwick III
2 South 2nd Street,
4th Floor,
Harrisburg, Pa. 17101

Julie Reis
2 South 2nd Street,

4th Floor,
Harrisburg, Pa. 17101

Gerard M. Karam, Esq.
321 Spruce Street,
Scranton, Pa. 18503

Andrea Martin
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Sean McCormack, Esq.
1 Courthouse Square,
Floor 2,
Carlisle, Pa. 17013

Tamara B. Willis
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Erika Martel
1001 North 6th Street,
Harrisburg, Pa. 17102

Michael Palermo, Esq.
3300 E. Trindle Rd.,
Camp Hill, Pa. 17011

John F. Cherry, Judge
101 Market Street,
Harrisburg, Pa. 17101

John J. McNally, Judge
101 Market Street,
Harrisburg, Pa. 17101

Deborah Smyre
101 Market Street,
Harrisburg, Pa. 17101

Matthew P. Smith, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Kimberley Kardelis, Esq.
1001 North 6th Street,
Harrisburg, Pa. 17102

Edward E. Guido, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Wayne A. Jacobs
600 Arch Street,
Philadelphia, Pa. 19106

Dated: May 31, 2024          Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
(717) 571-7021
H_feinberg@yahoo.com